## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DUSTI HARVEY,**
**and HARVEY LAW FIRM, LLC,**
           **Plaintiffs,**

**v.**                                                    **No. 12-CV-727 MCA/RHS**

**THI OF NEW MEXICO AT ALBUQUERQUE**
**CARE CENTER, LLC; THI OF NEW MEXICO**
**AT VALLE NORTE, LLC d/b/a Valle Norte**
**Care Center; THI OF NEW MEXICO AT VIDA**
**ENCANTADA, LLC, d/b/a Vida Encantada**
**Nursing and Rehab; THI OF NEW MEXICO**
**AT CASA MARIA, LLC; THI OF NEW MEXICO**
**AT LAS CRUCES, LLC; THI OF NEW MEXICO,**
**LLC; FUNDAMENTAL ADMINISTRATIVE**
**SERVICES, LLC; AND CHRISTINE A. ZACK,**
**a/k/a CHRISTINE A. ZACK GUNDERSON.**

           **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the following, related cross-motions for

summary judgment:  *Plaintiffs' Motion for Summary Judgment on Claims for Breach of*

*Settlement Agreements* [Doc. 462]; *THI of New Mexico at Albuquerque Care Center,*

*LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance,*

*Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs'*

*Declaratory Relief Causes of Action* [Doc. 465]; *THI of New Mexico at Casa Maria,*

*LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance,*

*Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs'*

*Declaratory Relief Causes of Action* [Doc. 468]; *THI of New Mexico at Las Cruces, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 469]; *THI of New Mexico at Valle Norte, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 470]; *THI of New Mexico at Vida Encantada, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 473]; and *THI of New Mexico, LLC's Motion for Summary Judgment on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 474].[1]

The Court, having considered the submissions, the record, the relevant law, and otherwise being fully advised in the premises, hereby **GRANTS IN-PART AND DENIES IN-PART** *Plaintiffs' Motion for Summary Judgment on Claims for Breach of Settlement Agreements.* More specifically, Plaintiffs are granted summary judgment with respect to all breach of contract claims brought against them by:  THI of New Mexico at Albuquerque Care Center, LLC; THI of New Mexico at Valle Norte, LLC; THI of New Mexico at Casa Maria, LLC; and THI of New Mexico at Las Cruces, LLC.  Plaintiffs

---

[1] The five Facility Defendants have each filed counter-claims against Plaintiffs for breach of contract, specific performance, injunctive and declaratory relief, and the Facility Defendants seek summary judgment on the claims they have brought and on Plaintiffs' claims for declaratory relief.  [Docs. 70, 71, 72, 73, 74]  THI of New Mexico, LLC's counterclaim brings only a claim of malicious abuse of process, and thus, in Document 474, THI of New Mexico, LLC seeks only summary judgment on Plaintiffs' declaratory relief actions against it.  [Doc. 104, p. 42; Doc. 474]

*Motion for Summary Judgment* is **DENIED** with respect to Defendant Vida Encantada, LLC's claim against Plaintiffs for breach of the confidentiality provisions in the *Tafoya* and *Coca* settlement agreements and **GRANTED** with respect to Defendant Vida Encantada, LLC's claim against Plaintiffs for breach of the confidentiality provisions in the *Ortiz* and *Lesperance* settlement agreements. [Doc. 462]  The Court further hereby **DENIES** the remainder of the Motions.

## I.    BACKGROUND

For purposes of the above Motions for Summary Judgment, the following material facts are not disputed.

### *The Settlement Agreements*

The Harvey Plaintiffs represented Richard and Edna Lucero Individually and as Personal Representatives of the Estate of Jeanette Gutierrez, who entered into a "Compromise Settlement Agreement and Release" with:  THI of New Mexico at Valle Norte, LLC d/b/a Valle Norte Caring Center (hereafter 'THI'); THI of Baltimore, Inc.; and several others, as well as "all other parents, agents, successors, assigns, insurers, trustees, shareholders, affiliates past and present parent companies, subsidies and all of their officers[.]"  [Doc. 470-1, pp. 1, 3, 4]  This Agreement, entered into in 2006, contains the following "Non-Disclosure" clause:

> Releasing Parties agree that they will not disclose any details of this Agreement to any entity or individual with the exception of his [*sic*] attorneys, accountants, financial advisors, beneficiaries of the estate, or the Internal Revenue Service.  Releasing Parties may, however, disclose upon a specific inquiry regarding the instant dispute that the dispute was amicably settled.  This provision shall have no effect if Releasing Parties, collectively or individually, is [*sic*] properly ordered to reveal the contents of this

> Agreement by a court of law or governmental authority having the legal right to require disclosure.  Releasing Parties agree that should a breach of the non-disclosure provision occur, THI may seek injunctive relief from a court of law and the prevailing parties shall be entitled to reasonable attorneys fees and costs.  The parties agree that $1.00 of the settlement amount is for consideration of confidentiality."

[Doc. 470, ¶ 1; Doc. 470-1, pp. 2-3; Doc. 516, ¶ 1]  Dusti Harvey, on behalf of the Harvey Law Firm, signed the Release as "Approved as to Form[.]"  [Doc. 470, ¶ 2; Doc. 470-1, p. 4; Doc. 516, ¶ 2]

On December 13, 2010, Romana Romero, represented by The Harvey Law Firm, entered into a "Confidential Final Settlement Agreement and Release" with:  THI of New Mexico at Albuquerque Care Center, LLC; THI of New Mexico, LLC; Fundamental Administrative Services, LLC; and several others.[2]  [Docs. 465, ¶ 1; 465-1, p. 1; 517 ¶ 1] The confidentiality provision of the Romero Settlement Agreement states:

> **CONFIDENTIALITY.**  Plaintiff and the Released Parties agree that the terms and conditions of this Agreement are and shall remain confidential and herein enter into a mutual promise of confidentiality.  As consideration and inducement for this compromise settlement, Plaintiff and Plaintiff's attorneys and Defendants and Defendants' attorneys agree that they will not provide the terms and amount of this settlement to any entity, including but not limited to, any federal, state, or municipal government agency, private or public law firm or agency, as well as any publisher, television station, representative of the media, newspaper, journal and/or periodical[.] Plaintiff and Plaintiff's attorneys and Defendants and Defendants' attorneys further agrees [*sic*] that the confidentiality provisions of this Release are forever binding on the parties and shall remain confidential, except by operation of law, including but not limited to, a court of competent jurisdiction entering an order permitting the disclosure of such terms and conditions that would otherwise be confidential.  In the event of a breach of this Release, or any portion thereof, either by Plaintiff or her attorneys or

---

[2]  This agreement, along with the remaining settlement agreements, end the list of Defendant parties to the release with: "and all persons and entities in privity with them (hereinafter 'Defendants')."  [*See* Doc. 465-1, p. 1]

4

> Defendants or Defendants' attorneys, Plaintiff and Defendants agree that
> they are bound by the provisions of this Release.  Consideration for this
> confidentiality provision is none other than the mutuality of the agreement.

[Doc. 465, ¶ 1; Doc. 465-1, p. 2; Doc. 517 ¶ 1]  Dusti Harvey signed the Romero Settlement Agreement on behalf of "THE HARVEY LAW FIRM, LLC" under a sentence which stated:   "The undersigned attorneys agree to be bound by the confidentiality provisions herein on behalf of themselves and other members of their respective law firm."  [Doc. 465, ¶ 2; Doc. 465-1, p. 4; Doc. 517, ¶ 2]

The Harvey Plaintiffs represented Marcia Jessup, as Personal Representative for the Wrongful Death Beneficiaries of Helen Woods, Deceased in a lawsuit against:  THI of New Mexico at Casa Maria, LLC, THI of New Mexico, LLC; THI of Baltimore, Inc.; Fundamental Administrative Services, LLC; and several others.  [Doc. 468, ¶ 1; Doc. 468-1, pp. 1, 5; Doc. 514, ¶ 1]  The parties entered into a "Confidential Final Settlement Agreement and Release" on December 15, 2010, which contained a confidentiality clause materially identical to that in the *Romero* Settlement Agreement.  [Doc. 468, ¶ 1; Doc. 468-1, pp. 1-3; Doc. 514, ¶ 1]  Again, Dusti Harvey signed the Settlement Agreement agreeing that she and the other members of her firm were bound by the confidentiality provisions of the settlement agreement.  [Doc. 468, ¶ 2; Doc. 468-1, p. 5; Doc. 514, ¶ 2]

Steve Fox, Individually, and Zia Trust, Inc., as Personal Representative of the Estate of Elaine Fox, Deceased, et al., sued THI of New Mexico at Las Cruces, LLC, d/b/a Las Cruces Nursing Center.  [Doc. 469-1, p.1]  The parties entered into a "Confidential Final Settlement Agreement and Release" on December 14, 2010, which contained a confidentiality clause materially identical to that in the *Romero* Settlement

Agreement.  [Doc. 469, ¶ 1; Doc. 469-1, pp. 1-4; Doc. 515, ¶ 1].  Again, Dusti Harvey signed the Settlement Agreement, agreeing that she and the members of her law firm were bound by the confidentiality provisions therein.  [Doc. 469, ¶ 2; Doc. 469-1, p. 6; Doc. 515, ¶ 2]

The Harvey Plaintiffs represented Rochelle Weiss, as Personal Representative for the Wrongful Death Beneficiaries of Florence Zuckerman, Deceased, in a lawsuit against: THI of New Mexico at Valle Norte, LLC, THI of New Mexico, LLC; THI of Baltimore, Inc.; Fundamental Administrative Services, LLC; and others.  [Doc. 470, ¶ 3; Doc. 470-2, pp. 1, 4; Doc. 516, ¶ 3]  On December 13, 2010, the parties entered into a "Confidential Final Settlement Agreement and Release," which contained a confidentiality agreement materially identical to that in the *Romero* Settlement Agreement.  [Doc. 470, ¶ 3; Doc. 470-2, p. 2; Doc. 516, ¶ 3]  Dusti Harvey signed the agreement, agreeing that she and the members in her law firm were bound by the confidentiality provisions therein.  [Doc. 470, ¶ 4; Doc. 470-2, p. 4; Doc. 516, ¶ 4]

The Harvey Plaintiffs represented Leonard Wozniak and Nancie Wozniak, as Co-Personal Representatives of the Wrongful Death Beneficiaries of Mary Ellen Wozniak, Deceased, in a lawsuit against:  THI of Baltimore, Inc.; THI of New Mexico, LLC; THI of New Mexico at Valle Norte, LLC; and others.  [Doc. 470, ¶ 5; Doc. 470-3, pp. 1, 5; Doc. 516, ¶ 5]  On December 13, 2010, the parties entered into a "Confidential Final Settlement Agreement and Release" which was materially identical to that in the *Romero* Settlement Agreement.  [Doc. 470, ¶ 5; Doc. 470-3, pp. 2-4; Doc. 516, ¶ 5]  Dusti Harvey signed the Settlement Agreement, agreeing that she and the members in her law firm

6

were bound by the confidentiality provisions therein.  [Doc. 470, ¶ 6; Doc. 470-3, p. 5; Doc. 516, ¶ 6]

The Harvey Plaintiffs represented the Wrongful Death Estate of Antonia Ortiz, Deceased, by Sophia Ortiz, Personal Representative, in a lawsuit against:  THI of New Mexico at Vida Encantada, LLC; THI of New Mexico LLC, THI of Baltimore, Inc.; Fundamental Administrative Services, LLC; and others.  [Doc. 473, ¶ 1; Doc. 473-1, p. 1; Doc. 519, ¶ 1]  The parties entered into a "Confidential Settlement Agreement and Release" on December 15, 2010, which contained a confidentiality agreement materially identical to that in the *Romero* Settlement Agreement.  [Doc. 473, ¶ 1; Doc. 473-1, pp. 2-3; Doc. 519, ¶ 1]  Again, Dusti Harvey signed the Settlement Agreement, agreeing that she and the members in her law firm were bound by the confidentiality provisions therein.  [Doc. 473, ¶ 2; Doc. 473-1, p. 5; Doc. 519, ¶ 2]

The Harvey Plaintiffs represented Margaret Tafoya, as Personal Representative of the Wrongful Death Estate of Leopoldo Tafoya, Deceased, in a lawsuit against:  THI of New Mexico at Vida Encantada, LLC; THI of New Mexico, LLC; THI of Baltimore, Inc.; and others.  [Doc. 473, ¶ 3; Doc. 473-2, p. 1; Doc. 519, ¶ 3] On February 9, 2011, the relevant parties entered into a "Confidential Final Settlement Agreement and Release," which contained a confidentiality clause stating:

> **CONFIDENTIALITY.**  Plaintiff and the Released Parties agree that the terms and conditions of this Agreement are and shall remain confidential and herein enter into a mutual promise of confidentiality.  As consideration and inducement for this compromise settlement, Plaintiff and Plaintiff's attorneys and Defendants and Defendants' attorneys ("Parties") agree that they shall not, directly or indirectly, generally or specifically, disseminate, disclose, provide, or otherwise communicate in any way the terms and

amount of this settlement to any entity or outside parties, including but not limited to, any federal, state, or municipal government agency, private or public law firm or agency, as well as any publisher, television station, representative of the media, newspaper, journal and/or periodical. Furthermore, the Parties agree that they shall not, directly or indirectly, generally or specifically, disseminate, disclose, provide or otherwise communicate in any way the facts, claims, disputes or controversies giving rise to the underlying litigation and relating to any alleged injury that may have occurred during or on account of Leopoldo Tafoya's residency at THI of New Mexico at Vida Encantada, LLC, to any publisher, television station, representative of the media, newspaper, journal and/or periodical, nor any media outlet via the internet and/or World Wide Web.  Plaintiff and Plaintiff's attorneys and Defendants and Defendants' attorneys further agree that the confidentiality provisions of this Release are forever binding on the parties and shall remain confidential, except by operation of law, including but not limited to, a court of competent jurisdiction entering an order permitting the disclosure of such terms and conditions that would otherwise be confidential.  Moreover, Plaintiff and Plaintiff's attorneys and Defendants and Defendants attorneys may not solicit inquiries into the settlement of claims related to this Action.  Nevertheless, should an independent and unsolicited inquiry be made to any of the Parties, the party may only respond: "The dispute between the parties is resolved."

[Doc. 473, ¶ 3; Doc. 473-2, pp. 2-3; Doc. 519, ¶ 3]  Again, Dusti Harvey signed the Settlement Agreement, agreeing that she and the other members of her firm were bound by the confidentiality provisions therein.  [Doc. 473, ¶ 4; Doc. 473-2, p. 5; Doc. 519, ¶ 4]

The Harvey Plaintiffs represented Consuelo Coca, as Personal Representative of the Wrongful Death Estate of Maria Guadalupe Pita Coca, Deceased, in a lawsuit against: THI of New Mexico at Vida Encantada, LLC; THI of New Mexico, LLC; THI of Baltimore, Inc.; and others.  [Doc. 473, ¶ 5; Doc. 473-3, p. 1; Doc. 519, ¶ 5]  The parties entered into a "Confidential Final Settlement Agreement and Release" on February 17, 2011, which, other than referring to Ms. Coca rather than Mr. Tafoya, was worded identically to confidentiality agreement in the *Tafoya* Settlement Agreement.  [Doc. 473,

¶ 5; Doc. 473-3, pp. 1-3; Doc. 519, ¶ 5]   Again, Dusti Harvey signed the Settlement Agreement, agreeing that she and the other members of her law firm were bound by the confidentiality provisions therein.  [Doc. 473, ¶ 6; Doc. 473-3, p. 5; Doc. 519, ¶ 6]

The Harvey Law Firm represented Oneida Lesperance, as Personal Representative of the Wrongful Death Beneficiaries of E. Dorothy Lesperance, Deceased, in a lawsuit against:  THI of New Mexico at Vida Encantada, LLC; THI of New Mexico, LLC; THI of Baltimore, Inc.; Fundamental Administrative Services, LLC; and others.  [Doc. 473, ¶ 7; Doc. 473-4, p. 1; Doc. 519, ¶ 7]  The relevant parties entered into a Confidential Final Settlement Agreement and Release on July 7, 2011, which contained a Confidentiality provision materially identical to that in the *Romero* Settlement Agreement, with the following two exceptions.  [Doc. 473, ¶ 7; Doc. 473-4, p. 2; Doc. 519, ¶ 7]  First, the first sentence is worded "Plaintiff and the Released Parties agree that the terms and conditions of this Agreement, including but not limited to the amount of consideration paid, are and shall remain confidential and herein enter into a mutual promise of confidentiality."  [Id.] Second, the confidentiality provision contains an additional sentence stating:   "The parties specifically agree that neither party shall provide the media with any information or documents related to the underlying litigation, the terms or conditions of this Agreement, or the consideration paid as part of this Agreement."  [Id.]  Again, Dusti Harvey signed the Settlement Agreement agreeing that she and the other members of her firm were bound by the confidentiality provision therein.  [Doc. 473, ¶ 8; Doc. 473-4, p. 4; Doc. 519, ¶ 8]

***The Alleged Breaches of the Settlement Agreements***

In 2011, in the course of representing clients in three cases,[3] the Harvey Plaintiffs attempted to persuade the courts to exercise personal jurisdiction over THI of Baltimore, Inc., (THIB) and Fundamental Long Term Care Holdings, LLC (FLTCH) by doing two things.  First, the Harvey Plaintiffs stated in motions or responses to motions:  "Prior settlements for suits involving THI/Fundamental New Mexico nursing homes have been paid by THIB."  [*See, e.g.,* Doc. 462, ¶¶ 5-8, 14-15; Doc. 495, ¶¶ 5-8, 14-15; Doc. 465, ¶¶ 4-5, 8-10, 18-21; Doc. 465-2, pp. 1-3; Doc. 465-4, pp. 2-4; Doc. 465-8, pp. 1-4; Doc. 517, ¶¶ 4-5, 8-10, 18-21]  There is no dispute that Dusti Harvey signed two of these pleadings and that they were prepared, reviewed, and filed with the Courts by the Harvey Law Firm, and thus made a part of the public record on April 26, 2011, May 16, 2011, and June 10, 2011.  [Id.]  Second, in all three of these cases, the Harvey Plaintiffs attached to the motion or response a 2010 Form 1099-MISC which stated the unredacted, gross proceeds paid to the Harvey Law Firm by THI of Baltimore in 2010.  [Doc. 465, ¶¶ 6, 11, 21; Doc. 465-2, p. 4; Doc. 465-4, p. 4; Doc. 465-8, p. 4; Doc. 517, ¶¶ 6, 11, 21] FLTCH and THIB filed responsive pleadings in each case asking that the Form 1099 be stricken and Plaintiff's counsel sanctioned for attaching it.  [Doc. 465, ¶¶ 7, 12, 22; Doc. 465-3, p. 2; Doc. 465-5, p. 2; Doc. 465-9, p. 2; Doc. 517, ¶¶ 7, 12, 22]  They stated that the Form 1099 was provided pursuant to five confidential agreements,[4] and that the

---

[3] The Parties refer to these cases as the *Duran*, *Lucero*, and *Patton* cases.  The Court will refer these cases collectively as the *Duran* cases and the Court will refer to the disclosures made in these cases collectively as the *Duran* disclosures.

[4] It is undisputed that, despite Defendants' prior reference to "five settlement agreements," the Form 1099 in fact reflected settlement payments from six cases, four of which were paid in installments in 2010 and 2011.  [Doc. 462, ¶ 20; Doc. 495, ¶ 20]

Harvey Plaintiffs violated the terms of the settlement agreements by attaching the Form 1099.  [Doc. 465, ¶¶ 7, 12, 22; Doc. 465-3, p. 3; Doc. 465-5, p. 3; 465-9, pp. 3-4; Doc. 517, ¶¶ 7, 12, 22]

In another case in which the Harvey Plaintiffs acted on behalf of clients, referred to as the *Montano* case, the Harvey Plaintiffs prepared, reviewed and filed a Motion to Amend the Complaint to "reinstate their claims against" FLTCH and THIB.  [Doc. 465, ¶ 14; Doc. 465-6, p. 1; Doc. 517, ¶ 14]  In this Motion to Amend, filed on May 17, 2011, the Harvey Law Firm stated: "Plaintiffs' counsel recently learned, after resolving several cases with the Defendants that settlements for suits involving THI/Fundamental New Mexico nursing homes are paid by THIB[,]" and again Plaintiffs attached the unredacted Form 1099.  [Doc. 465, ¶¶ 15-16; Doc. 465-6, pp. 2-3; Doc. 517, ¶¶ 15-16]   The Defendants in the *Montano* case responded to the Motion to Amend by stating that the Harvey Plaintiffs had demonstrated bad faith because "the 1099 form was provided to [the Harvey Plaintiffs] pursuant to five confidential settlement agreements, which stated the settlement sums (reflected in the aggregate on the 1099) were confidential[;]" that Harvey Plaintiffs "could have simply redacted the monetary payment[;]"and they had previously "warned [the Harvey Plaintiffs] that she (*sic*) was in violation of the confidentiality provisions of the agreements."  [Doc. 465, ¶ 17; Doc. 465-7, p. 2; Doc. 517, ¶ 17]

In 2010, THI of New Mexico at Valle Norte, LLC filed suit against the Harvey Plaintiffs for malicious abuse of process and other claims.  [Doc. 465, ¶ 23; Doc. 517, ¶ 23]  In *Valle Norte*, the Harvey Plaintiffs filed a *Motion for Leave to File an Amended*

11

*Answer, Counterclaim and Third-Party Complaint* on July 25, 2011, and in the proposed Amended Counterclaim, stated:   "Over the past five (5) years, HLF has recovered approximately $3.7 million dollars in settlements from 'THI' and its predecessor companies on behalf of HLF clients as a result of the asserting of claims and filing lawsuits on behalf of clients against 'THI' nursing homes and their affiliates."  [Doc. 465, ¶ 25; Doc. 517, ¶ 25; *see also THI of New Mexico at Valle Norte, LLC v. Harvey et al*, 10-CV-873-WJ-LFG, Doc. No. 95, p. 13, (D.N.M., July 25, 2011)]

The Facility Defendants argue that each one of the five above disclosures violated the confidentiality clauses to which they are a party.

## III.   ANALYSIS

### *Jurisdiction*

As a preliminary matter, the Court must address Plaintiffs' request that the Court decline to exercise jurisdiction over Defendants' claims regarding the purported breach of the confidentiality agreements.   In the *Duran* cases and the *Montano* case, some underlying defendants asked the presiding state courts to award sanctions on the ground that disclosure of the information on the Form 1099 violated the confidentiality clauses. [Doc. 462, p. 12]  Plaintiffs argue that:  "Given the status of the four cases in State District Court, which form the basis for Defendants' claims against HLF, HLF respectfully requests this Court to disregard all allegations of the Counterclaim that arise from, or relate to, the cases known as *Duran, Lucero, Montano* and *Patton*."  [Doc. 462, p. 13]  Plaintiffs attach two State Court orders and submit that orders are pending in two other cases.  [Doc. 462-3; Doc. 462-4]  Thus, Plaintiffs argue that this Court can decline

to exercise supplemental jurisdiction over the claims raised in the Counterclaim.  [Doc. 462, p. 13]  Plaintiffs do not clarify, until their Reply Brief, that they are arguing in favor of application of the *Colorado River* abstention doctrine, nor do they recognize until their Reply Brief that the parties in the state cases asking for relief are not, in fact, Defendants in this action.  [Doc. 512, pp. 7-9]

The Court rejects Plaintiffs' request to decline to exercise jurisdiction over this case.  The *Colorado River* abstention doctrine is a narrow, extraordinary exception to the duty of a district court to exercise its jurisdiction.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  The only *Colorado River* factor potentially weighing in favor of abstention is the fact that the state court proceedings were filed first.  *See Colorado River*, 424 U.S. at 818 (also listing as factors the inconvenience of the federal forum and the desirability of avoiding piecemeal litigation).  However, there was no "progress" in the state court cases toward deciding the matter at issue in this case.  *See Life-Link Int'l, Inc. v. Lalla*, 902 F.2d 1493, 1496 (10th Cir. 1990) ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." (Internal quotation marks and citation omitted)).  In two of the cases there has not yet been a decision, and in the two Orders attached by Plaintiffs, the Court makes no ruling on (or mention of) whether Plaintiffs violated the confidentiality provisions of the settlement agreements.  [Doc. 462, p. 13; Doc. 462-3; Doc. 462-4]   As such, Plaintiffs have not pointed to any circumstances which warrant diverging from the general rule that "the pendency of an action in the state court is no bar to proceedings concerning the same

matter in the Federal court having jurisdiction."   *Colorado River,* 424 U.S. at 817

(internal quotation marks omitted). This Court, therefore, will perform its "virtually

unflagging obligation . . . to exercise [its] jurisdiction."   *Id.*

### *Privilege*

Plaintiffs next ask this Court to conclude that they are entitled to absolute

immunity for their statements because their statements were made as attorneys in the

course of representing clients.   [Doc. 462, pp. 15-18]   The privilege to which Plaintiffs

refer is the privilege as stated in the Restatement (Second) of Torts, § 586 (1977), which

states:

> An attorney at law is absolutely privileged to publish *defamatory* matter
> concerning another in communications preliminary to a proposed judicial
> proceeding, or in the institution of, or during the course and as a part of, a
> judicial proceeding in which he participates as counsel, if it has some
> relation to the proceeding.

*Id.* (emphasis added).   Plaintiffs ask the Court to extend the privilege beyond the claim of

defamation.   [Doc. 462, p. 15]   The Court declines to do so.

Just recently, the New Mexico Supreme Court affirmed the New Mexico Court of

Appeals' adoption of the "absolute privilege doctrine" as set forth in the Restatement

(Second) of Torts, § 586.   *Helena Chem. Co. v. Uribe,* 281 P.3d 237, 241 (N.M. 2012).

*Helena Chemical Company* adopted the doctrine as a defense to defamation claims, as

stated in Restatement Second of Contracts, § 586, without expressing any intent to allow

the privilege to act as a defense to a breach of contract claim.   *See Helena Chem. Co.*, 281

P.3d at 242.   Further, this Court notes that the "absolute privilege doctrine," as discussed

in the Restatement (Second) of Torts, is by definition a privilege only against a claim of

defamation.  Restatement (Second) of Torts, § 586 (setting out the privilege in a chapter entitled "Defenses to Actions for Defamation").  Thus, this Court concludes that the New Mexico Supreme Court would not extend the privilege to apply to claims beyond defamation claims.

## Breach of Contract

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted).  "The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).  "It is not [the court's] province at the summary judgment stage to weigh the evidence or make credibility determinations." *Sanders v. Sw. Bell Tele., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).  "Cross motions for summary judgment are treated separately; the denial of one does not require the grant of another." *Constitution Party of Kansas v. Kobach*, 695 F.3d 1140, 1144 (10th Cir. 2012) (internal quotation marks and citation omitted).

### Relevant Contract Law

New Mexico law favors settlement agreements.[5]  *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.*, 749 P.2d 90, 92 (N.M. 1988); *Builders Contract Interiors, Inc. v. Hi-Lo Indus., Inc.*, 134 P.3d 795, 798 (N.M. App. 2006).  Settlement agreements are contracts, subject to contract law, and enforceable through judicial proceedings. *Jones v. United Minerals Corp.*, 604 P.2d 1240, 1241 (N.M. 1979); *Herrera v. Herrera*, 974 P.2d 675, 678 (N.M. App. 1999).

When a contract is clear as written, a court "must give effect to the contract and enforce it as written." *Ponder v. State Farm Mut. Auto. Ins. Co.* 12 P.3d 960, 964 (N.M. 2000); *see also Lenscrafters, Inc. v. Kehoe*, 282 P.3d 758, 763 (N.M. 2012).  "The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 858 P.2d 66, 80 (1993) (internal quotation marks and citation omitted).  "Whether contractual terms are ambiguous is a question of law." *ConocoPhillips Co. v. Lyons*, 299 P.3d 844, 849 (N.M. 2012).

> Courts will grant summary judgment and interpret the meaning as a matter of law when the evidence presented is so plain that it is only reasonably open to one interpretation.  If, however, a court determines that the contract is reasonably and fairly open to multiple constructions, then an ambiguity exists, summary judgment should be denied, and the jury should resolve all factual issues presented by the ambiguity.

---

[5] The parties do not dispute that New Mexico law governs the contract claim in this diversity jurisdiction case. [*See* Doc. 465, p. 15; Doc. 520, pp. 3-4]  *See Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012) ("In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims[.]" (Internal quotation marks and citations omitted.)).

*Id.* (internal quotation marks and citations omitted).  "In determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance."  *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 242-43 (N.M. 1991) (internal footnote omitted).

> [I]n the event the parties do not offer evidence of the facts and circumstances surrounding execution of the agreement and leading to conflicting interpretations as to its meaning, the court may resolve any ambiguity as a matter of law by interpreting the contract using accepted canons of contract construction and traditional rules of grammar and punctuation.

*Mark V, Inc. v. Mellekas*, 845 P.2d 1232, 1236 (N.M. 1993).

"It is important to bear in mind that the meaning the court seeks to determine is the meaning one party (or both parties, as the circumstances may require) attached to a particular term or expression at the time the parties agreed to those provisions."  *C.R. Anthony Co*, 817 P.2d at 243.  To determine whose meaning prevails, the New Mexico Court of Appeals has adopted and applied the Restatement (Second) of the Law of Contracts, § 201 (1981).  *Farmington Police Officers Ass'n Commc'n Workers of Am. v. City of Farmington*, 137 P.3d 1204, 1211 (N.M. App. 2006); *Chisos, Ltd. v. JKM Energy, LLC,* 258 P.3d 1107, 1111 (N.M. App. 2011).

> §201 Whose Meaning Prevails
>
> (1) Where the parties have attached the same meaning to a promise or agreement or a term thereof, it is interpreted in accordance with that meaning.

(2) Where the parties have attached different meanings to a promise or agreement or a term thereof, it is interpreted in accordance with the meaning attached by one of them if at the time the agreement was made

(a) that party did not know of any different meaning attached by the other, and the other knew the meaning attached by the first party; or

(b) that party had no reason to know of any different meaning attached by the other, and the other had reason to know the meaning attached by the first party.

(3) Except as stated in this Section, neither party is bound by the meaning attached by the other, even though the result may be a failure of mutual assent.

Restatement (Second) of Contracts, § 201.

*Farmington Police Officers Association* points out that Subsection 2(b) of Section 201 "codifies the objective theory of contractual assent" in which "what is operative is the objective manifestations of mutual assent[.]" *Farmington Police Officers Ass'n*, 137 P.3d at 1211 (internal quotation marks and citation omitted).  Where (as here) the parties do not produce any extrinsic evidence of what each party had reason to know at the time of the making of the contract, summary judgment can only be entered if the contract itself "is sufficient to eliminate genuine issues of material fact as to what each [party] had reason to know" at the time they entered into the contract.  *Id.* at 1212.

<u>*The Romero Subset of Agreements*</u>

As discussed above, each party asks for summary judgment on various claims, which the Court will address in turn.  First, the Court considers whether any Defendants are entitled to summary judgment on their counterclaims (for breach of contract, specific performance, injunctive relief and declaratory judgment) against the Harvey Plaintiffs

with regard to the confidentiality clauses in the *Romero* Settlement Agreement and those Settlement Agreements worded materially identically (hereafter, the *Romero* subset of Agreements).  To succeed, the Defendants' evidence must be "so plain that no reasonable person could hold any way but one[,]" that is, that Plaintiffs' statements violated the confidentiality clauses in the *Romero* subset of Agreements.  *Mark V*, 845 P.2d at 1235.  Next, the Court will consider whether Plaintiffs are entitled to summary judgment on their claim for a declaratory judgment that they did not breach the confidentiality agreements in the *Romero* subset of Agreements.  Likewise, Plaintiffs must establish that the evidence is so plain that no reasonable person could conclude that they violated the confidentiality clauses in the *Romero* subset of Agreements.  *Id.*

Neither party has submitted extrinsic evidence to the Court as to the meaning of the confidentiality clauses.  Thus, the Court must determine the evidence of the parties' intent based on the language of the contract.  The *Romero* subset of agreements unambiguously bars disclosure of the conditions, "terms and amount of ***this*** settlement agreement."  [Doc. 465-1, p. 2 (emphasis added)]   The "terms and amount of this agreement" are not disclosed by an aggregated (and non-specific) amount paid in a calendar year, without reference to (or a means for the reader to know) which particular case settled, what the terms and conditions of that settlement were, who the parties were, or what the individual amount of that particular settlement was.  Thus, Defendants have not presented evidence that the Harvey Plaintiffs' disclosures violated the confidentiality clauses.  Defendants argue that the Harvey Plaintiffs disclosures disclosed the fact of settlement, which was a breach of the *Romero* subset of agreements.  [Doc. 465, p. 14]

None of the disclosures, however, identifies any particular cases settled, or the amount for which any particular case settled.   Given that each of the *Romero* subset of agreements refers to the conditions, "terms and amounts of ***this*** agreement," some term, condition or amount of a specific agreement, must have been disclosed to constitute a breach.   Here not even the identity of a particular case which settled was disclosed. Defendants' motions for summary judgment with regard to the *Romero* subset of Agreements are denied.

In addition, The Court concludes that no reasonable person could conclude that the Harvey Plaintiffs' vague reference to settlements by THIB on behalf of THI entities disclosed the terms, conditions, or amount any of the *Romero* subset of agreements.   The plain meaning of the "terms and amounts of ***this*** agreement" unambiguously does not include the disclosure of the total amount paid by THIB to the Harvey Law Firm in one year without any reference to the cases settled or identification of the amounts, terms and conditions of those specific settlements.

Application of the Restatement (Second) of Contracts, § 201 underscores that Defendants are not entitled to summary judgment.   The parties have attached different meanings to the terms of the confidentiality agreements in the *Romero* subset of settlement agreements.   Thus, to win under Subsection 2(a), Defendants must show that they did not know of any different meaning attached by the Harvey Plaintiffs, and that the Harvey Plaintiffs knew of the meaning the Defendants attached to the confidentiality clauses.   Defendants have not proffered any evidence to establish that the Harvey Plaintiffs knew the meaning Defendants attached to the confidentiality clauses in the

*Romero* subset of Agreements, and thus Defendants cannot prevail under Subsection 2(a). Turning to Subsection 2(b), Defendants must show that they had no reason to know of any different meaning attached by the Harvey Plaintiffs, and that the Harvey Plaintiffs had reason to know of the meaning attached by them.  Defendants have not established the second element, that the Harvey Plaintiffs had reason to know of the meaning attached to the confidentiality clauses by Defendants.  The Court looks to the language of the agreement to determine whether the Harvey Plaintiffs had reason to know of the meaning Defendants assigned to the Agreements.  *Farmington Police Officers Ass'n*, 137 P.3d at 1212.  The agreement not to disclose the terms, conditions, or amount of "***this*** settlement agreement" does not so clearly and unambiguously forbid Plaintiffs' disclosures that Defendants are entitled to judgment as a matter of law.  (Emphasis added).

On the other hand, application of the Restatement (Second) of Contracts, § 201(2)(b) establishes that Plaintiffs are entitled to summary judgment.  Applying subsection 2(b), Plaintiffs have submitted evidence, i.e., the unambiguous terms of the confidentiality agreements, that Plaintiffs had no reason to know of any different meaning attached by Defendants and that Defendants had reason to know that the Plaintiffs would believe that their statements--which did not disclose the terms, amount or conditions of any particular agreement--were not a breach of the confidentiality agreement.

Defendants make one more noteworthy argument:  "to lump the *Romero* settlement sum together with five (5) other cases purportedly paid on behalf of

'THI/Fundamental New Mexico nursing homes' – and to file this information in the public record for the world to see on four (4) occasions – is exponentially worse" than disclosing the amount of settlement or that any money was paid in settlement at all. [Doc. 465, p. 17]  The Court recognizes that there are reasons why Defendants may have had a subjective intent to prevent disclosure of an aggregated settlement amount.  *See* Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 485 (1991) ("From the defendant's perspective, confidentiality ensures that the settlement amount will not be used to encourage the commencement of other lawsuits that never would have been brought or as unfair leverage to extract a similar payment in subsequent suits that may be meritless.").  However, the Court enforces "the contract which the parties made for themselves[,]" and "will not give effect to a party's undisclosed intentions."  *ConocoPhillips, Co*, 299 P.3d at 852, 860 (internal quotation marks and citations omitted); *see also Mark V*, 845 P.2d at 1236 ("Evidence may be presented to the fact finder to aid in the interpretation of the agreement, but no evidence should be received when its purpose or effect is to contradict or vary the agreement's terms.").  The *Romero* Settlement Agreements, as written, do not preclude any of Plaintiffs' disclosures.

The Court concludes that Defendants are not entitled to summary judgment on their breach of contract, specific performance, injunctive relief and declaratory judgment claims, with regard to the *Romero* subset of Agreements, and that Plaintiffs are entitled to summary judgment and a declaratory judgment that they have not violated the confidentiality clauses in the *Romero* subset of Agreements.

22

### *The Gutierrez Agreement*

The same analysis applies to the 2006 *Gutierrez* non-disclosure agreement.  The wording of the *Gutierrez* non-disclosure agreement is not materially distinguishable from the *Romero* subset of agreements.  The *Gutierrez* non-disclosure agreement states that the parties agree "they will not disclose any details of this Agreement to any entity or individual . . ."  [Doc. 470-1, p. 2]  Plaintiffs' disclosures in the *Duran* cases and in *Montano* did not disclose any "details" of the *Gutierrez* agreement.  This leaves only the *Valle Norte* disclosure, that Plaintiffs had recovered approximately $3.7 million from "'THI' and its predecessor companies" over the last five years.  Again, the *Gutierrez* case was not identified, nor were the parties to its settlement, or the "details" or amount of the *Gutierrez* settlement agreement disclosed.  Thus, no reasonable person could conclude that Plaintiffs violated the *Gutierrez* non-disclosure agreement.  *Mark V*, 845 P.2d at 1235.  Accordingly, the Court concludes that the Harvey Plaintiffs are entitled to summary judgment and a declaration that they did not breach the *Gutierrez* non-disclosure agreement, and Defendants motions for summary judgment with respect to the *Gutierrez* agreement are denied.

### *The Tafoya and Coca Agreements – Whether Plaintiffs Breached the Agreements*

Finally, the Court considers whether any party is entitled to summary judgment with regard to the *Tafoya* and *Coca* settlement agreements, both entered into in February of 2011.  These agreements are worded significantly differently from the *Romero* subset and *Gutierrez* Agreements.  The *Tafoya* and *Coca* settlement agreements state that the parties agree that they "shall not directly or indirectly, generally or specifically,

disseminate, disclose, provide, or otherwise communicate in any way the terms and amount of this settlement to any entity or outside parties . . ."  [Doc. 473-2, pp. 2-3; Doc. 473-3, p. 3]  Again, to be entitled to summary judgment, either party must establish that the "evidence presented is so plain that it is only reasonably open to one interpretation." *ConocoPhillips Co.*, 299 P.3d at 849 (internal quotation marks and citation omitted).  In this case, the only evidence presented is the wording of the confidentiality agreements. The words "directly," "indirectly," "specifically" and "generally" are not defined, and are ambiguous.  With regard to the *Valle Norte* disclosure, the Court concludes that "the contract is reasonably and fairly open" to either Plaintiffs' or Defendants' construction, and thus, "an ambiguity exists [such that] summary judgment should be denied, and the jury should resolve all factual issues presented by the ambiguity."  *Id.* (internal quotation marks and citation omitted).  Likewise, no party is entitled to summary judgment with respect to whether the statement that "Prior settlements for suits involving THI/Fundamental New Mexico nursing homes have been paid by THIB" as stated in the *Duran* cases and the *Montano* case.  However, with regard to attachment of the Form 1099 to the *Duran* cases and the *Montano* case, the 2010 Form 1099 could not and did not include the settlement amount from the *Tafoya* or *Coca* settlement agreements (which did not settle until 2011).  Plaintiffs, therefore, are entitled to summary judgment and a declaratory judgment that the filing of the Form 1099 in the public records did not breach the *Tafoya* or *Coca* settlement agreements.

Plaintiffs make a lengthy argument that Defendants have not established that the confidentiality clauses were material terms of the settlement agreements, based on five

factors set forth in *Famiglietta v. Ivie-Miller Enter., Inc.*, 966 P.2d 777, 782-84 (N.M.App. 1998).  [Doc. 520, pp. 7-10]  *Famiglietta*, however, considered "materiality" in the context of an issue not present here, whether a "material breach excuses [a] nonbreaching party from performing his contractual obligations."  *Famiglietta*, 966 P.2d at 781 (citation omitted).  *Famiglietta* referred to the Restatement (Second) of Contracts, § 241, which set out the five factors cited by Plaintiffs, which are relevant in applying the rule that: "it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured *material* failure by the other party to render any such performance due at an earlier time."  Restatement (Second) of Contracts § 237 (stating quoted rule) (emphasis added); § 241, Comment (a) (stating that the application of the rule stated in § 237 turns on materiality).  This case does not present the issue of whether one party's breach excuses the other parties' continued performance under a contract.  Moreover, "(e)ven if not material, the failure may be a breach and give rise to a claim for damages for partial breach."  Restatement (Second) of Contracts, § 241, Comment (a).  Thus, the Court concludes that the *Famiglietta* factors are not relevant here and the issue of whether Defendants are entitled to relief under the confidentiality clauses does not turn on whether the clauses are "material."

Defendants Vida Encantada, LLC and THI of New Mexico, LLC are the only defendants here who were parties to the *Tafoya* and *Coca* settlement agreements.  These Defendants have not asked for summary judgment with respect to damages.  [Doc. 473, p. 3]  In response, Plaintiffs object and argue that Defendants have not presented

evidence of causation or damages, and thus they "cannot meet their initial showing as to *prima facie* entitlement to breach of contract." [Doc. 520, pp. 6-7] However, Rule 56(a) allows motions for partial summary judgment, which is what Defendants have sought. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought.") (emphasis added). Plaintiffs did not, in their motion for summary judgment, ask for summary judgment on the ground that Defendants have not produced evidence of damages. [Doc. 462] Thus, the Court will not consider whether Plaintiffs are entitled to judgment on a ground which they did not request.

### *The Tafoya and Coca Agreements – Specific Performance*

"Specific performance is an equitable remedy under contract law." *Kokoricha v. Estate of Keiner*, 236 P.3d 41, 48 (N.M.App. 2010); *Koch v. Koch*; 903 F.2d 1333, 1335-36 (10th Cir. 1990). Where a party establishes a "valid legal contract, free from fraud or duress or other unfairness in its formation, for the breach of which legal damages would be inadequate," the Court may exercise its equitable discretion and order specific performance. *Vanzandt v. Heilman*, 214 P.2d 864, 868 (N.M. 1950) (internal quotation marks and citation omitted). "A decree of specific performance is proper where the remedy at law, in this case damages, is inadequate. To be adequate, the remedy at law must be as certain, prompt, complete, and efficient to attain the ends of justice as a decree of specific performance." *United Nuclear Corp. v. Gen. Atomic Co.*, 629 P.2d 231, 328 (N.M. 1980).

Here, there remains a factual question as to whether the contract was breached. Unless and until the finder of fact decides that the confidentiality clauses were breached, the Court cannot enter summary judgment on the claim for specific performance.  *See Elm Ridge Exploration Co. v. Engle*, 721 F.3d 1199, 1209 n.4, 1222 (10th Cir. 2013) (stating that an action in equity "must be decided by the court rather than a jury," and where legal claims and equitable claims are joined, the court must try the legal claims first and "the jury's findings on any common questions of fact must be applied when the court decides the equitable claims" (internal quotation marks and citation omitted)). Additionally, "[s]pecific performance will not be compelled if under all the circumstances it would be inequitable to do so[,]" and thus the Court must wait until all of the circumstances are developed at trial to determine whether specific performance is equitable.  *Texas v. New Mexico*, 482 U.S. 124, 131 (1987) (internal quotation marks and citation omitted).

<u>*The Tafoya and Coca Agreements – Declaratory Judgment*</u>

In this case, no party disputes that the Court should enter a declaratory judgment, clarifying the rights and obligations of the parties under the settlement agreements at issue.  [Doc. 473, p. 24; Doc. 520, p. 16; Doc. 545, pp. 19-20]  All parties submit that an actual controversy exists between the parties and the Court has the discretion to enter a declaratory judgment, and the Court agrees.  *See Kunkel v. Cont'l Cas.* Co, 866 F.2d 1269, 1273-76 (10th Cir. 1989); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (outlining factors for the district court to consider when exercising its discretion with regard to entertaining declaratory judgment claims).  What is in dispute is

the meaning of the confidentiality clauses in the *Tafoya* and *Coca* settlement agreements, and whether the conduct of the Harvey Plaintiffs constitutes a breach of those confidentiality clauses.  As the Court has held, these are questions for the trier of fact, and until they are resolved no declaratory judgment on the *Tafoya* and *Coca* settlement agreements can issue.

### *The Tafoya and Coca Agreements – Summary of Rulings*

Plaintiffs are granted summary judgment and a declaratory judgment that they did not breach the *Tafoya* and *Coca* settlement agreements by filing the Form 1099 in the public domain.  Plaintiffs' motion for summary judgment that their other disclosures did not breach the *Tafoya* and *Coca* settlement agreements is denied.  [Doc. 462]  Defendant Vida Encantada, LLC's motion for summary judgment is denied.  [Doc. 473]  Defendant THI of New Mexico's motion for summary judgment is denied.  [Doc. 474]

**Breach of Duty**

The Harvey Plaintiffs further ask for summary judgment on Count II of their Complaint, entitled "Declaratory Relief (Breach of Duty)."  [Doc. 162, ¶¶ 150-152; Doc. 462, pp. 1-2]   However, Plaintiffs did not brief this argument, identify any of the elements of their claim, or identify the material facts which are not in dispute relevant to this claim.   "[T]he movant for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *Thomas v. Avis Rent a Car*, 408 Fed. Appx. 145, 151 (10th Cir. 2011) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670-71 (10th Cir. 1998)). It is only after this initial burden is satisfied that the burden of responding shifts to the non-

movant.  *See id*.  "[T]he non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003).  Accordingly, the Court will not grant summary judgment in Plaintiffs' favor on Count II of their Complaint.

**CONCLUSION**

> **WHEREFORE IT IS HEREBY ORDERED:**

A) *Plaintiffs' Motion for Summary Judgment on Claims for Breach of Settlement Agreements* [Doc. 462] is **GRANTED IN-PART AND DENIED IN-PART,** in that Plaintiffs are granted summary judgment on the breach of contract claims brought against them by Defendants THI of New Mexico at Albuquerque Care Center, LLC, THI of New Mexico at Valle Norte, LLC, THI of New Mexico at Casa Maria, LLC, and THI of New Mexico at Las Cruces, LLC, and Vida Encantada, LLC's claims based on the *Ortiz* and *Lesperance* settlement agreements.  Plaintiffs are denied summary judgment on Defendant Vida Encantada, LLC's claim against Plaintiffs for breach of the confidentiality provisions in the *Tafoya* and *Coca* settlement agreements.  Accordingly, it is **THEREFORE HEREBY ORDERED** that:

1. Counts I, II, III and IV against Plaintiffs Dusti Harvey and the Harvey Law Firm by Defendant THINM at Albuquerque Care Center are **DISMISSED WITH PREJUDICE;**

2. Counts I, II, III and IV against Plaintiffs Dusti Harvey and the Harvey Law Firm by Defendant THINM at Vida Encantada based on the *Ortiz* and

*Lesperance* settlement agreements, and based on the attachment of the 2010 Form 1099-MISC to pleadings filed in the public records, are **DISMISSED WITH PREJUDICE;**

3. Counts I, II, III and IV against Plaintiffs Dusti Harvey and the Harvey Law Firm by Defendant THINM at Las Cruces are **DISMISSED WITH PREJUDICE;**

4. Counts I, II, III and IV against Plaintiffs Dusti Harvey and the Harvey Law Firm by Defendant THINM at Casa Maria are **DISMISSED WITH PREJUDICE;**

5. Counts I, II, III and IV against Plaintiffs Dusti Harvey and the Harvey Law Firm by Defendant THINM at Valle Norte are **DISMISSED WITH PREJUDICE;**

B) *THI of New Mexico at Albuquerque Care Center, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 465] is **DENIED;**

C) *THI of New Mexico at Casa Maria, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 468] is **DENIED;**

D) *THI of New Mexico at Las Cruces, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory*

*Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 469] is **DENIED**;

E) *THI of New Mexico at Valle Norte, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 470] is **DENIED**;

F) *THI of New Mexico at Vida Encantada, LLC's Motion for Summary Judgment on its Breach of Contract, Specific Performance, Injunctive Relief and Declaratory Judgment Causes of Action and on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 473] is **DENIED**;

G) *THI of New Mexico LLC's Motion for Summary Judgment on Plaintiffs' Declaratory Relief Causes of Action* [Doc. 474] is **DENIED**;

**IT IS SO ORDERED** this 18th day of March, 2014.


_____
M. Christina Armijo
Chief Judge, United States District Court

31