IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DUSTI HARVEY,
and HARVEY LAW FIRM, LLC,
      Plaintiffs,

v.                                                           No. 12-CV-727 MCA/RHS

THI OF NEW MEXICO AT ALBUQUERQUE
CARE CENTER, LLC; THI OF NEW MEXICO
AT VALLE NORTE, LLC d/b/a Valle Norte
Care Center; THI OF NEW MEXICO AT VIA
ENCANTADA, LLC, d/b/a Vida Encantada
Nursing and Rehab; THI OF NEW MEXICO
AT CASA MARIA, LLC; THI OF NEW MEXICO
AT LAS CRUCES, LLC; THI OF NEW MEXICO,
LLC; FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC; AND CHRISTINE A. ZACK,
a/k/a CHRISTINE A ZACK GUNDERSON.

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion for Leave to File Amended Answers and Amended or Original Counterclaims Based on Spoliation of Evidence*. [Doc. 480; Doc. 481 (additional exhibits)] The Court, having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, hereby **DENIES** the motion.

**I.**      **BACKGROUND**

1

### A.     *Pertinent Dates and Events*

The Plaintiffs in this case have represented clients in lawsuits against the Facility Defendants for several years.  From 2006 through 2011, Plaintiffs signed various settlement agreements with each of the five Facility Defendants, and those settlement agreements contained variously worded confidentiality agreements. [Doc. 162, ¶¶ 22-71] This lawsuit stems from, among other things, allegations by Defendants that Plaintiffs violated those confidentiality agreements by making certain statements in legal pleadings filed in five cases and by attaching thereto a 2010 Form 1099-MISC which showed the unredacted amount paid by THI of Baltimore to The Harvey Law Firm during the 2010 tax year.  [*See, e.g.*, Doc. 74, pp. 35-36 ¶¶ 20-24, pp. 40-41, ¶¶ 44-45 ]

In December of 2011, each of the Facility Defendants separately filed lawsuits against Plaintiffs, alleging breaches of the confidentiality agreements in various settlement agreements. [Doc. 162, ¶¶ 71-81]   On April 12, 2012, Plaintiffs filed this action in state court seeking a declaration that they had not breached the confidentiality agreements, as well as bringing claims for malicious abuse of process, prima facie tort and other claims. [Doc. 1-2, ¶¶ 146-184]   Defendant FAS answered in State Court (without filing a counterclaim) and then removed the case to this Court on July 3, 2012. [Doc. 1; Doc. 1-13, p.17]   On September 4, 2012, the parties filed a Joint Status Report, in which the Facility Defendants stated that they intended to file counterclaims against the Harvey Plaintiffs and requested until January 11, 2013, to file amended pleadings. [Doc. 19, p. 3-4] Defendant

FAS stated it did not intend to file any amended pleading. [Doc. 19, p. 4] The Court adopted the parties Joint Status Report. [Doc. 21] The Facility Defendants timely amended their answers and added counterclaims on November 16, 2012. [Docs. 70, 71, 72, 73, 74]

### B. *Defendants' Proposed Amended Answers and Counterclaims*

The Facility Defendants and Defendant FAS (hereafter, Defendants) now seek to amend their Answers to add affirmative defenses and to amend their Counterclaims to add claims for spoliation of evidence. Defendants propose to allege:

52. Starting on September 20, 2010, (the date that THI of New Mexico at Valle Norte, LLC filed the Valle Norte Lawsuit), Ms. Harvey was or should have been aware that she had a duty to preserve all electronically stored information related not only to the *Tracy* Case, but to her practice, in general, given the allegations and discovery sought in the *Tracy* Case.

53. Albuquerque Care has reason to believe that Ms. Harvey was sharing confidential information she obtained through discovery in New Mexico cases with personal injury attorneys in South Carolina. Indeed, in November 2010, Ms. Harvey attempted to extort settlement on professional liability cases from various Defendants in this case by threatening to "sell" her cases to Jim Wilkes, the self-styled "pioneer of nursing home litigation." Albuquerque Care has reason to believe that in the course of negotiating a sale of her cases to Mr. Wilkes – and based upon Ms. Harvey's disclosure of other confidential documents and information to South Carolina counsel – that she also disclosed confidential settlement amounts.

54. By early June 2011, Ms. Harvey was also on notice of anticipated litigation against herself individually and her firm for the disclosure of confidential settlement amounts in court filings in the *Duran, Lucero, Patton* and *Montano* matters and on December 21, 2011, Albuquerque Care filed the First Filed Case against the Harvey Plaintiffs.

3

[Doc. 480-4, p. 14, ¶¶ 52-54] [1]

---

[1] Each of the Facility Defendants' Proposed Amended Answers and Counterclaims adds essentially the same allegations.  For ease, the Court has quoted only one of the Proposed Amended Answers and Counterclaims.  Defendant FAS also seeks to amend its Answer to add a counterclaim, but its Proposed Amended Answer and Counterclaim contains substantially fewer allegations, and does not include the excerpts here.  Instead FAS's Proposed Amended Answer and Counterclaim seeks to add the following paragraphs:

> 48.    During the course of discovery in this case, one or more of the Facility Defendants, in a request for production, asked the Plaintiffs for all documents that evidence or relate to communications with third parties related to the *Romero* Case, the settlement of the *Romero* Case and/or the Confidential Final Settlement Agreement and Release related to the *Romero* Case.  FAS also asked for documents that evidence communications between any plaintiff herein and Jim Wilkes and/or any other lawyer at the Wilkes & McHugh, P.A. law firm that are related to the *Romero* Case, the settlement of the *Romero* Case and/or any other lawsuit involving FAS.
> . . .
> 51.    At her deposition in this matter (on May 2, 2013), and despite knowledge that this lawsuit at least potentially existed, Counterdefendant Harvey admitted that she had had electronic mail correspondence with Jim Wilkes, said that she does not have copies of those electronic communiqués, and stated that copies of those communications are not in HLF's hard drive because they had been deleted and/or "eliminated."
> . . .
> 61.    The Counterdefendants – due to the actions outlined extensively above – had knowledge of the potential lawsuit(s).
> 62.    Nonetheless, the Counterdefendants participated in the destruction, mutilation, or significant alteration of potential evidence.
> 63.    The Counterdefendants did so with the intent to disrupt or defeat this lawsuit.
> 64.    A causal relationship exists between the Counterdefendants' acts of spoliation and the inability to prove certain aspects and in particular defense of this Defendant and Counterclaimant in this lawsuit.
> 65.    By reason of Counterdefendants' intentional spoliation of evidence,

The Facility Defendants' Proposed Amended Counterclaims also allege that on May 2, 2013, Defendants deposed Plaintiff Harvey, and several excerpts from the deposition are included in the Proposed Amended Counterclaims. [Doc. 480-4, p. 15, ¶ 58] In her deposition, Plaintiff Harvey admitted that she had email communications with an attorney, Jim Wilkes and that she does not have copies of those emails. [Doc. 480-4, p. 16, ¶ 58] As to the content of the emails, she stated: "The only e-mails that I would have had with Jim Wilkes is in reference to THI or Fundamental . . . or the related entities." [Id.] She further testified that she had spoken to Ray Mullman, a plaintiff's counsel, "about THI and Fundamental." [Id.] As to both Mr. Mullman and Mr. Wilkes, Plaintiff Harvey testified that she had "shared depositions, pleadings, and non-confidential discovery responses." [Id.] She testified that she had deleted her emails with Mr. Wilkes before this lawsuit was filed, and that the Harvey Law Firm does not have an email elimination policy. [Doc. 480-4, pp. 15-16, ¶ 58]

After Plaintiff Harvey's deposition, Defendants' Counsel sent to Plaintiffs' Counsel a six-page letter detailing their definition of electronically stored information and how it wanted such evidence to be preserved. [Doc. 480-1, pp. 17-22] The letter stated:

> FAS has been damaged in an amount to be proven at trial and seeks all nominal, compensatory and statutory damages allowable and likewise seeks an award of punitive damages, its attorneys' fees and costs, pre- and post-judgment interest, and any other relief deemed appropriate under the circumstances of this case.

[Doc. 480-2, pp. 36, 38]

5

> By this notice we hereby demand that you and your client, The Harvey Law Firm, LLC . . . preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to communications with and/or about any of the above referenced matters of litigation or otherwise involving in any way our client Fundamental Administrative Services, LLC or any of the Defendants in the above-referenced matter of litigation or their affiliates and offices.

[Doc. 480-1, p. 18] Subsequently, Defendant FAS noticed a Rule 30(b)(6) deposition of Plaintiff Harvey Law Firm concerning its electronic mail and document retention, destruction and litigation hold policies. [Doc. 480-4, p. 17, ¶ 59] The Harvey Law Firm provided an uncertified paralegal to testify. [Doc. 480-4, p. 17, ¶ 61] The paralegal testified that the Harvey Law Firm does not have an email retention policy, and that the attorney and paralegal determine, on a case by case basis, which emails to keep and which to delete, depending on whether they "feel it's something we might need later." [Doc. 480-4, p. 20, ¶ 64] She further testified: "Anything that comes in, we save, other than e-mails. So I don't think we've ever really had a need for a litigation hold[.]" [Id.]

In addition to the action for spoliation of evidence, Defendants seek to amend their answers to include affirmative defenses based on the purported spoliation of evidence. Representative of the affirmative defenses Defendants seek to add are those of THI of New Mexico at Albuquerque Care Center, which state:

> 219. The Harvey Plaintiffs' claims are barred due to negligent and/or intentional Spoliation of Evidence.
> 220. Albuquerque Care asserts that as a matter of law it is entitled to an instruction to the trier of fact that the Plaintiff[s] failure to institute a litigation hold and failure to not destroy documents that might lead to

> the discovery of admissible evidence is an inference that the documents not preserved were unfavorable to the claims and Defense of the Plaintiffs and that the same were not preserved in order to avoid unfavorable outcomes and inferences as to its claims and Defenses in the above-captioned matter of litigation.
>
> 221. Plaintiffs' claims are barred by a number of equitable maxims, including, but not limited to, the following:
>     A. Equity suffers no right to be without a remedy;
>     B. Equity regards substance rather than form;
>     C. Equity regards that as done which out to be done;
>     D. Equality is equity;
>     E. Where the equities are equal, the first in time will prevail;
>     F. Where equities are equal, the law will prevail;
>     G. Equity follows the law;
>     H. Equity acts in *personam*, not in *rem*;
>     I. Equity aids the vigilant, not those who sleep on its rights;
>     J. He who comes into equity must come with clean hands; and
>     K. He who seeks equity must do equity.

[Doc. 480-4, p.1-2][2]

## II. ANALYSIS

### A. *Proposed Counterclaim*

#### i. Legal Standard

Where case-management deadlines have been established, Federal Rule of Civil Procedure 16(b)(4) and D.N.M.LR-Civ. 16.1 govern a motion to amend a pleading. *Miller ex rel S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 455 F.Supp.2d 1286, 1304 (D.N.M. 2006); *ACC Consultants, Inc. v. Logistics Health, Inc.*, 2011 WL 5212262, *4,

---

[2] Defendant FAS' Proposed Amended Complaint contains the affirmative defense that it is entitled to an instruction on an inference and the affirmative defense detailing the equitable maxims, but does not contain the defense that Plaintiffs' claims are barred.

Civ. No. 09-1145 JP/RHS (D.N.M. 2011) (noting that the Tenth Circuit has not addressed how Federal Rules of Civil Procedure 16(b)(4) and 15(a)(2) should be applied where a party moves to amend its pleading after the deadline set in the scheduling order has passed, and concluding that Rule 16(b)(4)'s "good cause" standard should be applied before considering Rule 15). Rule 16(b)(4) requires a party to show good cause to be granted leave to amend a pleading.

> The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements. Under this standard, the Court may grant leave to modify the pretrial schedule and amend the complaint under Rule 16(b) only if the schedule cannot reasonably be met despite the diligence of the party seeking the extension. Prejudice to the adverse party is also a factor to be considered.

*Miller*, 455 F.Supp.2d at 1304 (internal quotation marks and citations omitted). If a party is not diligent in moving to amend, "the inquiry should end." *ACC Consultants,* 2011 WL 5212262, *4 (internal quotation marks and citation omitted). If a party is diligent, however, then Court analyzes whether justice requires leave to amend under Rule 15, which includes consideration of whether the amendment would be futile. *Id.* at *4-5; *Foman v. Davis*, 371 U.S. 178, 182 (1962) (reasons to deny a motion for leave to amend a pleading under Rule 15 include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment"); *accord Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996).

A motion to amend a complaint or counterclaim is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). Under Federal Rule of Civil Procedure 12(b)(6), a complaint is subject to dismissal if it fails "to state a claim upon which relief can be granted." The sufficiency of a complaint is a question of law, and when addressing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). The Supreme Court retired the standard for pleading that only allowed dismissal for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" in *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 561-63 (2007). As explained by the Supreme Court in *Ashcroft v. Iqbal*, *Twombly* requires this Court to measure pleadings using two principles:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). *Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.* Second, only a complaint that states a plausible

> claim for relief survives a motion to dismiss. *Id.*, at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. 662, 678-79 (2009) (emphasis added). Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

    ii.    Timeliness of Motion

*Defendants' Motion for Leave to File Amended Answers and Amended or Original Counterclaims Based on Spoliation of Evidence* was filed on August 16, 2013, over eight months past the agreed upon deadline for Defendants to file amended answers and counterclaims. [Doc. 480; Doc. 19, pp. 3-4] Thus, according to Rule 16(b)(4), the Court must consider whether Defendants have shown good cause to amend their counterclaims. Defendants assert that they first learned of the spoliation of evidence at Plaintiff Harvey's deposition, held on May 2, 2013, and that the spoliation was confirmed at the deposition of the Harvey Law Firm's Rule 30(b)(6) representative, on June 26, 2013. [Doc. 511, p. 5; *see also, e.g.,* Doc. 480-4, p. 15, ¶ 58, p. 18, ¶ 64] Defendants' Motion was, thus, filed fifteen weeks after Defendants purportedly learned of the alleged spoliation of evidence and seven weeks after Defendants confirmed the alleged spoliation. [Doc. 480]

Defendants have persuasively argued that they could not have filed this motion prior

to May 2, 2013, when they learned that the Harvey Law Firm had not saved the emails they sought. Defendants further argue that they did not learn of the Harvey Law Firm's policy on saving and destroying emails until June 26, 2013, when they deposed the Firm's Rule 30(b)(6) representative. [Doc. 511, pp. 5-6] Though it was clear from May 2, 2013 that the emails Defendants sought were deleted, even assuming that Defendants did not learn of the destruction of potential evidence until June 26, 2013, Defendants have made no attempt to show good cause for the seven weeks which passed before they filed the Motion to Amend. Because Defendants have failed to offer any explanation for this delay, Defendants have not demonstrated good cause for allowing the proposed amendment. *See Rowen v. New Mexico*, 210 F.R.D. 250, 253 (D.N.M. 2002) (concluding that the plaintiff's failure to provide any reason for a thirty day delay from the plaintiff's deadline to file an amended complaint gave the Court "no choice but to deny Plaintiff's request to amend the First Amended Complaint"); *compare Pandolfo v. Labach*, 2009 WL 1255529, *1, 3, No. CIV 08-0231 JB/DJS (D.N.M. 2009) (allowing amendment where untimeliness of motion was not entirely attributable to moving party and motion to amend was filed within one to one-and-a-half months of confirming that evidence was intentionally lost). Having concluded that Defendants have not demonstrated good cause for the delay in filing the Motion to Amend, the Court need not consider prejudice to the Plaintiffs. *ACC Consultants, Inc.*, 2011 WL 5212262, *4.

  iii. <u>Futility of Adding Counterclaim for Spoliation</u>

Further and alternatively, the Court concludes that it would be futile to allow Defendants to add a counterclaim for spoliation of evidence. The New Mexico Supreme Court has recognized the tort of intentional spoliation of evidence, and has set forth the following elements of the cause of action:

> (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on the part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages.

*Torres v. El Paso Elec. Co*., 987 P.2d 386, 401 (N.M. 1999) (internal quotation marks and citation omitted), *overruled on other grounds by Herrera v. Quality Pontiac*, 73 P.3d 181 (2003); *see also* UJI 13-1650 NMRA ("Spoliation of Evidence"). As to intent, a plaintiff must prove the destruction of evidence was done *maliciously*, with the *sole* intent to defeat the lawsuit to proceed with an independent cause of action. *Torres*, 987 P.2d at 404-07 (upholding directed verdict of claim for intentional spoliation of evidence because the plaintiff did not prove that the defendant had "the sole intent to maliciously defeat or disrupt a lawsuit").

Here, the Court concludes that the Proposed Amended Complaints do not plausibly plead any of the elements of a cause of action of spoliation of evidence. The Proposed Amended Complaints allege that Plaintiff Harvey had electronic correspondence with Jim Wilkes and Ray Mullman and that she deleted those communications sometime before this case was filed. Defendants surmise that "it is very likely that she destroyed

communications with Mr. Wilkes (and others) after the Valle Norte Lawsuit was filed" and there is "a possibility" that the emails were destroyed after Defendants sued Plaintiffs for breach of contract. [Doc. 480-4, p. 21, ¶ 69] However, without any non-conclusory allegation as to the date that the emails were deleted, the Court cannot conclude that Defendants have plausibly alleged that either there was a potential lawsuit (element 1) or that Plaintiffs knew of the potential lawsuit (element 2).  Moreover, Defendants have not plausibly alleged that the deleted emails between Plaintiffs and Mr. Wilkes were somehow relevant, i.e., potential evidence, in this case (element 3).  The closest Defendants come to such an allegation is the claim that they have "reason to believe that in the course of negotiating a sale of her cases to Mr. Wilkes – and based upon Ms. Harvey's disclosure of other confidential documents and information to South Carolina counsel – that she also disclosed confidential settlement amounts." [*See, e.g.,* Doc. 480-4, p. 14, ¶ 53] However, Defendants do not allege their reason for such a belief, i.e., what "other confidential documents" she shared, or facts supporting the "reason to believe" confidential information was shared when "negotiating" a sale of her cases.  Thus, these "facts do not permit the court to infer more than the mere possibility of misconduct[.]"  *Iqbal,* 556 U.S. at 679; *Robbins v. Oklahoma*, 519 F.3d 1242, 1252 (10th Cir. 2008) (declining to "imagine" factual allegations, and holding that under *Twombly,* "without more specificity, plaintiffs have not nudged their claims across the line from conceivable to plausible" (internal quotation marks and citation omitted));  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d

13

1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."). Moreover, the deposition testimony quoted in the proposed amended complaints undermines any reason to believe that Plaintiffs disclosed confidential settlement amounts, as Plaintiff Harvey stated that she shared: "depositions, pleadings, and non-confidential discovery responses." [*See* Doc. 480-4, p. 16, ¶ 58] Defendants have not made any allegation that Plaintiff Harvey's act of sharing of depositions, pleadings and non-confidential discovery responses was a breach of the confidentiality clauses, or a malicious abuse of process, or somehow relevant to one of their other causes of action or defenses. As such, Defendants have not alleged that such correspondence would be potential evidence in this case. Concomitantly, Defendants have made no plausible allegation of (element 5) the "causal relationship between the act of spoliation and the inability to prove the lawsuit." Nor have Defendants plausibly alleged damages (element 6).

Most significantly, however, Defendants have made no attempt to allege (element 4) Plaintiffs' sole, malicious intent to defeat or disrupt the lawsuit. *Torres* is particularly instructive as to the malicious intent element. In *Torres*, while the Plaintiff was installing a new roof on his employer's greenhouse, a metal rod he was holding touched a nearby high voltage conductor causing him injuries. *Torres*, 987 P.2d at 389. The plaintiff

14

introduced evidence that the electric company negligently maintained the high voltage power pole adjacent to the greenhouse, which was tilted down toward the greenhouse, was cracked and twisted, and was not replaced despite several individuals warning the electric company that the power line was dangerously close to the greenhouse. *Id.* at 389-90. After the plaintiff was injured, the electric company had the pole removed, cut into sections and discarded, rather than preserved for evidence at trial. *Id.* at 390. Further, the electric company could not produce measurements from the power conductor to the greenhouse though it purportedly took those measurements. *Id.* Employees of the electric company testified that they had cut the pole into pieces to remove it solely based on safety concerns and that the pieces were not saved because they thought measurements and photographs had been taken which would be sufficient for evidentiary purposes. *Id.* at 406. Based on these facts, the Court concluded that the plaintiff had introduced evidence of every element of the tort of intentional spoliation of evidence except evidence that the electric company had intentionally destroyed the pole with the sole intent to disrupt or defeat the lawsuit. *Id.* at 404. The Court stated that "the element of an intent to disrupt or defeat a lawsuit refers not to a mere intentional act but to a level of culpability that is particularly egregious in civil actions: a malicious intent to harm" and this must be the sole intent of the action. *Id.* at 404-05.

Here, Defendants' Proposed Amended Complaints contain no non-conclusory factual allegations as to Plaintiff Harvey's intent in deleting her emails with Jim Wilkes and

15

Ray Mullman.  Accordingly, because Defendants' have failed to plausibly plead any of the elements of the tort of spoliation of evidence, Defendants' Motion to Amend their Counterclaims to add this claim is denied as futile.

### B. *Affirmative Defenses*

#### i. Legal Standard

"In responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it[.]" Fed.R.Civ.P. 8(b)(1)(A).  Affirmative defenses which are not pleaded are deemed waived.  *Renfro v. City of Emporia, Kansas*, 948 F.2d 1529, 1539 (1991).  The motion to amend the answers to add affirmative defenses is measured against the same, Rule 16(b)(4) good cause standard as a motion to amend to add a claim (or counterclaim).  *See ACC Consultants, Inc.*, 2011 WL 5212262, *5.

#### ii. Timeliness

Defendants seek to amend their answers to add new affirmative defenses. [*See, e.g.*, Doc. 480-4, p. 1 ¶¶ 219-221; Doc. 480-2, p. 24, ¶¶ 204-05]  The affirmative defenses which Defendants seek to add are three-fold.  First, the Facility Defendants (but not Defendant FAS) seek to add an affirmative defense that Plaintiffs' claims are barred to due the negligent or intentional spoliation of evidence. [Doc. 480-4, p. 1, ¶ 219]  Second, Defendants seek to add an affirmative defense that they are entitled to an instruction that Plaintiffs' failure to institute a litigation hold and the purported destruction of evidence "is

16

an inference that the documents not preserved were unfavorable to the claims and Defenses of the Plaintiffs and that the same were not preserved in order to avoid unfavorable outcomes and inferences as to its claims and Defenses in the above-captioned matter of litigation." [Doc. 480-4, p. 1 ¶ 220; Doc. 480-2, p. 24, ¶ 204] Finally, Defendants seek to amend their answers to add a laundry list of equitable maxims. [Doc. 480-4, p. 1-2, ¶ 221; Doc. 480-2, p. 24, ¶ 205]

As with the counterclaim, Defendants have not established good cause for their delay of fifteen weeks from the date they deposed Plaintiff Harvey and seven weeks from the date they deposed the Harvey Firm's Rule 30(b)(6) designee until they filed their motion to amend. This ground alone is sufficient to deny Defendants' motion.

### iii. Futility

Further and alternatively, amendment of the complaint to add the affirmative defenses that the spoliation is a bar to the Plaintiffs' claims and that they are entitled to an instruction on an based on the spoliation would be futile. Under our Tenth Circuit precedent, in order to warrant an adverse inference instruction based on spoliation, the proponent of the instruction must establish that the evidence was destroyed out of bad faith rather than negligence. *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149-50 (10th Cir. 2009). For the same reasons that Defendants failed to allege a malicious intent on the part of Plaintiffs, as explained above, Defendants have failed to allege that the destruction of the emails was done with bad faith. Even to warrant a lesser sanction than

an adverse inference instruction, a party must show that it was "actually, rather than merely theoretically" prejudiced by the destruction of evidence. *Burlington N. and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032-33 (10th Cir. 2007). Here, Defendants have not plausibly alleged that the emails which have been deleted would be relevant to their claims or defenses in this case. Accordingly, an adverse inference instruction is not warranted.

Finally, amendment to add the "equitable maxims" as an affirmative defense would also be futile. Several of these equitable maxims are not, in and of themselves, affirmative defenses, but rather general concepts used in understanding and applying the equitable defenses of estoppel and unclean hands. *See Worthington v. Anderson*, 386 F.3d 1314, 1319 (10th Cir. 2004) ("The key defect in the Worthingtons' argument lies in their confusion of an equitable maxim that requires a plaintiff to behave equitably ('he who seeks equity must do equity') with a defense available to a defendant who has behaved inequitably ('unclean hands')."). As further explained by Professor Dobbs:

> [E]quity developed a number of largely substantive maxims. These maxims were general and unfocused, and therefore adaptable to a wide variety of situations. They can hardly be called laws, much less rules, but, as would be expected, they reflect the ethical ideals and claims of the equity courts. For example, maxims proclaim that "equality is equity," that "equity regards substance rather than form," and "one who comes into equity must come with clean hands." . . . Although equity developed other substantive rules, most of these can best be considered in connection with particular substantive topics [i.e., estoppel].

Dan B. Dobbs, Dobbs Law of Remedies §2.3(4) (1993).

Furthermore, as pleaded, the proposed answer does not connect these equitable

maxims in anyway to the purported spoliation of evidence, nor do Defendants' briefs explain how any of the maxims are applicable. For example, Defendants' proposed Amended Answers list the equitable maxim that "equality is equity." [*See, e.g.,* Doc. 480-4, p. 2, ¶ 221(D)]. In New Mexico tort law, this maxim was applied in the days when New Mexico applied contributory negligence to torts, to require contribution among joint tortfeasors at a pro rata share. *Commercial Union Assurance Cos. v. W. Farm Bureau Ins. Cos.*, 601 P.2d 1203, 1204 (N.M. 1979). Since contributory negligence was abandoned, New Mexico courts have not discussed the concept of "equality is equity" in the context of tort law. Without any explanation by Defendants of how this maxim supports an affirmative defense related to the spoliation of evidence, the Court concludes that pleading the maxims as affirmative defenses would be futile.

Thus, Defendants' Motion to Amend their answers to add the above affirmative defenses is denied as untimely and as futile.

### III. CONCLUSION

**WHEREFORE, IT IS HEREBY ORDERED** that *Defendants' Motion for Leave to File Amended Answers and Amended or Original Counterclaims Based on Spoliation of Evidence* [Doc. 480] is hereby **DENIED.**

**IT IS SO ORDERED THIS** 31st day of March, 2014.

_____
M. Christina Armijo
Chief Judge, United States District Court