IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DUSTI HARVEY,**
**and HARVEY LAW FIRM, LLC,**

      Plaintiffs,

v.             No.  12-CV-727 MCA/RHS

**THI OF NEW MEXICO AT ALBUQUERQUE**
**CARE CENTER, LLC; THI OF NEW MEXICO**
**AT VALLE NORTE, LLC d/b/a Valle Norte**
**Care Center; THI OF NEW MEXICO AT VIDA**
**ENCANTADA, LLC, d/b/a Vida Encantada**
**Nursing and Rehab; THI OF NEW MEXICO**
**AT CASA MARIA, LLC; THI OF NEW MEXICO**
**AT LAS CRUCES, LLC; THI OF NEW MEXICO,**
**LLC; FUNDAMENTAL ADMINISTRAVE**
**SERVICES, LLC; AND CHRISTINA A. ZACK,**
**a/k/a CHRISTINE A. ZACK GUNDERSON.**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment on Plaintiffs' Defamation Claims ("Motion").  [Doc. 467.]  Having considered the submissions of the parties and the relevant law, the Court finds that Defendants' Motion [Doc. 467] is well taken and is **GRANTED**.

### I.

### PROCEDURAL AND FACTUAL BACKGROUND

On April 12, 2012, Plaintiffs filed a Complaint for Declaratory and Affirmative Relief in the Second Judicial District Court, County of Bernalillo, New Mexico, styled

1

*Dusti Harvey et al. v. THI of New Mexico at Albuquerque Care Center, LLC et al.,* Case No. D-202-CV-2012-03585.  Plaintiffs named the following "THI Facility Defendants": THI of New Mexico at Albuquerque Care Center, LLC; THI of New Mexico at Valle Norte, LLC; THI of New Mexico at Vida Encantada, LLC; THI of New Mexico at Casa Maria, LLC; and THI of New Mexico at Las Cruces, LLC.  Plaintiffs also named as Defendants THI of New Mexico, LLC; THI of Baltimore, Inc.;[1] Fundamental Administrative Services, LLC; and Christine A. Zack.  On July 3, 2012, Defendant Fundamental Administrative Services, LLC removed the action to this Court pursuant to 28 U.S.C. § 1441(a) because it is between citizens of different States and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  [Doc. 1.]

The primary issue in this case involves allegations by the THI Facility Defendants that Plaintiffs violated the confidentiality provisions contained in several settlement agreements when they made certain statements in subsequent lawsuits referencing aggregate settlement payments they had received from THI of Baltimore, Inc., and Fundamental Long Term Care Holdings.  [Doc. 162 at 16.]  Plaintiffs filed this action seeking a declaration that they did not breach the confidentiality provisions of the settlement agreements, and bringing claims for malicious abuse of process, prima facie tort, defamation and civil conspiracy.  [*See* Doc. 162.]  Each of the THI Facility Defendants filed counterclaims alleging breach of contract and malicious abuse of process, and seeking specific performance, injunctive relief, and declaratory judgment.

---

[1] THI of Baltimore was voluntarily dismissed on January 10, 2013.  [Doc. 143.]

[*See* Docs. 70, 71, 72, 73, 74.]  Defendant THI of New Mexico also filed a counterclaim against the Plaintiffs asserting malicious abuse of process.  [*See* Doc. 105.]

### A.     **Plaintiffs' Defamation Claim**

On June 13, 2007, the Harvey Law Firm filed suit on behalf of their then-client James Tracy against, *inter alia*, THI of New Mexico at Valle Norte ("THINM Valle Norte") for injuries sustained while a resident of Valle Norte ("Tracy Lawsuit"). [Doc. 162 at 23, ¶ 130.]  At the time of filing the Tracy Lawsuit, Mr. Tracy represented to the Harvey Law Firm that he had suffered priapism,[2] had undergone a delay in receiving treatment by the nursing home, and had experienced an amputation or auto-amputation of his penis.  *See THI of New Mexico at Valle Norte v. Harvey*, 802 F.Supp.2d 1257, 1260 (D.N.M. 2011).  The Tracy Lawsuit therefore alleged that, while under the care of THINM Valle Norte, Mr. Tracy suffered "injuries and harm," including but not limited to a loss of his penis.  *Id.*  THINM Valle Norte later learned, however, that Mr. Tracy had not suffered an amputation or auto-amputation of his penis after all.  *Id.*  In June 2008, the Harvey Law Firm withdrew from representation.  *Id.* at 1261.  In July 2008, Mr. Tracy voluntarily dismissed his lawsuit.  *Id.*  In August 2008, the district court granted THI's motion for summary judgment.  *Id.*  All of Mr. Tracy's claims were dismissed with prejudice.  [Doc. 467 at 6, ¶ 5.]

On September 20, 2010, THINM Valle Norte filed a complaint in federal court ("Valle Norte Lawsuit") alleging that the Harvey Law Firm had initiated the Tracy

---

[2] Priapism is a prolonged erection of the penis. The unwanted, persistent erection isn't caused by sexual stimulation or arousal, and priapism is usually painful.  http://www.mayoclinic.org/diseases-conditions/priapism/basics/definition/con-20029378

Lawsuit without probable cause.  [Doc. 467 at 6, ¶ 3.]  One of the attorneys representing THINM Valle Norte in the Valle Norte Lawsuit was Bryan J. Davis.  On November 16, 2010, the Albuquerque Journal published an article about the Valle Norte Lawsuit titled "*Nursing Home Sues Over Case*."  [Doc. 467 at 6, ¶ 6.]  Therein, Attorney Davis was quoted as saying, "I think it's a case that needs to be prosecuted to show lawyers in the state that you can't just file garbage and expect to get away with it."  [Doc. 467 at 6-7, ¶ 8; Doc. 467-2.]

Plaintiffs claim in their Complaint here that they were wrongfully disparaged and defamed by the Defendants because Attorney Davis stated in reference to the Tracy Lawsuit that "you can't just file garbage and expect to get away with it."  [Doc. 162 at 24, ¶ 135.]  Plaintiffs also claim that Defendants' disparagement and defamation was done purposefully and maliciously with the intent to injure their business and law practice and their personal and professional reputations.  [Doc. 162 at 24, ¶ 136.]

### B.   The Albuquerque Journal Article

The Albuquerque Journal article "*Nursing Home Sues Over Case*" is a news story about THINM Valle Norte suing the Harvey Law Firm in federal court "over what it says was a false allegation that it was responsible for the amputation of a man's penis." [Doc. 467-2.]  The article identifies the parties to the litigation as THI Valle Norte, Dusti Harvey, Feliz Rael, and the Harvey Law Firm.  [Id.]  The article provides quotes from the federal court complaint stating that the nursing home was claiming the Harvey Law Firm had filed the Tracy Lawsuit "without probable cause to believe that the central allegation that he had suffered an amputation or auto-amputation of his penis was true," and that

4

"despite the lawsuit's repeated claims that the patient – now deceased – had lost his penis, before-and-after photos prove that's not the case." [Id.]  The article also quotes directly from the Tracy Lawsuit wherein plaintiff "claimed Valle Norte nursing home, where the patient resided during April 2005, failed to adequately assess, evaluate or supervise nursing staff.  The result, the complaint said, was 'severe delay in treatment of priapism resulting in loss of (his) penis.'" [Id.]  The article explains that the Harvey Law Firm eventually withdrew from representing Mr. Tracy and that the Tracy Lawsuit was dismissed on summary judgment before trial.  [Id.]

      The remainder of the article consists of several comments made on behalf of the parties.  Attorney Jack Brant spoke on behalf of the Harvey Law Firm, and Attorney Bryan Davis spoke on behalf of THINM Valle Norte.  The following comments are attributed to Attorney Jack Brant:

> Attorney Jack Brant, who is representing the Harvey Law Firm, said misidentifying a claim doesn't equate to malicious abuse of process.
>
> "The important thing is, he did suffer a very serious injury to his penis and it caused a lot of distress and permanent impairment, pain, scarring," Brant said.  "Did they make representations his penis had been amputated or autoamputated?  Yes.  Maybe that's not true.  But in our view, it was still a valid lawsuit."
>
> "The claim in the underlying case, and what we contend in this case as well, is that he reported the condition to the nursing home people and they treated it as a joke and didn't get him care," Brant said.

The following comments were attributed to Attorney Bryan Davis:

> Bryan Davis, the attorney representing THI, said he believes the amputation claim wasn't adequately investigated and was filed for the purpose of gaining a tactical advantage in other lawsuits against the nursing home.

> "I think we will prove to the court that (the Harvey firm) did not investigate the claim in any significant manner. They took their client's word for it that he had been horribly injured. It's not like he slammed his finger in the door," Davis said.
>
> Davis said THI is pressing its lawsuit to vindicate its rights and recoup the "hundreds of thousands of dollars" the corporation incurred in legal fees and costs.
>
> "I think it's a case that needs to be prosecuted to show lawyers in the state that you can't just file garbage and expect to get away with it," he said.

[Id.]

## II.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted). "The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment." *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). "It is not [the court's] province at the summary judgment stage to weigh the evidence or make credibility determinations." *Sanders v. Sw. Bell Tele., L.P.*, 544 F.3d 1101, 1105-06 (10th Cir. 2008).

## III.

## ANALYSIS

Defendants move this Court for summary judgment on Plaintiffs' defamation claim, arguing that Attorney Davis's characterization of the Tracy Lawsuit as "garbage" is unambiguously a nonactionable opinion. [Doc. 467 at 15.]  The Court agrees that as a matter of law Attorney Davis's comment is a statement of opinion and Defendants are therefore entitled to summary judgment in their favor.

Under New Mexico law, a prima-facie case of the tort of defamation includes: (1) a published communication by the defendant; (2) the communication includes an asserted statement of fact; (3) the communication was concerning the plaintiff; (4) the statement of fact is false; (5) the communication was defamatory; (6) the persons receiving the communication understood it to be defamatory; (7) the defendant knew the communication was false or negligently failed to recognize that it was false, or acted with malice; (8) the communication caused actual injury to the plaintiff's reputation; and (9) the defendant abused its privilege to publish the communication.  Civ. UJI 13-1002(B) NMRA.

The Supreme Court of the United States has held that under the First Amendment to the United States Constitution a statement can serve as a basis for a defamation claim only if it is a statement of fact and not of opinion.  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40, 94 S.Ct. 2997, 3007 (1974).  Thus, "[a]n action for defamation lies only for false statements of fact and not for statements of opinion."  *Mendoza v. Gallup Indep. Co.*, 107 N.M. 721, 723, 764 P.2d 492, 494 (N.M. Ct. App. 1988)(citing *Saenz v. Morris*,

106 N.M. 530, 533, 746 P.2d 159, 162 (N.M. Ct. App. 1987)). Whether statements are capable of a defamatory meaning is initially a question of law for the court. *Mendoza,* 107 N.M. at 724-25, 764 P.2d at 495-96 (citations omitted). Whether a statement asserts a fact turns on whether the statement is verifiable – whether it "is sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695, 2707 (1990). *See Moore v. Sun Publ'g Corp.*, 118 N.M. 375, 382, 881 P.2d 735, 742 (N.M. Ct. App. 1994)(New Mexico requires verifiability as the controlling element in determining whether a statement is fact or opinion).

In resolving the distinction between fact and opinion, the trial court should consider: (1) the entirety of the publication; (2) the extent that the truth or falsity of the statement may be determined without resort to speculation; and (3) whether reasonably prudent persons reading the publication would consider the statement to be an expression of opinion or a statement of fact. *Marchiondo v. Brown*, 98 N.M. 394, 401, 649 P.2d 462, 469 (1982). "If the material as a whole contains full disclosure of the facts upon which the [] opinion is based and which permits the reader to reach his own opinion, the court in most instances will be required to hold that it is a statement of opinion[.]" *Marchiondo*, 98 N.M. at 404, 649 P.2d at 472 (quoting *Kutz v. Independent Pub. Co., Inc.,* 97 N.M. 243, 245, 638 P.2d 1088, 1090 (N.M. Ct. App. 1981)).

> The distinction [between statements of fact and opinion] frequently is a difficult one, and what constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole. *Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery*

> *rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.*

*Mendoza*, 107 N.M. at 723, 764 P.2d at 494 (quoting *Gregory v. McDonnell Douglas Corp.*, 131 Cal.Rptr. 641, 644, 552 P.2d 425, 428 (1976))(emphasis added).  "Some statements are clearly statements of opinion: What ought to be done, the propriety or aesthetic or moral worth of some act or object."  *Marchiondo*, 98 N.M. at 400, 649 P.2d at 468 (quoting *Marchiondo v. New Mexico State Tribune Co.*, 98 N.M. 282, 291, 648 P.2d 321, 330 (N.M. Ct. App. 1981)(quoting R. Sack, Libel, Slander and Related Problems, § IV.2 at 155-56 (1980)).  Applying these standards to Attorney Davis's statement, the Court finds it expresses opinion rather than fact.

Under the first prong identified in *Marchiondo* for distinguishing between fact and opinion, the Court considers the entirety of the article.  Here, the article is a news story reporting about a recently filed lawsuit.  Lawsuits inherently involve parties engaged in an adversarial process armed with opposing points of view about the facts and the law.  Parties engaged in litigation are typically deeply committed to their respective points of view and expect their lawyers to zealously assert their positions under the rules of the adversary system.[3]  Comments elicited by a reporter from the parties' lawyers about the lawsuit would naturally reflect the parties' conflicting positions.  In light of the nature and content of the communication taken as a whole, the readers in this instance could anticipate from the outset efforts by the parties' lawyers to persuade others to their positions by use of "epithets, fiery rhetoric or hyperbole."  *Mendoza*, 107 N.M. at 723.

---

[3] *See* New Mexico Rules of Professional Conduct.

9

Here, for example, on the one hand, Attorney Brant commented that when Mr. Tracy reported his priapism to the nursing home they treated it as a "joke." On the other hand, Attorney Davis referenced the Tracy Lawsuit as "garbage." Both of these expressions exemplify the very definition of hyperbole; *i.e.,* exaggeration. Considering the entirety of the article, the reader is alerted to the fact that Attorney Davis is commenting on behalf of his client and that his use of the adjective "garbage" was nothing more than rhetorical hyperbole. *See Marchiondo*, 98 N.M. at 400, 649 P.2d at 468 (Statements regarding the propriety or aesthetic or moral worth of some act or object are clearly statements of opinions.); *see also Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002)(holding that book authored by former presidential aide characterizing stories written about former president's alleged affair with plaintiff as "trash," "crap" and "garbage" were nothing more than generic invective and would not support a defamation claim).

Under the second prong of *Marchiondo*, the question is whether the truth or falsity of the statement may be determined without resort to speculation. In other words, did Attorney Davis's statement imply any undisclosed defamatory facts as the basis of his opinion? *See Kutz*, 97 N.M. at 246, 638 P.2d at 1091 (holding that statements based on privately-held information that does not appear in the article create an issue of falsity or truth of the underlying but undisclosed facts). Here, the article discloses the entirety of the factual basis for Attorney Davis's opinion. The names of the parties are disclosed. The names of the lawyers representing the parties are disclosed. The gist of both the Tracy Lawsuit and the Valle Del Norte Lawsuit is disclosed. The readers know the overarching debate at play between the parties; *i.e.,* whether representing in a lawsuit that

a man's penis had been amputated, *inter alia*, when his penis was in fact intact amounts to malicious abuse of process. When Attorney Davis made his comment referencing the Tracy Lawsuit as "garbage," the readers did not have to speculate about the basis for his opinion or question whether he was referring to something beyond the four corners of the article. His comment was focused directly on the Harvey Law Firm's filing of the Tracy Lawsuit and nothing more. Plaintiffs themselves indicate that Attorney Davis was specifically referencing the Tracy Lawsuit when he stated "you can't just file garbage and expect to get away with it." [Doc. 162 at 24, ¶ 135.] Thus, Plaintiffs' argument that Attorney Davis's statement was meant to "brand Ms. Harvey as a dishonest lawyer, and her firm as a disreputable, perfidious firm" is unpersuasive because there is no implication that Attorney Davis was referring to anything other than the Tracy Lawsuit. The reader here was left to reach his or her own opinion about whether or not the Tracy Lawsuit was "garbage" or a valid lawsuit, as represented by Attorney Brant, despite the misrepresentation regarding the amputated penis. "If the material as a whole contains full disclosure of the facts upon which the [] opinion is based and which permits the reader to reach his own opinion, the court in most instances will be required to hold that it is a statement of opinion[.]" *Marchiondo*, 98 N.M. at 404, 649 P.2d at 472.

      Finally, under the third prong of the *Marchiondo* analysis, the question is whether a reasonably prudent person reading the publication would consider the statement to be an expression of opinion or a statement of fact. As previously stated, the reader here was fully aware that the article was reporting on a recently filed lawsuit involving adversarial positions. The article contained facts about both the Tracy Lawsuit and Valle Norte

11

Lawsuit and included comments from the parties' lawyers. The Court is hard pressed to find that even a careless reader, after reading the entire article, would not have understood that Attorney Davis's use of the adjective "garbage" was rhetorical hyperbole used for the sole purpose of advancing his client's position. In addition, other than Dusti Harvey stating that certain "categories of people" had mentioned the article to her [Doc. 510 at 4], Plaintiffs have not provided any evidence that anyone understood Attorney Davis's comment to be a statement of fact. That said, whether a statement is capable of a defamatory meaning is initially a question of law for the trial court, not a question of fact. *Mendoza*, 107 N.M. at 110-111, 764 P.2d at 495-96. In this case, a reasonably prudent person reading the article would consider Attorney Davis's comment and the use of the adjective "garbage" as an expression of opinion.

Having applied the analysis as set forth by the New Mexico Supreme Court in *Marchiondo v. Brown* for distinguishing between fact and opinion, the Court finds as a matter of law that Attorney Davis's comment is a statement of opinion and Defendants are entitled to summary judgment on Plaintiff's defamation claim. Given the Court's ruling, the Court will not address Defendants' arguments for summary judgment based on absolute privilege or whether THI Valle Norte can be held liable for Attorney Davis's statement.

## CONCLUSION

**WHEREFORE, IT IS THEREFORE HEREBY ORDERED** that *Defendants' Motion for Summary Judgment on Plaintiffs' Defamation Claim* [Doc. 467] is **GRANTED.**

**SO ORDERED THIS** 31st day of March, 2014, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
**Chief Judge, United States District Court**