IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DUSTI HARVEY,**
**And HARVEY LAW FIRM, LLC,**

      Plaintiffs,

v.                              No.   12-CV-727 MCA/RHS

**THI OF NEW MEXICO AT ALBUQUERQUE**
**CARE CENTER, LLC; THI OF NEW MEXICO**
**AT VALLE NORTE, LLC d/b/a Valle Norte**
**Care Center; THI OF NEW MEXICO AT VIDA**
**ENCANTADA, LLC, d/b/a Vida Encantada**
**Nursing and Rehab; THI OF NEW MEXICO**
**AT LAS CRUCES, LLC; THI OF NEW MEXICO,**
**LLC; FUNDAMENTAL ADMINISTRAVE**
**SERVICES, LLC; AND CHRISTINA A. ZACK,**
**a/k/a CHRISTINE A. ZACK GUNDERSON.**

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on: Plaintiffs' *Motion to Strike Opinion of Defendant's* [sic] *Expert, Daniel J. O'Brien, Esq.* [Doc. 267]; *Defendants' Motion to Strike Plaintiff Dusti Harvey and Harvey Law Firm LLC's Reply to Defendants' Response to Plaintiffs' Motion to Strike Opinion of Defendants' Expert Daniel O'Brien, Esq. (Dkt. 347) or, in the Alternative, Motion for Leave to File Surreply* [Doc. 372]; and *Defendants' Motion to Exclude the Opinions of Kimball R. Udall, Esq. and Strike the Untimely Designation of Kimball R. Udall, Esq.* [Doc. 344]  The Court has considered the submissions, the relevant law, and is otherwise fully informed in the premises.

1

I. **BACKGROUND**

One of the key issues in this case is whether Plaintiffs violated the confidentiality provisions contained in several settlement agreements, i.e., whether Plaintiffs' breached certain contracts. Each side has now offered the opinion of an attorney expert as to whether Plaintiffs breached the settlement agreements. Defendants' expert, Daniel J. O'Brien, Esq., opines that Plaintiffs "improperly breached" the confidentiality provisions. [Doc. 303-2, pp. 2-3] Plaintiffs' expert, Kimball Udall, Esq., opines that Plaintiffs did not breach the confidentiality provisions. [Doc. 303-3, pp. 5-7]  Each side moves to strike the other's expert testimony. [Doc. 267; Doc. 344]

*Mr. O'Brien's Opinion*

Mr. O'Brien opines:

Based on my review of the documents provided to me, it is my opinion that The Harvey Law Firm and/or the Sorey Law Firm and/or their principals have improperly breached the confidentiality clauses of the settlement agreements listed above. They have done so by referencing and attaching a 2010 1099 form in the pleadings indicating substantial payments to the Harvey Law Firm and stating in those same pleadings that "prior settlements for suits involving THI/Fundamental New Mexico nursing homes have been paid." The Harvey Law Firm has also done so by stating in filed pleadings that it "recently learned after resolving several cases with the Defendants that settlements for suits involving THI/Fundamental New Mexico nursing homes are paid by THIB" and again referencing a 2010 1099 form indicating substantial payments to the Harvey Law Firm. The Harvey Law Firm has also done so by stating in a proposed counterclaim filed in federal court that the Harvey Law Firm "has recovered approximately $3.7 million dollars in settlements from THI and its predecessor companies on behalf of HLF clients as a result of the asserting of claims and filing lawsuits on behalf of clients against THI nursing homes and their affiliates." These inappropriate disclosures violate the letter, purpose and spirit of the confidentiality clauses by clearly communicating that substantial payments had been made to settle cases filed against the nursing home defendants.

> The settlement of lawsuits is important and universally encouraged because it saves judicial resources and litigants time and money. Confidential settlement agreements encourage parties to settle lawsuits without fear that the settlements and/or the terms and/or provisions of the settlement agreements will be disclosed to others. In my experience, the promise of confidentiality and to keep settlement terms confidential is often a very important factor in getting a case settled. Some cases cannot be settled without a promise of confidentiality. Promises of confidentiality are particularly important when the potential exists for future claims being asserted on behalf of similar plaintiffs. Allowing a promise of confidentiality to be circumvented by disclosures that make it clear substantial settlements have been paid to the plaintiff lawyers herein will render the mediation process less effective if not futile in future cases.

[Doc. 303-2, pp. 2-3]

Plaintiffs move to strike Mr. O'Brien's report and anticipated testimony for two reasons: 1) it addresses "a question of law to be decided by the Court," i.e., whether Plaintiffs breached the settlement agreements, and 2) Defendants failed to comply with Federal Rule of Civil Procedure 26(a) by not stating "any basis or reasoning for Mr. O'Brien's opinion." [Doc. 267, pp. 1-3, 5] Plaintiffs further state that they anticipate filing a *Daubert* motion challenging the substance of Mr. O'Brien's opinions if their *Motion to Strike* is denied. [Doc. 267, p. 2, n.1]

***Mr. Udall's Opinion and Defendants' Challenges***

Mr. Udall offered the following opinions:

> <u>In the first instance, I would like to preface my opinion regarding whether there has been any breach or violation of any confidentiality provision with the observation that this issue is probably a legal decision to be decided by the Court, and is not properly the subject for "expert testimony" by attorneys at law. Therefore, I render these opinions with all due respect for and in deference to the Court.</u>
>
> . . .

Neither the Motion to Amend in the Montano Case nor the Responses to the Motions to Dismiss in the Lucero, Patton, and Duran Cases set forth the nature of the lawsuits which resulted in the subject Releases, any of the allegations of the Complaints filed therein, the circumstances which allegedly gave rise to the actions, allegations which were admitted or denied, the alleged acts or omissions which formed the basis for the causes of action, the basis for which the consideration for the settlement was paid, or the sums of money paid in settlement.

Nor did the 1099 Misc. Form attached to the Duran, Lucero, and Patton Responses and to the Montano Motion to Amend refer to any case or claim or to the amount of money paid for any of the settlements – some of which were paid after the year of the 1099 Misc. Form (2010) and some of which were paid thereafter.

. . .

It is my opinion that the statement "Prior settlements for suits involving THI/Fundamental New Mexico nursing homes have been paid by THIB," does not violate or breach any of the versions of the confidentiality clauses in any of the Subject Releases, including but not limited to those clauses which specifically contained the following language within the confidentiality clause itself…Plaintiffs and Plaintiff's attorneys… agree that they will not provide the terms and amount of this settlement to any entity. . . Plaintiff and Plaintiff's attorneys. . . further agrees [sic] that the confidentiality provisions of this Release are forever binding on the parties and shall remain confidential. . .

It is my opinion that this statement likewise did not violate or breach any of the versions of the confidentiality clauses, including but not limited to those Subject Releases which specifically included the statements immediately above the signatures of the plaintiffs that: "The undersigned attorneys agree to be bound by the confidentiality provisions herein on behalf of themselves and other members of their respective law firm."

It is my opinion that the attachment of a copy of a 1099 as an exhibit to the Duran, Lucero, and Patton Responses and the Montano Motion to Amend did not violate or breach any of the confidentiality clauses at issue and, further, was a legitimate and good faith response to demonstrate that THIB had engaged in business within the State. The 1099 does not reflect the amount or the terms of any of the settlement agreements at issue. A review of the 1099 does not inform the reader what was paid for any of the

4

settlements at issue. Nor does it inform the reader what amount was paid for the settlement agreements at issue in the aggregate.

It is my opinion that the allegation that: "Over the past five (5) years, HLF has recovered approximately $3.7 million dollars in settlements from THI and its predecessor companies on behalf of HLF clients as a result of the asserting of claims and filing lawsuits on behalf of clients against THI nursing homes and their affiliates" did not violate any of the terms or provisions of any of the Subject Releases, for the same reasons noted above.

The above-listed statements do not refer to the nature of the lawsuits which resulted in the Subject Releases, any of the allegations of the Complaints filed therein, the circumstances which allegedly gave rise to the actions, allegations which were admitted or denied, the alleged acts or omissions which formed the basis for the causes of action, the basis for which consideration for the settlements was paid, the sums of money paid in settlement, the terms of the settlements, or which actions were covered by the sum shown on the 1099 Misc. Form.

It is my opinion that the language of the Subject Releases did not prohibit the parties or their attorneys from disclosing <u>the fact</u> that a settlement had been reached between the parties, which the drafter could have done, and, therefore, the plaintiffs did not violate or breach any of the confidentiality clauses. In all my mediations I prepare Settlement Agreements or Memoranda of Understanding <u>prior</u> to the settlement conferences. In approximately two-thirds of those Settlement Agreements or Memoranda of Understanding, I anticipate and prepare clauses for confidentiality, non-disclosure and non-disparagement. (The other one-third of the Settlement Agreements or Memoranda of Understanding involves cases where the defendants are not normally concerned with confidentiality.) In cases involving medical malpractice, legal malpractice, claims against assisted living facilities and the like, I include a provision that the plaintiff cannot reveal even the fact that he, she or they settled with the defendant(s). Such a provision was not employed here, and such conditions should not be written into the Releases.

Moreover, the plaintiffs did not violate or breach any of the confidentiality clauses in the Subject Releases because they did not set forth any of the following: (a) the nature of the claims of the plaintiffs against the defendants, (b) the allegations set forth in the plaintiff's pleadings, (c) the alleged conduct of the defendants, (d) the admissions or denials of the defendants, (e) the testimony of the defendants or any witnesses called on

5

> their behalf, (f) the terms of the settlement, (g) the provisions of the settlement agreement, and (h) the consideration paid in settlement.
>
> The attachment of the 1099 Misc. Form did not violate the spirit or letter of the Subject Releases because (a) it was only for the year 2010, (b) the consideration paid pursuant to the Subject Releases was paid, with regard to certain of the settlements, after the year 2010 and was not, therefore, reflected on the 1099, (c) the sum of money set forth in the 1099 Misc. Form for 2010 was not designated as payment of the settlement of any particular action or actions; and (d) the 1099 Misc. Form does not reflect the facts or claims of any particular lawsuit or the terms of settlement or the amount of settlement for any particular lawsuit.
>
> Finally, the allegation of certain of the plaintiffs herein regarding having recovered approximately $3,700,000.00 from THI and its predecessor companies is not attributed to any particular lawsuit or any particular lawsuits, and in no way refers to any of the above-referenced actions. In short, there is no apportionment of any sum of money to any particular case or any particular settlement. Therefore, it is my opinion that the recitation of the sum $3.7 million did not breach any of the confidentiality clauses.
>
> To the extent that there is any disagreement about the scope of the confidentiality provisions at issue, it is my opinion that a reasonable attorney could conclude that the statements and disclosures at issue in this case were permitted.

[Doc. 303-3, pp. 1-7] In discussing the "Basis, Reason and Data Supporting Opinion[,]" Mr. Udall states that he relied on "the precise language of the confidentiality clauses and the additional representations immediately preceding the signatures of counsel for the plaintiffs in the underlying lawsuits[.]" [Doc. 303-3, p. 13]

Defendants challenge Mr. Udall's designation and testimony because Mr. Udall was untimely designated and because Mr. Udall's opinions:

> cross well over the line established by the United States Court of Appeals for the Tenth Circuit and the United States Supreme Court regarding allowable testimony by an attorney/expert because he **continuously and repeatedly**: (1) attempts to define the legal parameters of this case for the jury; (2) applies the facts of this case to the law; [and] (3) opines that the

6

>Plaintiffs did not breach any of the ten applicable settlement agreements[.]

[Doc. 344, p. 5]

**ANALYSIS**

>Federal Rule of Evidence 702 governs the admission of expert testimony.

>A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>(b) the testimony is based on sufficient facts or data;
>(c) the testimony is the product of reliable principles and methods; and
>(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Together, several cases establish a clear framework for considering whether the testimony of a witness who discusses the law meets Rule 702(a)'s requirement that the testimony helps the trier of fact. An "expert witness cannot state legal conclusions by applying law to the facts, passing upon weight or credibility of the evidence, or usurping the province of the jury by telling it what result should be reached." *U.S. v. Jensen*, 608 F.2d 1349, 1356 (10th Cir. 1979). "An expert may, however, refer to the law in expressing his or her opinion." *A.E. ex rel. Evans v. Indep. Sch. Dist.t No. 25*, 936 F.2d 472, 476 (10th Cir. 1991). Here, the question is whether the proffered expert witnesses do more than refer to the law in reaching their conclusions.

"There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness." *Zuchel v. City of Denver*, 997 F.2d 730, 742 (10th Cir. 1993) (internal quotation marks and citation omitted). "[O]ur system reserves to the trial judge the role of adjudicating the law for the benefit of the

jury." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). Attorneys have been precluded from usurping the role of the judge for two reasons. *Id.* First, "the jury may believe the attorney-witness, who is presented to them imbued with all the mystique inherent in the title 'expert,' is more knowledgeable than the judge in a given area of the law." *Id.* Second, and moreover, the jury is likely to be confused by different attorney experts giving different opinions on the law, which may differ from the instructions given by the judge, thereby becoming detrimental to the trial process. *Id.* Accordingly, our Tenth Circuit found error where an attorney expert was allowed to testify about whether a search was illegal and whether there was consent for the search in *Specht*, a case brought under 42 U.S.C. § 1983. *Id.* at 806-07. The Second Circuit has found error on facts closes to those here, where an attorney expert was permitted to "give his opinion as to the legal obligations of the parties under the contract." *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508 (2d Cir. 1977).

There are, however, limited circumstances in which an attorney may be permitted to testify as an expert. In *Marx & Co.*, an attorney experienced in securities regulations was permitted to testify as to the "ordinary practices of those engaged in the securities business[,]" for example, by testifying as to the amount of time typically necessary to effect a registration statement. *Id.* at 509. And, in this District, an attorney was permitted to testify as to the "customs and practices in working with Centers for Medicare and Medicaid . . . and administering waiver programs" and about the percentage of New Mexico's budget set aside for home and community-based waiver services compared to other states' budgets. *Lewis v. New Mexico Dep't of Health*, 275 F.Supp.2d 1319, 1330-

8

31 (D.N.M. 2003).[1]  The basis of the holding in the attorney expert cases was the determination that the testimony of the expert did not encroach on the Court's duty to instruct the jury in the law and that the specialized knowledge of the expert was useful to understand the facts in evidence.  *Lewis*, 275 F.Supp.2d. at 1331; *Marx & Co.*, 550 F.2d at 509-10; *see also Specht*, 853 F.2d at 807 ("Our judgment must therefore be guided by consideration of whether the testimony of the attorney expert aided the jury in its determination of critical issues in this case.").

Here, the opinions of both Mr. O'Brien and Mr. Udall are offered for the purpose of opining on what the result of this case should be when applying the law to the facts, based upon their legal expertise.  [Doc. 303-2, pp. 2-3; Doc. 303-3, pp. 5-7]  Though experts are permitted to offer their opinions on ultimate issues, only the judge may state the law to the jury.  As pointed out in *Specht*, the rules were not intended to allow experts to "merely tell the jury what result to reach."  *Specht*, 853 F.2d at 807.

Defendants argue that Mr. O'Brien only used the word "breached" once, and thus, *Specht* is distinguishable because there the expert gave an "array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof[.]"  *Specht*, 853 F.2d at 808.  Defendants' argument misstates both the facts and the law.  As to the law, while there may be a difference in degree between this case and *Specht*, it is not the number of times in which a proffered expert encroaches on the function of the Court that

---

[1] Similarly, a (non-attorney) professor who consulted with large police departments regarding the use of deadly force was permitted to testify as to the adequacy of a police department's training protocol with regard to an officer's judgment whether or not to shoot a person.  *Zuchel*, 997 F.2d at 738-39, 742-43.

is significant – any encroachment is impermissible. *See id.* The courts "draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury." *Id.* As to the facts, one of the two substantive paragraphs in Mr. O'Brien's report is dedicated to explaining how the Plaintiffs breached or violated the settlement agreements. [Doc. 303-2, p. 2-3] Mr. O'Brien's testimony that the Plaintiffs "breached" or "violated" the confidentiality agreements of the settlement agreements is the ultimate issue in the case, and is therefore not the proper subject for expert attorney testimony. *See id.*

Defendants, and perhaps to a lesser degree Plaintiffs, also offer their attorney experts for a second purpose: to explain to the jury the purpose of and use of confidentiality clauses in the settlement of certain types of cases. [Doc. 303-2, p. 3; Doc. 303-3, p. 6] This testimony does not touch on the ultimate issue, tell the jury what result to reach, or encroach on the Court's function of instructing the jury. *Jensen*, 608 F.2d at 1356; *Marx & Co.*, 550 F.2d at 509 (allowing attorney expert testimony on the practices of lawyers and others engaged in the securities business). However, in this case, expert testimony is not necessary for the jury to understand the use and purpose of confidentiality clauses. The fact witnesses in this case, in particular the signatories to the settlement agreements, at least two of whom are attorneys (Dusti Harvey and Lori Proctor [See, e.g. Doc. 465-1, p. 4; Doc. 470-3, p. 5]), are able to explain not only what a confidentiality clause is and its purpose generally, but more importantly, what the signatories understood these confidentiality clauses to mean. *See Farmington Police Officers Ass'n v. City of Farmington*, 137 P.3d 1204, 1211 (N.M.App. 2006) (stating the

standard for determining whose meaning prevails under the objective theory of contracts); UJI 13-804 NMRA (Contract; Intentions of the Parties); UJI 13-816 NMRA (Mutual Assent; Definition). Here, whether the confidentiality clauses prohibited Plaintiffs' statements turns on what the contracting parties (and only the contracting parties) knew or had reason to know based on the words of the contracts and the circumstances surrounding the making of the contracts. *Farmington Police Officers Ass'n*, 137 P.3d at 1211. Thus, any attorney-expert testimony as to how that attorney writes or would have written a confidentiality clause, or interpretations or assumptions about what the wording in the confidentiality clauses meant, would not be probative, would be a waste of time, and would be potentially confusing to the jury. Accordingly, the Court excludes both Mr. O'Brien's testimony and Mr. Udall's testimony entirely. *See Specht*, 853 F.2d at 807 ("Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time." (Internal quotation marks and citation omitted.)); Fed. R. Evid. 702(a) (allowing expert opinion testimony if it is helpful to the trier of fact to understand the evidence); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Because the Court excludes the testimony on these grounds, the Court does not reach the parties' other arguments.

***DEFENDANTS' MOTION TO STRIKE REPLY***

Defendants moved to strike the Plaintiffs' Reply Brief [Doc. 347] on the grounds

that it introduced new evidence[2] and "the Harvey Plaintiffs attempt to transform the O'Brien Motion from a motion related to Mr. O'Brien's Expert Report and 'anticipated testimony' to a motion related to specific testimony given by Mr. O'Brien at his deposition." [Doc. 372 p. 3 (Footnote omitted.)] In the alternative, Defendants request to file a Surreply. [Doc. 372, pp. 4-5] The Court is not persuaded. In Defendants' Response Brief, Defendants relied heavily on their argument that Plaintiffs took one word, breached, of Mr. O'Brien's expert report out of context and wrongly construed his opinion to be that Plaintiffs breached the settlement agreements. [Doc. 303, pp. 6-12] Accordingly, Defendants raised the argument and Plaintiffs then properly responded to the argument. No rule prevents Plaintiffs from responding to Defendants' argument with the deposition of Defendants' own expert. The well settled rule that a court will not consider new arguments made for the first time in a reply brief does not apply here. *See Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007) (discussing the reasons why new arguments are not allowed for the first time in a reply brief); *Gates Corp. v. Dorman Prod., Inc.*, 2009 WL 4675099, *2 (D. Colo. 2009) (unpublished decision) (denying Motion to Strike Reply or for Leave to File Surreply where the argument made in the Reply Brief was in "direct rebuttal" to a contention in the Response Brief). Defendants

---

[2] The "new evidence" which Defendants challenge consists of excerpts from Mr. O'Brien's deposition transcript (Mr. O'Brien's deposition was taken after Plaintiffs filed their Motion to Strike his testimony) in which Mr. O'Brien repeatedly testified that Plaintiffs "violated" or "breached" the settlement agreements and in which he stated that he did not believe the Court would permit him to testify as to the legal conclusion that there were breaches of the settlement agreements. [Doc. 347, p. 3; Doc. 347-1, p. 1, 5:5-19; Doc. 347-1, p. 2, 18:1 to 19:2; Doc. 347-1 p. 3, 138:18 to 139:11; Doc. 347-1, p. 5, 235:14-15]

cannot complain that they have no opportunity to respond to an argument which they first raised. *See id.* The Court will neither strike the Reply nor allow a Surreply.

**CONCLUSION**

**WHEREFORE, IT IS THEREFORE HEREBY ORDERED** that Plaintiffs' *Motion to Strike Opinion of Defendant's Expert, Daniel J. O'Brien, Esq.*, [Doc. 267] is **GRANTED**.

**IT IS FURTHER HEREBY ORDERED** that *Defendants' Motion to Strike Plaintiff Dusti Harvey and Harvey Law Firm LLC's Reply to Defendants' Response to Plaintiffs' Motion to Strike Opinion of Defendants' Expert, Daniel J. O'Brien, Esq. (Dkt. 347) or, in the Alternative, Motion for Leave to File Surreply* [Doc. 372] is **DENIED**.

**IT IS FURTHER HEREBY ORDERED** that *Defendants' Motion to Exclude the Opinions of Kimball R. Udall, Esq. and Strike the Untimely Designation of Kimball R. Udall, Esq.* [Doc. 344] is **GRANTED.**

**SO ORDERED THIS** 31st day of March, 2014, in Albuquerque, New Mexico.

_____
M. Christina Armijo
Chief United States District Judge