## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DUSTI HARVEY,**
**and HARVEY LAW FIRM, LLC,**

  **Plaintiffs,**

**v.**                                                    **No.   12-CV-727 MCA/LAM**

**THI OF NEW MEXICO AT ALBUQUERQUE**
**CARE CENTER, LLC; THI OF NEW MEXICO**
**AT VALLE NORTE, LLC d/b/a Valle Norte**
**Care Center; THI OF NEW MEXICO AT VIDA**
**ENCANTADA, LLC, d/b/a Vida Encantada**
**Nursing and Rehab; THI OF NEW MEXICO**
**AT LAS CRUCES, LLC; THI OF NEW MEXICO,**
**LLC; FUNDAMENTAL ADMINISTRAVE**
**SERVICES, LLC; AND CHRISTINA A. ZACK,**
**a/k/a CHRISTINE A. ZACK GUNDERSON.**

  **Defendants.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on: *Defendants' Motion for Summary Judgment on Plaintiffs' Malicious Abuse of Process Claims* [Doc. 466]; *Fundamental Administrative Services, LLC's Motion for Summary Judgment as to Malicious Abuse of Process, Declaratory Judgment, Prima Facie Tort, and Civil Conspiracy* [Doc. 471]; *Plaintiffs' Motion for Summary Judgment on Defendants* [sic] *Counterclaims of Malicious Abuse of Process* [Doc. 482]; *Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Claims for Malicious Abuse of Process* [Doc. 484]; *Defendants' Motion for Summary Judgment on Plaintiffs' Prima Facie Tort Claims* [Doc. 477]; and *Defendants' Motion for Summary Judgment on Plaintiffs' Civil Conspiracy Claims* [Doc.

478].  The Court has considered the submissions, the relevant law, and is otherwise fully informed in the premises.

## I.  BACKGROUND AND ARGUMENTS

### A.  Procedural Background

In December of 2011, each of the five limited liability nursing home facilities (Facility Defendants) separately filed suit against Plaintiffs[1] for purported breaches of confidentiality clauses in various settlement agreements.  [Doc. 40-1, pp. 1-2; Doc. 40-2, pp. 1-2; Doc. 40-4, pp. 1-2; Doc. 40-5, pp. 1-2; Doc. 40-6, pp. 1-2]  Each Facility Defendant filed in a different judicial district.  [Id.]  In return, Plaintiffs filed this suit in the Second Judicial District Court of New Mexico against nine defendants: the five Facility Defendants; THI of New Mexico, LLC (THINM), which is the sole member of each of the Facility Defendants [Doc. 1, ¶ 10]; Fundamental Administrative Services, LLC (FAS), which provides administrative services, including legal services, to the Facility Defendants [Doc. 472-1, ¶ 1]; Defendant Christine Zack, the Senior Vice President, Chief Risk Officer and in-house lawyer for Defendant FAS [Doc. 472-1, ¶2]; and THI of Baltimore, Inc. (THIB).[2]  [Doc. 1-1]  Plaintiffs brought two claims for declaratory relief relating to the confidentiality clauses, as well as claims for Malicious Abuse of Process, Prima Facie Tort, Defamation, and Civil Conspiracy. [Doc. 162, ¶¶ 146-177]  Defendants removed the action to this Court and the Facility Defendants filed

---

[1] In state court, the Facility Defendants also filed suit against Daniel Sorey and the Sorey Law Firm, who then joined as Plaintiffs in this case, and against whom various Defendants brought counterclaims.  The claims between the Sorey Plaintiffs and all Defendants have now been resolved.  [Doc. 407]

[2] Defendant THIB was dismissed as a party on January 10, 2013. [Doc. 143]

2

Counterclaims for Breach of Contract, Specific Performance, Injunctive Relief, Declaratory Judgment, and Malicious Abuse of Process [Doc. 70, pp. 40-45; Doc. 71, pp. 46-53; Doc. 72, pp. 40-45; Doc. 73, pp. 40-45; Doc. 74, pp. 44-51], and THINM filed a Counterclaim for Malicious Abuse of Process [Doc. 105, p. 42].

By separate Memorandum Opinion and Order, the Court addressed the parties' Motions for Summary Judgment on the Breach of Contract Claims.  [Doc. 578]  The Court held that a genuine issue of material fact exists as to whether Plaintiffs breached two settlement agreements entered into between Plaintiffs and THI of New Mexico at Vida Encantada.[3]   [Doc. 578, p. 29]   The Court granted Plaintiffs a Declaratory Judgment, concluding that Plaintiffs did not breach the eight other settlement agreements which formed the basis of the Facility Defendants' underlying claims.  [Doc. 579]  Also by separate Memorandum Opinion and Order the Court granted Summary Judgment for Defendants[4] on Plaintiffs' Defamation Claims.  [Doc. 583]

Now pending before the Court are Defendants' motions for summary judgment on Plaintiffs' claims of Malicious Abuse of Process, Prima Facie Tort and Conspiracy and Plaintiffs' Motion for Summary Judgment on Defendants' Malicious Abuse of Process claims.  [Docs. 466, 471, 477, 478, 482, 484]  In setting out the facts relevant to these motions, below, the Court has drawn the facts from the parties' statements of undisputed facts.  The Court has taken as true those facts which the parties agree are undisputed.  Wherever the facts are disputed and the evidence is in conflict, the Court has construed

---

[3] THINM was also a party to these settlement agreements.  [Doc. 473-2; Doc. 473-3]
[4] All Defendants other than Ms. Zack moved for summary judgment on the defamation claims.  [Doc. 467, p. 1]

the evidence in the light most favorable to the nonmovant.  *See Kaufman v. Higgs,* 697

F.3d 1297, 1300 (10th Cir. 2012).

### B.  <u>Facts and Arguments Relating to Plaintiffs' Abuse of Process Claims</u>

The Harvey Plaintiffs rely on several alleged improprieties or irregularities to

support their claims of malicious abuse of process.  First, Plaintiffs rely on conduct

during and related to Defendant Valle Norte's prosecution of a prior claim for malicious

abuse of process against Plaintiffs.  Thus, the Court must briefly recount the facts and

outcome of that case, the *Valle Norte* suit, and its predecessor suit, the *Tracy* suit.  *See*

*THI of New Mexico at Valle Norte, LLC v. Harvey*, 802 F.Supp.2d 1257 (D.N.M. 2011)

(*Valle Norte I*), *aff'd,* 527 Fed.Appx. 665 (10th Cir. 2013) (unpublished opinion) (*Valle*

*Norte II*).  In *Tracy*, Plaintiffs alleged that their then-client, Mr. Tracy, suffered injuries

from a delay in treatment by Valle Norte when Mr. Tracy suffered a priapism (a painful

erection, not the result of sexual arousal, lasting longer than four hours), injuries which

included but were not limited to an amputation or auto-amputation of Mr. Tracy's penis.

*Valle Norte II*, 527 Fed.Appx. at 667.  In fact, though Mr. Tracy had told Plaintiffs that

he lost his penis, he had not.  *Id.* at 667-78.  Plaintiffs further allegedly withheld a

medical report and a photograph until after mediation, both of which showed Mr. Tracy

had not lost his penis, and Plaintiffs demanded $850,000 in the mediation.  *Id.* at 670.

Based on this conduct, Valle Norte brought the *Valle Norte* suit, claiming malicious

abuse of process suit and a violation of the New Mexico Attorney Deceit statute.  *Id.* at

667.  Both the Honorable Judge Johnson of this District Court and our Tenth Circuit

concluded that *Valle Norte*'s claim for malicious abuse of process failed because, while

4

Plaintiffs lacked probable cause to allege Mr. Tracy lost his penis, the remainder of their claims were supported by probable cause. *Valle Norte I,* 802 F.Supp.2d at 1262-63; *Valle Norte II*, 527 Fed.Appx. at 674.  Under New Mexico law "lack of probable cause is not a claim-by-claim inquiry, but, rather, is determined as to the lawsuit in its entirety." *Valle Norte I*, 802 F.Supp.2d at 1262; *Valle Norte II*, 527 Fed.Appx. at 674 (internal quotation marks and citation omitted).  Judge Johnson explained his holding by stating:

> To be clear, the Court today finds only that the malicious abuse of process tort does not encompass claims such as THI brings here, because the tort is construed very narrowly and presents the potential for serious abuse by litigants and their lawyers. *Fleetwood Retail Corp.*, 164 P.3d at 37. The Court does not, however, condone the inclusion of unfounded allegations in a complaint which are not supported by probable cause, or deliberately misrepresenting facts to an opposing party in informal communications or settlement negotiations. On the undisputed facts, THI clearly had a good faith factual basis to believe that HLF's conduct in the underlying lawsuit was wrongful. But the evidence fails, as a matter of law, to support the claims alleged in the complaint.

*Valle Norte I*, 802 F.Supp.2d at 1265.  Further, though for different reasons, both Judge Johnson and our Tenth Circuit concluded that the alleged settlement demand did not support Valle Norte's claim for abuse of process. *Valle Norte I*, 802 F.Supp.2d at 1264; *Valle Norte II*, 527 Fed.Appx. at 670-72.  Nor did Valle Norte succeed on its attorney deceit claim. *Valle Norte I,* 802 F.Supp.2d at 1267-68; *Valle Norte II,* 527 Fed.Appx. at 677-78.

In the present case, Plaintiffs submit that Defendants committed the tort of malicious abuse of process during the course of the *Valle Norte* suit by various conduct. [Doc. 528, p. 19]  First, Plaintiffs produce evidence that Valle Norte continued to pursue the case even after Valle Norte's own witnesses testified that there was an "adequate and

proper investigation" by Plaintiffs into the facts of the *Tracy* lawsuit and that certain claims in the *Tracy* Complaint were "sufficient to keep pursuing the lawsuit at that time." [Doc. 528, AMF X, AMF Y, pp. 19-21; Doc. 528-14, 141:9-19; Doc. 528-15, 110:17 to 111:2, 112:12-16]  Second, Plaintiffs produce evidence that Defendants served Plaintiffs with the *Valle Norte* suit so that the answer would be due during or nearly during the trial of another matter, in which the Harvey Law Firm represented a client against Vida Encantada.  [Doc. 528, AMF BB; Doc. 528-16; *THI of New Mexico at Valle Norte, LLC v. Harvey*, No. 10-CV-873 WJ/LFG, Doc. 1, 5]  Third, Plaintiffs submit that Valle Norte engaged in malicious abuse of process by violating the New Mexico Mediation Procedures Act, N.M.S.A. 1978, §§ 44-7B-1 to 44-7B-6 (2007), which forbid Valle Norte from disclosing Plaintiffs' $850,000 settlement demand.  [Doc. 528, p. 19, 24]  Fourth, Plaintiffs produce evidence that in the *Valle Norte* suit, and then again in this case, Defendants filed a Motion to Compel, asking that the Court order Plaintiffs to produce "their computer hard drives and servers for the purpose of obtaining information that was not produced during the course of discovery."  [Doc. 528, AMF L, AMF M; Doc. 483, p. 1]  Plaintiffs argue that this is a "highly irregular request" and Defendants' motive is to "access the electronic files, records, and communications of an opposing attorney who has successfully brought claims against THI for the purposes of gaining insight and knowledge into litigation strategies and tactics."  [Doc. 528, p. 22]

Fifth and finally, Dusti Harvey testified that Christine Zack and Lori Proctor (another attorney for Defendants) offered Plaintiffs a stipend to stop suing THI.  [Doc. 528, AMF J; Doc. 497-1, 20:2-7 & 44:12 to 45:2; Doc. 528-6]  Plaintiffs produced an

6

email from Ms. Harvey to others at the Harvey Law Firm documenting that she had a meeting with Lori Proctor on May 29, 2008, in which it was discussed that "Christine Zach [*sic*] et al will pay HLF a monthly stipend to not sue them anymore."  [Doc. 528-6]  While this email indicates that the settlement of other cases was discussed at this meeting, it does not indicate that the monthly stipend offer was tied to the settlement of any pending lawsuit.  [Doc. 528-6]   She also testified that Christine Zack "offered that a second time, as well as that she would drop the Valle Norte Tracy case if I settled all the THI cases."  [Doc. 528, AMF K, Doc. 497-1, 20:1-10]  Ms. Harvey testified that in one of the conversations Ms. Proctor referred to a firm that she and Christine Zack had, and she believed that conversation took place at a coffee shop.   [Doc. 466-1, 43:18-24]  Another conversation took place on the Monday of a two-week period with 14 or 16 mediations set in mid-November of 2010.  [Doc. 466-1, 44:2-11]  Defendants argue that these "alleged communications" were "settlement-related communications" which are not admissible in this proceeding under the New Mexico Mediation Procedures Act.  [Doc. 557, Fact No. 21; Doc. 521, p. 10]  Plaintiffs argue that the statements were not related to the mediations, offering the testimony of Ms. Harvey that, though the mediation had begun, "this was a separate conversation, because I couldn't go to dinner with them on Sunday night, and had nothing to do with Zuckerman [the case being mediated] or the facts of the case or any numbers dealing with Zuckerman."  [Doc. 497-2, 180:9-15]  Ms. Harvey also testified as follows:

Q.  . . . [Y]ou didn't say the mediator wasn't present, did you?

A.      No, he was – he asked – when they first approached me, he started leaving the room and looked back at me and said, "Should I stay, or should I leave?"

And I said, "You should – why don't you stay?"

Q.      So this conversation took place with the mediator in the room?

A.      Right. I don't think he said one word, and it had nothing to do with the mediations.

[Doc. 497-2, 181:15 to 182:1][5]

The Facility Defendants and THINM also argue that, though Ms. Zack and Ms. Proctor were in-house counsel for the Facility Defendants, the Facility Defendants and THINM "had nothing whatsoever to do with any alleged offer" identified above and that neither Ms. Zack nor Ms. Proctor were agents of Defendant Valle Norte.  [Doc. 557, Fact No. 21; Doc. 521, pp. 10-11]  Based on these arguments, Defendants assert Ms. Harvey's testimony is "denied and refuted."  [Doc. 557, Fact No. 21]

To support Plaintiffs' claim for malicious abuse of process Plaintiffs also rely on certain conduct by the Facility Defendants in prosecuting the underlying, breach of contract suits filed by the Facility Defendants.  Plaintiffs argue that in bringing five separate but nearly identical lawsuits, Defendants engaged in an abuse of process.  [Doc. 528, pp. 13-17]  Plaintiffs also submit evidence that, with regard to the underlying suits filed by the Facility Defendants, the Harvey Law Firm was served with process of service for all five Facility Defendants at the Firm's address, and then Dusti Harvey was served separately at her home after dark.  [Doc. 528, AMF H; Doc. 557, AMF H; Doc. 528-2,

---

[5] Christine Zack recently filed under seal her version of the discussion in which the alleged offer was made.  [Doc. 587-1]  There is a clear factual dispute regarding whether Christine Zack offered to Ms. Harvey a stipend or whether Christine Zack offered to dismiss the *Valle Norte* case if the Plaintiffs dismissed their clients' other pending cases.

313:3-13 & 356:23 to 357:6]  Plaintiffs argue that the separate service was an irregularity and was done to harass Ms. Harvey.  [Doc. 528, pp. 17-19]

**C.** **Additional Facts and Argument Relating to Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Abuse of Process Claims**

Defendants designated Buffy Johnson (formerly Itomitsu) as their Rule 30(b)(6) designee to testify only as to "[t]he decision to file" the underlying lawsuits filed by Albuquerque Care Center, Vida Encantada, Valle Norte, and Las Cruces.  [Doc. 484-5, pp. 1, 5, 8, 11, 14; Doc. 484-1, 14:10 to 17:10]  At Ms. Johnson's deposition, she testified that she did not know who was involved in the decision to file the underlying lawsuits, she did not remember whether she had approved the filing of the underlying lawsuits, and she had no knowledge of the underlying settlement agreements.  [Doc. 484-1, pp. 17:11 to 19:18; Doc. 484-2 to 484-3, 25:25 to 27-8, 28:23 to 29:2, 34:10 to 35:5, 36:2-13, 40:2-9, 40:21 to 41:24, 43:24 to 46:1, 46:19-22, 47:17 to 48:2]  She also testified that she had no knowledge of the *Valle Norte* suit.  [Doc. 484-2, 27:9-13]

In addition, the following exchanges occurred at Ms. Johnson's deposition:

Q.  Okay.  As your – in your capacity as the regional vice president, when you approved lawsuits to be filed, would you normally review the lawsuit before approving it to be filed?
A.  Not necessarily.
Q.  Okay.  What did you do, then, to familiarize yourself with the lawsuit before approving to be filed?
A.  Generally, there would be some discussion as to what it was about. And if I had further questions, they would answer them; if I didn't, then I just said, "Okay."
Q.  Who would you have those discussions with?
A.  Legal counsel.
Q.  Okay. And when you say "legal counsel," are you referring to FAS counsel?

A.  Yes.
Q.  Did those discussions ever involve outside counsel?
A.  I don't recall.  Not – not that I recall.

[Doc. 484-1, pp. 19:25 to 20:19]

Q.  How would you indicate your approval to file a lawsuit on behalf of the facility?  Was that done in writing, or would you just give a verbal authorization?
A.  Generally in writing through e-mail.
Q.  And who would you send that e-mail to?
A.  Whoever was the sender of the request.
Q.  Okay.  Where would you get those requests from?
A.  From our Legal Department.
Q.  From whom in the Legal Department?
A.  Christine Zack would be the one. You're testing my memory to think of these people that I haven't seen in so long.

[Doc. 484-3, p. 3, 56:14 to 57:2]

Q.  Do you have any understanding as to the nature of the lawsuit alleged in Exhibit 2 [the Complaint in Albuquerque Care Center's suit against Plaintiffs for breach of contract]?
A.  Yes.
Q.  What is your understanding?
A.  That Ms. Harvey violated the terms of the agreement not to disclose the settlement and did so and is being sued by FAS, FCOS, whichever one.

[Doc. 484-2, 25:8-14]

Based on Ms. Johnson's testimony, Plaintiffs' move for partial summary judgment on their own claims for malicious abuse of process.  Plaintiffs submit that Ms. Johnson's testimony reveals that the Facility Defendants committed an impropriety amounting to malicious abuse of process by filing lawsuits against her "without any knowledge why they were filing the lawsuits."  [Doc. 484, pp. 9-10]

### D.  **Additional Facts Relevant to FAS's Motion for Summary Judgment on Plaintiffs' Abuse of Process Claims**

Defendant FAS, in support of its Motion for Summary Judgment on Plaintiffs' Claims of Abuse of Process against it, produced the *Declaration of Benjamin R. Ogletree*, [Doc. 472-2] which Plaintiffs move to strike.  [Doc. 500, pp. 6-8]  Plaintiffs move to strike the declaration on the basis that Mr. Ogletree lacks personal knowledge as to the facts therein.  [Id.]  Mr. Ogletree states that he is "an attorney licensed to practice in the District of Columbia and Maryland" and that he was designated and testified as a Rule 30(b)(6) representative for FAS and the Facility Defendants.  [Doc. 472-2]  Mr. Ogletree declares, *inter alia:*

> 3.      Christine Zack had no involvement in the Valle Norte Lawsuit and exercised no control over the litigation decisions in that case.
> 4.      All decisions about when, where, and how to serve process were made by outside counsel to Valle Norte.
> 5.      FAS did not serve or direct service of any discovery in the Valle Norte Lawsuit.
> 6.      Documents requested in discovery by Valle Norte in the Valle Norte Lawsuit were not sought for the purpose of harassing, annoying or disrupting the Harvey Law Firm or Ms. Harvey.  Instead, they were legitimate discovery tools that Valle Norte utilized in the prosecution of its claims in the Valle Norte Lawsuit.
> 7.      FAS did not prosecute the Valle Norte Lawsuit.
> 8.      Neither FAS nor its employees drafted, filed, or authorized the Underlying Lawsuits (as that term is defined in the Second Amended Complaint, ¶¶ 72-81).  The facility plaintiffs in the Underlying Lawsuits made their own decisions about whether to proceed with the litigation. Neither FAS nor its employees directed the facilities to file the Underlying Lawsuits.
> 9.      No decisions about when, where, and how to serve process in the Underlying Lawsuits were made by FAS.
> 10.     FAS did not prosecute the Underlying Lawsuits.

[Doc. 472-2, pp. 2-3]

Plaintiffs respond with the testimony of Ms. Johnson, above, and with the testimony of Brandi Jones, the Rule 30(b)(6) designee for Casa Maria, regarding the

decision to file the underlying breach of contract suits.  [Doc. 500, AMFs 1-15]  Ms. Jones testified that she received an email from Christine Zack, she communicated with the interim administrator for Casa Maria, and he approved the filing of the lawsuit.  [Doc. 500-1, 10:5-20, 11:20 to 12:2, 15:5-11]  Plaintiffs submit that the testimony of Ms. Jones and Ms. Johnson establishes that the Facility Defendants did not contemplate filing the lawsuits until contacted by Ms. Zack.  [Doc. 500, p. 12]  Moreover, with regard to the *Valle Norte* suit, Plaintiffs produce evidence that Ms. Zack offered to dismiss the *Valle Norte* suit if Plaintiffs settled their outstanding cases against various Defendants.  [Doc. 500, pp. 14-15; Doc. 497-1, 20:1-10]  Thus, Plaintiffs claim that FAS can be liable for this act of alleged abuse of process in the *Valle Norte* suit.  [Doc. 500, pp. 14-15]

**E. <u>Additional Facts Relevant to Plaintiffs' Motion for Summary Judgment on the Facility Defendants' and THINM's Malicious Abuse of Process Claims</u>**

The Facility Defendants and THINM bring claims for Malicious Abuse of Process against Plaintiffs.  [Docs. 70-74, 105]  Plaintiffs argue that Defendants have not shown that Plaintiffs have abused the process or filed a lawsuit without probable cause.  [Doc. 482, p. 10]  In response, Defendants submit that Plaintiffs lacked probable cause to bring this lawsuit.  [Doc. 502, p.1]  Defendants further argue that Plaintiffs' misused the legal process because:  "(a) Ms. Harvey testified under oath that she does not even know why HLF sued the Responding Defendants; and [b] HLF continues to ignore Judge Johnson's findings in the Valle Norte Lawsuit that HLF's actions in the Tracy Lawsuit were wrongful."  [Doc. 502, p. 5]

In paragraph 120 of the Second Amended and Interlineated Complaint, Plaintiffs alleged:  "Defendant Facilities filed five (5) separate lawsuits in five (5) separate jurisdictions purposefully and maliciously with the intent of harassing and annoying HLF and to pressure HLF to stop prosecuting lawsuits against THI and the Defendant Facilities on behalf of persons it injured."  [Doc. 162, ¶ 120]  Defendants argue that Plaintiffs lacked probable cause to support paragraph 120 because, when Dusti Harvey was asked, at her deposition, "Who, at THI of New Mexico at Casa Maria, LLC, did anything that would make anything in paragraph 120 true?" she responded:

> I don't—I don't believe it's anyone at any of the defendant – individual defendant facilities that make any litigation decisions on behalf of any of these defendants.  Nor did they choose to hire the exact same counsel with exact same facts with exact same reliefs.  In fact, I don't even think THI of New Mexico at ACC is in existence anymore, nor half of these defendants. . . .  So I don't think it's anybody at any defendant facility making a decision.

[Doc. 466-1, 307:7-25]  The following exchange also occurred:

> Q.  To your knowledge, did the facilities do anything wrong?
> . . .
> A. Specific to deciding to file these file – five lawsuits, I don't think anyone at the facility made that decision.
> . . .
> Q.  Did anyone – did anyone or any of the facilities do anything wrong?
> . . .
> A.  According to the defendants, they're the ones that made the decision to file the lawsuit, which I disagree with.
> . . .
> Q.  What do you believe that the facilities did wrong?
> A.  I guess – I don't even think some of these facilities are in existence.
> Q.  You already told me that.  But what do you believe they did wrong?
> . . .
> A.  I don't know what the specific facilities did wrong.  I believe it is the corporate level and the higher-ups, such as Christine Zack, that decided to file these lawsuits.

13

[Doc. 466-1, 309:25 to 311:14]   Plaintiffs point out, however, that the testimony

Defendants cite came directly after this exchange:

> Q.  Can you read paragraph 120? . . . What evidence do you have that
> anything that you say in that is true?
> A.  I think that filing the exact same – or extremely the same – lawsuit in
> five different jurisdictions in New Mexico, with the same facts, the same
> underlying facts, was meant to harass and annoy me, for me to have to pay
> additional costs to my attorneys, for me to clobber my ability to get
> insurance, which it did.
> And I believe that's the case when, on two different occasions, the
> defendants, through Christine Zack and Lori Proctor, have approached me
> to work for them for a monthly stipend if I stop suing them.  And when I
> said "no" to that, they've continued to go after me personally, and my law
> firm, in the form of harassing and annoying, and filing lawsuits that I don't
> believe have merit.

[Doc. 524, p. 2; Doc. 466-1, pp. 305:9 to 306:3]

With regard to the basis for the lawsuit against THINM, the following exchange

occurred:

> Q.  What did THI of New Mexico, LLC, do wrong?
> . . .
> A.  I don't know if they collectively, on behalf of the facilities, decided to
> file a lawsuit through Christine Zack, or if it was Fundamental
> Administrative Services, or THI of Baltimore.
> . . .
> I believe we've asked for in discovery who made the decisions to file these
> lawsuits.  I don't believe it was at the facility level; it was higher than that. I
> don't know if it was at THI of New Mexico, Fundamental Administrative
> Services, THI of Baltimore, or Christine Zack, or all of the above.

[Doc. 466-1, 311:15 to 312:11]

Based on this testimony, Defendants argue that "Ms. Harvey created fact and legal

issues with respect to the Responding Defendants' MAP claims . . . when she testified

that she does not know what any Responding Defendant did wrong to justify and warrant

14

being sued in this case. . . . Her testimony is in fact ***an admission*** that HLF had no probable cause to file the multitude of claims against Responding Defendants." [Doc. 502, pp. 13-14]

Defendants next argue that Plaintiffs are liable for malicious abuse of process because Plaintiffs had no basis to believe that Valle Norte lacked probable cause to bring the *Valle Norte* lawsuit. [Doc. 502, pp. 16-17] Defendants make this argument based on Judge Johnson's admonition in *Valle Norte I* that: "The Court does not, however, condone the inclusion of unfounded allegations in a complaint which are not supported by probable cause, or deliberately misrepresenting facts to an opposing party in informal communications or settlement negotiations. On the undisputed facts, THI clearly had a good faith factual basis to believe that HLF's conduct in the underlying lawsuit was wrongful." *Valle Norte I*, 802 F.Supp.2d at 1265.[6]

### F. Additional Facts Relevant to Plaintiffs' Prima Facie Tort Claim

Plaintiffs argue that four acts by Defendants support their claim for prima facie tort. [Doc. 497] First, Plaintiffs rely on the Facility Defendants' act of filing five separate lawsuits in five different jurisdictions in New Mexico. Next, Plaintiffs rely on the service of process on Ms. Harvey separately, at her home, at 7:20 p.m. Plaintiffs next rely on Defendants' Motion to Compel asking the Court to order the Harvey Law Firm to produce its computers. Finally, Plaintiffs rely on Valle Norte's use of its "lawsuit as a

---

[6] Though Defendants complain that Plaintiffs did not consolidate their Underlying Breach of Contract suits and instead filed an entirely new and separate lawsuit, Defendants do not argue or present evidence that the act of filing the one lawsuit was an or abuse of the legal process. [Doc. 502, pp. 20-22]

platform to encourage HLF to dismiss all of its pending lawsuits against the THI entities in exchange for a monthly stipend."  [Doc. 497, pp. 8-9]

## II.  LEGAL STANDARDS

### F.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c).

"A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted).

> The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." [*Liberty Lobby*, 477 U.S.] at 252, 106 S.Ct. at 2512. In making the decision, the trial judge must consider all the evidence in the light most favorable to the nonmoving party. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir.1975). Thus, the trial judge must deny motions for summary judgment

when reasonable jurors might disagree, even though the judge as trier of fact would find for the moving party.

*Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1377 (10th Cir. 1988).

### G. <u>Malicious Abuse of Process</u>

In New Mexico, the tort of malicious abuse of process has the following elements:

(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages. An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process.

*Durham v. Guest*, 204 P.3d 19, 26 (N.M. 2009) (internal quotation marks, citation and brackets omitted). "[T]he malicious abuse of process tort is disfavored in the law because of the potential chilling effect on the right of access to the courts." *Fleetwood Retail Corp. of N.M. v. LeDoux*, 164 P.3d 31, 37 (N.M. 2007) (internal brackets, quotation marks and citation omitted).

### i. <u>*What Constitutes Filing a Complaint Without Probable Cause*</u>

Probable cause is "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, . . . that a claim can be established to the satisfaction of a court or jury." *DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d 277, 285 (N.M. 1997) (internal quotation marks, citations, and footnote omitted) *abrogated on other grounds by Fleetwood Retail*, 164 P.3d at 39-40, *and overruled on other grounds by Durham*, 204 P.3d at 26. "Probable cause-the reasonableness of inferences of guilt-is to be judged by facts as they appeared at the time, not by later-discovered facts." *Weststar Mortg. Corp.*

*v. Jackson*, 61 P.3d 823, 831 (N.M. 2002).  To support a claim of malicious abuse of process, "[t]he lack of probable cause must be manifest."  *DeVaney*, 953 P.2d. at 285-86. Favorable termination of the initial lawsuit is an absolute defense to a subsequent complaint for malicious prosecution based on lack of probable cause.  *Fleetwood Retail*, 164 P.3d at 37.  "[L]ack of probable cause is not a claim-by-claim inquiry, but, rather, is determined as to the lawsuit in its entirety, and any recovery by the original plaintiff will be an absolute defense to a malicious abuse of process claim founded on lack of probable cause."  *Id.*

"[A] court's analysis of probable cause should be undertaken in a manner that will likely have the least chilling effect on a litigant's access to the courts."  *Fleetwood Retail,* 164 P.3d at 37.

> [A]ttorneys have some measure of freedom in representing their clients, and we [do] not want to chill an attorney's vigorous representation of the client; accordingly, except in unusual circumstances, an attorney should not have to worry about asserted duties to non-clients. *Durham*, 2007–NMCA–144, ¶¶ 20–22, 142 N.M. 817, 171 P.3d 756. Out-of-state authority supports application of this principle to the issue of probable cause in MAP cases against attorneys. The California Supreme Court recently stated, "Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit." *Zamos v. Stroud*, 32 Cal.4th 958, 12 Cal.Rptr.3d 54, 87 P.3d 802, 810 (2004).
>
> Similarly, the Connecticut Supreme Court said, "'The vitality of our common law system is dependent upon the freedom of attorneys to pursue novel, although potentially unsuccessful, legal theories.'" *Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 912 A.2d 1019, 1032 (2007) (quoting *Wong v. Tabor*, 422 N.E.2d 1279, 1288 (Ind.Ct.App.1981)). These pronouncements are consistent with our own Rules of Professional Conduct and the ABA Comment printed immediately following in our annotated rules volumes. See Rule 16–301 NMRA ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which

includes a good faith argument for an extension, modification or reversal of existing law."); see also Rule 16–301 ABA cmt. ("The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. Such action is not frivolous even though the lawyer believes that the client's position ultimately will not prevail.").

*Guest v. Berardinelli*, 195 P.3d 353, 359 (N.M. Ct. App. 2008)[7]; *accord Mosley v. Titus*, 762 F.Supp.2d 1298, 1316 (D.N.M. 2010).

Recently, the New Mexico Supreme Court considered a malicious abuse of process counter-claim, which, like Defendants' malicious abuse of process claim in the present case, was brought against the opposing party for purportedly bringing a breach of contract lawsuit without probable cause. *LensCrafters, Inc. v. Kehoe*, 282 P.3d 758, 760 (N.M. 2012). LensCrafters brought a claim against an optometrist who formerly subleased space from LensCrafters, for breach of a contractual covenant not to compete. *Id.* at 760-61. The covenant not to compete was not effective if LensCrafters, rather than the optometrist, elected not to renew the sublease agreement. *Id.* at 760. The optometrist countersued for malicious abuse of process, claiming that LensCrafters, not he, elected not to renew the sublease, and thus, LensCrafters did not have probable cause to support its lawsuit. *Id.* at 761. The New Mexico Supreme Court determined that there was no genuine issue of material fact that LensCrafters, not the optometrist, terminated the sublease agreement. *Id.* at 763-64. Nonetheless, the Court affirmed summary judgment

---

[7] "In ascertaining the laws of the forum state, while we are not bound by the decisions of New Mexico's intermediate court, its considered judgments are not to be disregarded unless we are persuaded by other means that the New Mexico Supreme Court would reach a different outcome." *Valle Norte II*, 527 Fed.Appx. at 669.

on the malicious abuse of process claim.  *Id.* at 767.  The Court stated that "[t]o prove that a lawsuit lacks probable cause, a claimant must show that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim."  *Id.* at 766 (internal quotation marks and citation omitted).  The Court reasoned:

> The fact that this Court has determined that LensCrafters' nonrenewal letter had the effect of terminating the 1999 contract does not mean that LensCrafters lacked probable cause in exercising its right to seek a judicial determination of the dispute. [The optometrist] cites no precedent to support the proposition that a reviewing court's determination that summary judgment is appropriate equates to a lack of probable cause for seeking judicial relief, and we must assume that no such authority exists for such a sweeping proposition.

*Id.*[8]  In reaching this conclusion, the Court relied on the principal that malicious abuse of process claims must be limited so as not to discourage the fundamental right of access to the courts.  *Id.* at 765.

### ii.  <u>*What Constitutes a Procedural Irregularity or Impropriety*</u>

The second general method of demonstrating a misuse of process is through some irregularity or impropriety suggesting extortion, delay, or harassment, conduct formerly actionable under the tort of abuse of process. Under this method, the act might be a procedural irregularity, *Simon*, 71 F.3d at 15 ("Typical abuse of process cases involve misuse of such procedures as discovery, subpoenas, and attachment." (citations omitted)); *Richardson*, 109 N.M. at 502-503, 787 P.2d at 421-22, or might be an act that otherwise indicates the wrongful use of proceedings, such as an extortion attempt, Restatement (Second) of Torts § 682 cmt. b ("The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.").

---

[8] The Court also pointed out that, given that the Court of Appeals had reached a contrary conclusion on whether summary judgment on the breach of contract claim was warranted, it would be "particularly ironic" to conclude that LensCrafters had no probable cause when it brought the lawsuit.  *LensCrafters*, 282 P.3d at 766.

*DeVaney*, 953 P.2d at 287; *accord Durham*, 204 P.3d at 26.  Such an abuse of process

may occur even if the complaint was filed based on sufficient probable cause, and it does

not depend on the outcome of the underlying suit.  *Fleetwood Retail*, 164 P.3d at 38.

"Complaints that assert a multitude of unfounded claims brought in bad faith and for the

purpose of harassing a defendant, even though coupled with a valid claim, can constitute

a procedural impropriety that will support a malicious abuse of process claim."  *Id.*

### a.  Misuse of the Discovery Process

"In cases arising under federal diversity jurisdiction, we apply the law of the

forum state."  *Safeco Ins. Co. of Am. v. Hilderbrand*, 602 F.3d 1159, 1163 (10th Cir.

2010).

> When the highest court of a state whose law is being applied . . . has not
> decided the issue presented, [the Court] must determine what decision the
> [state Supreme C]ourt would make if faced with the same facts and
> circumstances.  In making that determination, [the Court] may consider a
> number of authorities, including analogous decisions by the state Supreme
> Court, the decisions of the lower courts in the state, the decisions of the
> federal courts and of other state courts, and the general weight and trend of
> authority.

*MidAm. Constr. Mgmt., Inc., v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1262 (10th Cir.

2006) (internal quotation marks and citation omitted).  "An intermediate state court in

declaring and applying the state law is acting as an organ of the State and its

determination, in the absence of more convincing evidence of what the state law is,

should be followed by a federal court in deciding a state question."  *Fid. Union Trust Co*

*v. Field*, 311 U.S. 169, 177-78 (1940); *see also Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d

1569, 1574 (10th Cir. 1984) ("This court must also follow any intermediate state court

decision unless other authority convinces us that the state supreme court would decide otherwise.").

There is little New Mexico case law addressing under which circumstances an abuse of the discovery process can support a claim of a procedural irregularity or impropriety.  Courts in several other jurisdictions, however, have addressed a wide variety of factual scenarios, and have concluded that an abuse of the discovery process, when coupled with a *primary* motive by the defendant in misusing the process to accomplish an illegitimate end, supports a claim for malicious abuse of process.  *See, e.g., Gen. Refractories Co. v. Fireman's Fund Ins. Co*., 337 F.3d 297, 311 (3d Cir. 2003) (holding that abuse of process claim may lie against attorneys who allegedly "filed various motions in an effort to obstruct discovery, knowingly made bogus claims of privilege in response to discovery requests, hid documents, and made misrepresentations to opposing counsel and the court"); *Nienstedt v. Wetzel*, 651 P.2d 876, 879-80, 882 (Ariz. Ct. App. 1982) (holding that party's filing of motion for protective order regarding tapes the party alleged proved his case, which were actually blank, along with other "obstructionist activities" supported claim for abuse of process); *Younger v. Solomon*, 113 Cal.Rptr. 113, 119 (Cal. Ct. App. 1974) (holding that claim for abuse of process may lie, depending on the "true motive" where, in an interrogatory, an attorney published a confidential bar complaint against another attorney); *Givens v. Mullikin*, 75 S.W.3d 383, 402 (Tenn. 2002) (holding that a claim for abuse of process based on misuse of discovery procedures may lie against a party who "specifically and primarily intends to increase the burden and expense of litigation to the other side" where the use of the process "cannot

otherwise be said to be for the legitimate or reasonably justifiable purposes of advancing the party's interests in the ongoing litigation" (internal quotation marks, brackets, and emphasis omitted)).

These Courts have defined and limited the tort of abuse of process. "Generally speaking, to recover under a theory of abuse of process, a plaintiff must show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff." *Gen. Refractories,* 337 F.3d at 304.

> In its most basic sense, therefore, an action for abuse of process is intended to prevent parties from using litigation to pursue objectives other than those claimed in the suit, such as using a court's process as a weapon "to compel another party to pay a different debt or to take some action or refrain from it." It is the use of process to obtain this "collateral goal"—a result that the process itself was not intended to obtain—that is the very heart of this tort.

*Givens*, 75 S.W.3d at 401 (internal brackets omitted, quoting Restatement (Second) of Torts § 682 cmt. b (1977)). The tort will only lie where "the legal process . . . was used primarily to benefit someone in achieving a purpose which is not the authorized goal of the procedure in question." *Gen. Refractories*, 337 F.3d at 305, 307 (internal quotation marks and citation omitted) (pointing out that the claim requires a perversion of the process); *accord Givens*, 75 S.W.3d at 401. In limiting the tort, one Court points out that:

> Ordinarily, the lawful use of a court's process does not give rise to an abuse of process claim, and no claim of abuse will be heard if process is used for its lawful purpose, even though it is accompanied with an incidental spiteful motive or awareness that the use of process will result in increased burdens and expenses to the other party. However, a different case is presented when the *primary* purpose of using the court's process is for spite or other ulterior motive.

*Givens*, 75 S.W.3d at 401 (internal citation omitted; emphasis in original).  In the context of allowing a claim for abuse of process where the primary purpose of the misuse was to expose the other party to excessive legal and attorneys' fees, *Nienstedt* states:

> We recognize that the utilization of virtually any available litigation procedure by an attorney will generally be accompanied by an awareness on that attorney's part that his action will necessarily subject the opposing party to additional legal expenses. The range of feeling in the initiating attorney evoked by that awareness might well vary from instances of actual indifference to instances of intense satisfaction. By our holding in this case we do not intend to suggest that liability for abuse of process should result from either of the said instances alone. Liability should result only when the sense of awareness progresses to a sense of purpose, and, in addition the utilization of the procedure for the purposes for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure.

*Nienstedt*, 651 P.2d at 882.  This careful limitation of the tort has been adopted by other courts.  *See, e.g.*, *Gen. Refractories*, 337 F.3d at 308 (quoting *Nienstedt*); *Allied Med. Assoc. v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 4771850, *7 (E.D. Penn. 2008) (unpublished decision) (quoting *Nienstedt*).

Since *DeVaney*, the New Mexico Supreme Court has stated that the misuse of discovery procedures is a "[t]ypical abuse of process."  *DeVaney*, 953 P.2d at 287.  Like the Courts in *Nienstedt* and *Givens*, the New Mexico Supreme Court relies on the Restatement (Second) of Tort § 682 in describing the tort of abuse of process.  *Durham,* 204 P.3d at 27.  The New Mexico Supreme Court further uses much of the same reasoning as the courts above, stating, for example, that for there to be recovery there must be a perversion of the legal process.  *Id.* at 25; *DeVaney*, 953 P.2d at 293.  And, most importantly, the New Mexico Supreme Court recently overturned the dismissal of a

claim for malicious abuse of process where an attorney allegedly misused the subpoena process in an arbitration with the intent to "ruin [the plaintiffs'] reputations, cause them to lose their employment, inflict humiliation and emotional distress upon them, invade their privacy, retaliate against them for refusing to accept [an insurance company's] previous settlement offer, and coerce them into giving up their lawful right to benefits under [the] uninsured motorist policy." *Durham*, 204 P.3d at 21, 26, 28 (reiterating that "typical abuses of process involve the misuse of procedures, such as discovery abuses or the improper issuance of subpoenas."). Accordingly, this Court predicts that the New Mexico Supreme Court would allow claims for malicious abuse of process where an attorney or party maliciously misuses the discovery process, and the conduct is so lacking in justification "as to lose its legitimate function as a reasonably justifiable litigation procedure." *See Nienstedt*, 651 P.2d at 882.

### b. *Conduct Akin to Extortion*

In *Fleetwood Retail*, the New Mexico Supreme Court stated that "a jury could have found that Fleetwood's actions were similar to an attempt to extort information out of LeDoux." *Fleetwood Retail*, 164 P.3d at 40. LeDoux produced evidence that Fleetwood had maintained a lawsuit without a reasonable belief of the factual allegations against her. *Id.* LeDoux's malicious abuse of process claim was based on the fact that, after the lawsuit was filed against LeDoux and others for allegedly defrauding Fleetwood, LeDoux submitted evidence to Fleetwood rebutting her involvement in the alleged scheme. *Id.* at 34. Even so, Fleetwood refused to meet with LeDoux regarding her

claims of innocence unless she had information about the other defendants, her alleged

co-conspirators.  *Id.* at 40.

> It was only after LeDoux had expended considerable resources on a motion
> to dismiss that Fleetwood voluntarily dismissed its federal case. Arguably,
> this conduct goes beyond the mere filing of a complaint without probable
> cause and contains acts that could, under the circumstances, rise to the level
> of a procedural abuse.

*Id.*[9]

### iii.  *What Constitutes an Improper Motive*

When bringing a claim for malicious abuse of process, either based on filing a

claim without probable cause or based on a procedural impropriety or irregularity, the

claimant must also show a "primary motive in the use of process to accomplish an

illegitimate end" and damages.  *Durham*, 204 P.3d at 26 (internal quotation marks,

citation and brackets omitted).  For example, the New Mexico Court of Appeals held that

the plaintiffs sufficiently alleged a primary motive to accomplish an illegitimate end by

alleging that the "Defendants improperly brought the lawsuit to intimidate, harass, extort

cooperation, . . . and retaliate against Plaintiffs so that Plaintiffs would dismiss their Rule

1-074 appeal."  *Valles v. Silverman,* 84 P.3d 1056, 1064 (N.M. Ct. App. 2003).  The

primary motive to accomplish an illegitimate end has also been called "malice" in New

Mexico law.  *DeVaney*, 953 P.2d at 283.  "Malice may be inferred by the jury from the

---

[9] The Court recognizes that the discussion of a procedural impropriety in *Fleetwood
Retail* was not necessary to the holding, and, therefore, is dicta.  *Fleetwood Retail*, 164
P.3d at 40.  Even so, statements by the New Mexico Supreme Court must be considered
as an indication of what the New Mexico Supreme Court would find under such facts.
*See Rancho Lobo, Ltd. v. Devargas*, 303 F.3d 1195, 1202 n.2 (10th Cir. 2002) ("Absent a
definitive ruling from a state's highest court, we must predict the course that body would
take if confronted with the issue." (internal quotation marks and citation omitted)).

want of probable cause. But the want of probable cause [cannot] be inferred from any degree of even expressed malice." *Id.* at 287-88 (internal quotation marks, citations and ellipses omitted). "The degree to which the process has been misused will determine the strength of the permissible inference of an improper motive." *Id.* at 288.

### iv. <u>**Who May be Liable**</u>

In *Valles*, the New Mexico Court of Appeals considered whether the plaintiffs sufficiently alleged that Wal-Mart had engaged in malicious abuse of process where it was not a party to the underlying claim but allegedly funded the underlying lawsuit. *Valles,* 84 P.3d at 1063. "'One who takes an active part in the initiation, continuation or procurement of civil proceedings' may be liable for the wrongful use of civil proceedings." *Id.* at 1059 (quoting Restatement (Second) of Torts § 674). Given the plaintiffs' allegation that Wal-Mart funded the lawsuit, the Court concluded that the plaintiffs had stated a claim against Wal-Mart, holding that "a non-litigant may be found to have actively participated in the initiation or procurement of a civil proceeding if the non-litigant's conduct was the determining factor in the decision to file the lawsuit." *Id.* at 1062.

### H. <u>Prima Facie Tort</u>

The elements of prima facie tort are: "1) an intentional and lawful act, 2) an intent to injure the plaintiff, 3) injury to the plaintiff as a result of the intentional act, and 4) the absence of justification for the injurious act." *Kitchell v. Pub. Serv. Co. of N.M.*, 972 P.2d 344, 348 (N.M. 1998). With regard to the intent to injure, New Mexico has interpreted this phrase synonymously with malice for purposes of a claim of prima facie

tort. *Id.* at 349. "Intent to injure is distinct from intent to commit the act which results in injury." *Lexington Ins. Co. v. Rummel*, 945 P.2d 992, 995 (N.M. 1997). Further, the "plaintiff must produce more than a showing that injury is a natural and foreseeable consequence of the act." *Id.*

> Prima facie tort is not intended to provide a remedy for every intentionally caused harm, rather, it is a remedy for acts committed with intent to injure the plaintiff and without justification. Therefore, balancing the intent to injure . . . against both the justification for the injurious act and the severity of the injury is a necessary step in determining whether a prima facie tort has been committed.

*Kitchell*, 972 P.2d at 348.

"[P]rima facie tort may be pleaded in the alternative; however, if at the close of the evidence, plaintiff's proof is susceptible to submission under one of the accepted categories of tort, the action should be submitted to the jury on that cause and not under prima facie tort." *Schmitz v. Smentowski*, 785 P.2d 726, 736 (N.M. 1990), (citing *Bandag of Springfield, Inc., v. Bandag, Inc.*, 662 S.W.2d 546, 552-53 (Mo. Ct. App. 1982)). "[P]rima facie tort should not be used to evade stringent requirements of other established doctrines of law." *Id.* at 738; *see also Bandag of Springfield*, 662 S.W.2d at 553-54 (suggesting that the court should balance the "legally protectable interests" against their protections or lack thereof by the established tort in determining whether a claim of prima facie tort should be recognized). In *Guest*, the New Mexico Supreme Court upheld the district court's dismissal of a plaintiff's prima facie tort claim where the plaintiff had also brought a claim for malicious abuse of process on the same facts but failed to establish that the defendants' acts were an abuse of the process, or, in prima facie tort terms, not

justified.  *Guest*, 195 P.3d at 365.  In so holding, the Court relied on the reasoning that "[p]rima facie tort is not intended to be a 'catch-all' alternative for every action that cannot stand on its own legs."  *Id.* at 364 (internal citation omitted).

## I.   Conspiracy

"Civil conspiracy is not in itself a cause of action; it must be accompanied by a civil action against one of the conspirators."  *Valles,* 84 P.3d at 1064.  A civil action for conspiracy provides an independent basis for liability where a "civil action in damages would lie against one of the conspirators."  *Ettenson v. Burke*, 17 P.3d 440, 445 (N.M. Ct. App. 2000) (internal quotation marks and citation omitted).   In order to state a claim for civil conspiracy, Plaintiffs must allege "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts."  *Id.* (internal quotation marks and citation omitted).

## II.   ANALYSIS

### A.  Facility Defendants' and THINM's Motion for Summary Judgment

The Facility Defendants and THINM argue that they are entitled to summary judgment on Plaintiffs' malicious abuse of process claims against them because they did not engage in an improper use of process and they did not have a primary motive to accomplish an illegitimate end. [Doc. 466, pp. 10, 16, 25]  Plaintiffs argue that they have submitted evidence establishing that the Facility Defendants and THINM committed the tort of malicious abuse of process in several ways, which the Court addresses in turn, below.

### i.  *The Facility Defendants' Underlying Breach of Contract Cases*

First, Plaintiffs assert that the filing of "five lawsuits in various venues across the State of New Mexico was an improper use of process."  [Doc. 528, p. 13]  Plaintiffs submit that:

> The tactic of various entities to bring [*sic*] separate lawsuits is little more than a ruse; a finding supported by the fact that, while each facility purported to "approve" or "authorize" the lawsuit, it did so after it had ceased operations and could either not recall any information regarding the alleged *pro forma* approval or was unaware that any questions or information was sought before providing the *pro forma* approval. . . . At all times, THI has acted as a single entity.

[Doc. 528, p. 15]  Plaintiffs essentially argue that it was malicious abuse of process for the Facility Defendants to separately bring their breach of contract claims, rather than to bring them in one suit.  [Doc. 528, pp. 14-16]  Plaintiffs produced evidence that the individuals identified by the Facility Defendants as those who "authorized" the filing of the lawsuits on behalf of the facilities did not recall authorizing the suits and had no knowledge of Plaintiffs' actions which allegedly breached the confidentiality clauses. [Doc. 484-1, 17:12 to 484-2 to 484-3, 27:12; Doc. 484-2, 34:10 to 35:5, 36:2-13, 40:2-9, 40:21 to 41:24, 43:24 to 46:1, 46:19-22, 47:17 to 48:2]  A jury could infer, from the lack of corporate knowledge, the use of the same attorneys, the similarity of claims, the timing of the lawsuits, and the fact that the same representative for four of the five Facility Defendants purportedly authorized the filing of the underlying lawsuits, that the Facility Defendants were acting in concert.  [*See id.*]  Even so, the Court concludes that this conduct does not establish an impropriety or irregularity.  Each Facility Defendant was individually a party to only those settlement agreements pertaining to it, and thus it was

not improper for the Facility Defendants to bring their claims separately. Nothing in the Rules of Civil Procedure requires different plaintiffs with the same or similar causes of action against a single defendant or group of defendants to file their lawsuits together. Nor have Plaintiffs argued that any particular venue in which the underlying suits were filed was improper. [*See* Doc. 528] Finally, the non-controlling cases which Plaintiffs cite are distinguishable because in each either the same plaintiff filed multiple overlapping claims against a defendant in multiple jurisdictions, *Verve, LLC v. Hypercom Corp.* 2006 WL 2390505, * 1, 4 (D.Ariz. 2006) (unpublished decision) and *Kissel v. DiMartino*, 1993 WL 289430, *1 (E.D.N.Y. 1993) (unpublished decision) (addressing sanctions and not regarding a malicious abuse of process claim), or a husband with a derivative loss of consortium claim filed suit separately, *West v. Joseph*, 2001 WL 420743, *2 (Ct. App. Tex. 2001) (unpublished decision) (addressing sanctions, not a malicious abuse of process claim). In sum, even if the Facility Defendants were acting in concert, Plaintiffs have not identified any procedural impropriety in the lawsuits being brought separately by the five Facility Defendants in five different venues.

Next, Plaintiffs argue that "THI's duplicative service of process on Ms. Harvey was a malicious abuse of process." [Doc. 528, p. 17] While Plaintiffs initially brought this claim based on an allegation that Ms. Harvey was served "late at night," [Doc. 162, ¶ 128] Plaintiffs, in their Response Brief, rely only on the fact that Ms. Harvey was served separately at her home. [Doc. 528, pp. 17-19] The Court concludes that service of process on Ms. Harvey separately at her home was not an irregularity or impropriety. *See Richardson*, 787 P.2d at 421 ("[T]here is no liability where the defendant has done

nothing more than carry out the process to its authorized conclusion, even though with bad intentions." (internal quotation marks and citation omitted)).  Regardless of whether the Facility Defendants had an intent to harass Ms. Harvey, having not engaged in an irregularity or impropriety, Plaintiffs' malicious abuse of process claim cannot stand on this ground.

Defendants argue that Plaintiffs cannot show that the Facility Defendants lacked probable cause to bring the breach of contract lawsuits [Doc. 466, p. 13], but Plaintiffs have not argued that any of the breach of contract underlying suits were brought without probable cause.  [See. Doc. 528]  To the extent that the Complaint makes a claim that the underlying breach of contract claims were brought without probable cause, summary judgment is warranted.

In sum, the Court concludes that the Facility Defendants and THINM are entitled to partial summary judgment on Plaintiffs' claim that these Defendants engaged in the misuse of process with regard to their conduct in the underlying breach of contract lawsuits.

### ii. *The Valle Norte Suit*

Plaintiffs argue that the following actions by Valle Norte in the *Valle Norte* suit support their claim of malicious abuse of process:

> 1) the continued prosecution of the lawsuit after it became apparent it was without merit; 2) the attempted use of the Valle Norte Lawsuit to extort settlements in other cases; 3) the improper disclosure of settlement communications; 4) the attempted use of the Valle Norte Lawsuit to obtain access to HLF's computers; and 5) the service of process done in a manner solely to harass and annoy HLF.

[Doc. 528, p. 19]

In addition to addressing these alleged misuses of process, Defendants argue that Plaintiffs have not established evidence that Valle Norte initiated the *Valle Norte* lawsuit against Plaintiffs without probable cause.  [Doc. 466, p. 19]  Plaintiffs state that they are "not claiming Valle Norte lacked probable cause to file the Valle Norte lawsuit."  [See Doc. 528, p. 20-21]  Accordingly, Plaintiffs will not be allowed to proceed at trial on a claim that the *Valle Norte* lawsuit was initiated without probable cause.

### a. *Valle Norte's Continued Prosecution of the Valle Norte case*

In depositions taken during the *Valle Norte* suit, Valle Norte's witnesses testified that Plaintiffs sufficiently investigated the *Tracy* case before filing the suit and that Plaintiffs established evidence of injury to Mr. Tracy. [Doc. 528, AMF X, AMF Y, pp. 19-21; Doc. 528-14, 141:9-19; Doc. 528-15, 110:17 to 111:2, 112:12-16]  Plaintiffs argue that the continued prosecution of the *Valle Norte* case after this testimony was an irregularity or impropriety that supports Plaintiffs' claim for malicious abuse of process. [Doc. 528, pp. 19, 21]  The Court does not agree.

The Court predicts that the New Mexico Supreme Court would apply the analysis of *Fleetwood Retail* to the continued prosecution of a lawsuit after learning that one claim is not supported.  *See Fleetwood Retail,* 164 P.3d at 37 (determining that probable cause must be considered with regard to the complaint as a whole).  The New Mexico Supreme Court has consistently interpreted the tort of malicious abuse of process narrowly so as to have "the least chilling effect on a litigant's access to the courts."  *Id.*; *Lenscrafters, Inc.*, 282 P.3d at 766; *DeVaney*, 953 P.2d at 284.  Moreover, attorneys must be granted

"reasonable latitude in asserting novel claims under New Mexico law."  *Guest*, 195 P.3d at 357.  In *Valle Norte*, the facility brought claims against Plaintiffs for attorney deceit, malicious abuse of process by bringing the complaint without probable cause, and malicious abuse of process by making allegedly exorbitant settlement demands after withholding evidence that one of alleged injuries did not occur.  *See Valle Norte I*, 802 F.Supp.2d at 1262, 1264, 1265.  Judge Johnson pointed out that there is very little case law interpreting the New Mexico Attorney Deceit Statute, N.M.S.A. 1978, § 36-2-17 (1909).  *Valle Norte I*, 802 F.Supp.2d at 1265.  Judge Johnson had to predict which of competing interpretations from other jurisdictions the New Mexico Supreme Court would adopt in interpreting its Attorney Deceit Statute.  *Id.* at 1267.  Thus, even assuming Defendants continued to prosecute their claim that Plaintiffs filed the *Tracy* lawsuit without probable cause after they had reason to know that this claim was without merit (which the Court does not express an opinion on), Defendants had a good faith basis to seek a ruling on an unsettled question of New Mexico law, from both the District Court and the Tenth Circuit.  *See Valle Norte II*, 527 Fed.Appx. at 675-679 (predicting how the New Mexico Supreme Court would interpret the New Mexico Attorney Deceit Statute); *Guest*, 195 P.3d at 357-58 (upholding summary judgment on a malicious abuse of process claim because the defendants had a reasonable belief that some of their novel claims could be established to the satisfaction of a judge or jury).  As such, considering the continued prosecution of the *Valle Norte* lawsuit as a whole, rather than claim by claim, the Court concludes that Defendant Valle Norte did not engage in an impropriety or irregularity upon which a claim of malicious abuse of process can be founded by

continuing to prosecute the *Valle Norte* suit after their witnesses testified that Plaintiffs had performed an adequate pre-filing investigation and Mr. Tracy had a viable claim. Partial summary judgment for the Facility Defendants and THINM is appropriate to the extent that Plaintiffs' malicious abuse of process claim is premised on these facts.

### b. Service of Process

With regard to the service of process of the *Valle Norte* lawsuit, Plaintiffs argue the Court can find an impropriety based on the timing of the filing and service of the lawsuit, as Plaintiffs' Answer was due at a time when another matter between one of Plaintiffs' clients and Defendant Vida Encantada was scheduled for trial.   [Doc. 528, AMF BB, p. 23; Doc. 528-16]  The Court does not agree.  Given statutes of limitations and service of process deadlines, the Court believes that the Supreme Court of New Mexico would decline to hold that timely service of process can amount to an impropriety, regardless of the intent of the defendant or the inconvenience the timing of the service might place on the plaintiff.  *See Weststar Mortg.*, 61 P.3d at 833 ("There is no liability when the defendant in an abuse of process claim has done nothing more than carry out the process to its authorized conclusion, even if done with bad intentions.").[10] Defendants are entitled to partial summary judgment on this claim.

---

[10]  The Restatement cites a case which is distinguishable from the case at hand. Restatement (Second) of the Law of Torts, § 682, comment a(3) (citing *Dishaw v. Wadleigh*, 44 N.Y.S. 207, 209 (Sup. Ct. of N.Y. App. Div. 1897)).  In *Dishaw*, an attorney assigned a collection matter to a person living a day's travel from the purported debtor for the express purpose to induce the debtor to confess to the judgment rather than face the inconvenience of traveling to appear as subpoenaed.  *Dishaw*, 44 N.Y.S. at 208-09.  The Court concluded that the attorney "sought by trickery and cunning to pervert the processes of the law from their proper use and design, in order to reach a result which it

### c.  *Offers to Hire Plaintiffs or Settle the Valle Norte Suit*

Plaintiffs argue that Defendants attempted to obtain a settlement of Plaintiffs' other cases by offering to settle the *Valle Norte* suit and also offered to pay Plaintiffs a stipend if they stopped suing Defendants.  Ms. Harvey testified that Christine Zack:

> is the one who's offered, on two different occasions, first, to have me work for them for a monthly stipend if I didn't sue them anymore.   And, secondly, she offered that a second time, as well as that she would drop the Valle Norte Tracy case if I settled all the THI cases.

[Doc. 497-1, 20:2-7]  Defendants respond to this argument in several ways, most of which are set forth in section III.B, *infra*.  In addition to those arguments, Defendants argue that the Facility Defendants and THINM had nothing "whatsoever to do with any alleged offer of a 'stipend' to Ms. Harvey, any alleged offer to 'hire' Ms. Harvey, or any alleged offer to dismiss the Valle Norte Lawsuit if Ms. Harvey agreed to settle other cases."  [Doc. 557, p. 13]  The Court is not persuaded.  A reasonable jury could find that Ms. Zack was acting on behalf of each moving party because the Facility Defendants and THINM were parties to the lawsuits that Ms. Zack offered to dismiss.  [Doc. 528, AMF K; Doc. 497-1, 20:1-10]  Furthermore, if Defendants' argument that a party is not responsible for its attorneys' conduct were applied, parties would be immune from nearly all malicious abuse of process suits.  New Mexico has not adopted such reasoning, and instead holds that "[i]t is a defense for lack of probable cause that an unreasonable belief in the legal validity of a claim is based on advice of counsel sought in good faith and

---

was thought could not be arrived at by the ordinary and legitimate procedure of the courts."  *Id*.  These facts illustrate conduct more readily definable as a perversion of the process than the timing of service of process complained of here.

given after full disclosure of all known or readily knowable relevant facts." *DeVaney*, 953 P.2d at 287 n.3 (internal quotation marks, brackets and citation omitted).   The Facility Defendants and THINM have not submitted evidence via affidavit or otherwise pertaining to this defense.   Accordingly, Defendants' argument is not persuasive, and the Court concludes that there exists a genuine issue of material fact as to whether the Facility Defendants and THINM engaged in an impropriety or irregularity in extending the offers of a stipend and to dismiss the *Valle Norte* lawsuit.

### d. *Disclosure of Settlement Communications*

Plaintiffs next argue that Defendants' disclosure of the settlement demand made by Mr. Tracy through Plaintiffs in the *Tracy* case was an abuse of process.   [Doc. 528, pp. 19, 24; 528-7 to 528-8]   In *Valle Norte II,* our Tenth Circuit indicated, in dicta, that the settlement demand amount could not be used as evidence by operation of the New Mexico Mediation Procedures Act.  *Valle Norte II*, 527 Fed.Appx. at 672.   Even so, this Court cannot conclude that the disclosure of the settlement demand supports Plaintiffs' claim of malicious abuse of process because Valle Norte was pursuing a novel claim of abuse of process on the settlement proceedings and demand, as discussed above.   *C.f. Guest*, 195 P.3d at 357-58 (concluding that there was probable cause to bring novel claim that attorney violated insurance Trade Practices and Frauds Act based on attorney's discovery tactics and settlement offers).   Thus, this conduct does not support Plaintiffs' malicious abuse of process claim and summary judgment is warranted on Plaintiffs' malicious abuse of process claim to the extent is based on the disclosure of the *Tracy* settlement demand.

e. *Motion to Compel*

Finally, Plaintiffs rely on Valle Norte's act of filing a Motion to Compel Plaintiffs to produce their computer hard drives in the *Valle Norte* suit to establish an irregularity or impropriety.  [Doc. 528, pp. 19, 21-22]  Plaintiffs submit that a second Motion to Compel production of Plaintiffs' computer hard drives filed in this case by all Defendants other than Ms. Zack is further evidence of Defendants' true motive of "gaining insight and knowledge into litigation strategies and tactics" which Plaintiffs have used in bringing claims against the Defendants.  [Doc. 528, pp. 21-22; Doc. 483]  Whether Valle Norte's Motion to Compel was an impropriety depends on whether Defendants' use of the motion to compel "for the purposes for which it was designed [was] so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure."  *Nienstedt*, 651 P.2d at 882; *see also Durham*, 204 P.3d at 25 ("[a]n abuse of process arises only when there has been a perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do" (internal quotation marks and citation omitted)); *Richardson*, 787 P.2d at 421 ("Some definite *act* or threat not authorized by the process, or *aimed at an objective not legitimate in the use of the process, is required*" (internal quotation marks and citation omitted; emphasis in original)).  To determine whether the Motion to Compel was lacking in justification the Court must review the basis for the Motion to Compel.

In the *Valle Norte* suit, Valle Norte requested the Harvey Law Firm to produce correspondence within the Firm to or from Dusti Harvey and Feliz Rael (an attorney at the Firm who represented Mr. Tracy) which referred to the cause of or "nature and extent of James Tracy's injuries alleged in the Tracy Complaint at any time prior to service of the THI Complaint upon Defendants."  [*Valle Norte I*, 10-CV-0873-WJ-LFG Doc. 65-2, pp. 6-7]  The Firm provided some documentation and then repeatedly represented that the Firm had "given the entire file over."  [*Valle Norte I,* Doc. 65-1, p. 2]  Both Ms. Rael and Ms. Harvey testified at their depositions that, to their knowledge, all responsive documents and emails were produced. [*Valle Norte I*, Doc. 65-1, p. 4; Doc. 65-3, p. 2]  On April 6, 2011, the Harvey parties' counsel sent a letter to Valle Norte's counsel, "in response to your March 30, 2011 letter regarding defendants' responses to plaintiff's first set of discovery requests."  [*Valle Norte I,* Doc. 65-4, p. 1]  In it, the Harvey parties' counsel stated:  "With regard to emails, there are two sources in defendants' possession: emails contained on the disc that we provided to you; and emails on a computer belonging to Ms. Rael.  We have provided both to plaintiff in full."  [*Valle Norte I*, Doc. 65-4, p. 3]

Subsequently, Jennifer Foote (another attorney of the Harvey Law Firm who did work on the Tracy case) testified at her deposition taken on May 25, 2011, that she was not sure whether she had an email file related to the Tracy case and she was not asked to look for any emails responsive to the discovery requests.  [*Valle Norte I*, Doc. 65-5 pp. 5-6]   Valle Norte then filed a Motion to Compel on June 9, 2011, one week before the

close of discovery.  [*Valle Norte I*, Doc. 65]  Valle Norte specifically requested that the

Court:

> compel Defendants to allow Valle Norte to inspect and copy (1) Defendant
> Feliz Rael's and Defendant Dusti Harvey's computers for their Tracy
> Lawsuit Outlook files, (2) Defendant Harvey Law Firm, LLC's employee
> Jennifer Foote's and Harvey Law Firm employee Kim Hagen's computers
> for their Tracy Lawsuit Outlook files, and (3) Harvey Law Firm's "shared
> drive" folder related to the Tracy Lawsuit (including in each case,
> retrievable deleted files).

[*Valle Norte I,* Doc. 65, p. 1]  Valle Norte represented that on June 8, 2011, Plaintiffs

submitted seven hundred pages of emails, many of which were sent by Dusti Harvey or

Feliz Rael, and many of which were not previously produced.  [*Valle Norte I,* Doc. 65, p.

9]  In one such email, dated April 23, 2008, Ms. Hagen reported that in a medical record

from Lovelace for a visit dated April 29, 2005 (after the injury), Mr. Tracy discussed

tenderness of his penis and the note reflects an inspection of Mr. Tracy's penis.  Ms.

Harvey responded to this email and copied Ms. Rael and Ms. Foote, stating "Should we

be still pursuing this case??????????"  [*Valle Norte I,* Doc. 65, p. 9; Doc. 65-6, p. 1]

Valle Norte submitted that it "had on several prior occasions questioned Defendants'

production because there were periods when no emails were produced, many of the

produced emails appeared to go unanswered, and many were produced in this case with

none of their referenced attachments."  [*Valle Norte I*, Doc. 65, p. 3]  Valle Norte implied

that any undiscovered documents, like those newly disclosed, may "corroborate Valle

Norte's contention in this MAP case that Defendants sued Valle Norte because they

thought the nursing home was an easy mark -- not because they had conducted an

investigation that gave them a reasonable basis to conclude that the nursing home should compensate Mr. Tracy for mistreatment." [*Valle Norte I,* Doc. 65, p. 11]

On June 15, 2011, after Valle Norte had filed the Motion to Compel, Plaintiffs sent additional documents which contained "all of the emails" regarding the Tracy lawsuit in the Outlook folders of Jennifer Foote, Dusti Harvey and Ms. Hagen. [*Valle Norte I*, Doc. 79, p. 14] Plaintiffs' attorney represented that the Plaintiffs were providing the emails voluntarily because the discovery requests only requested documents pertaining to the nature and extent of Mr. Tracy's injury and only documents between Ms. Rael and others at the Firm and Ms. Harvey and others at the Firm. [*Valle Norte I,* Doc. 79, p. 14] Plaintiffs then opposed the Motion to Compel, advising the Court that the Plaintiffs had eight pending matters against THI of New Mexico nursing homes, two of which were scheduled for trial within three months of the date of the response. [*Valle Norte I,* Doc. 79, pp. 1-2] Plaintiffs argued that to allow the request by Valle Norte would be to allow "THI/fundamental parties in all of the foregoing lawsuits potential access to HLF's electronically stored work product and attorney-client privileged information regarding those lawsuits; all of HLF's evaluations, case analyses, opinions, mental impressions, and case strategies in all of these ongoing cases." [*Valle Norte I,* Doc. 79, p. 2] Plaintiffs argued that it would lead to "incalculable" harm to the Harvey Law Firm and its clients to allow Valle Norte or related entities access to its computers as it would "compromise the attorney-client privilege that every current and former client of HLF expects, and to which every such client is entitled." [*Valle Norte I,* Doc. 79, pp. 2-3]

41

In neither its Motion to Compel nor its Reply did Valle Norte address the fact that it was seeking to inspect the computers of not just an opposing party, but of a law firm which both previously and currently represented individuals who sued Valle Norte and related entities.[11]   Even after Plaintiffs complained of the intrusion into confidential information, Valle Norte continued to request full access to Plaintiffs computers, failing to offer any suggested procedure for the Court to protect the attorney-client privileged documents while still searching for documents responsive to its discovery requests.  *See Sher v. SAF Fin., Inc.*, 11-MC-18-MCA Doc. 28 (D.N.M. June 15, 2011) (ordering a copy of electronically stored information obtained from, *inter alia,* agreed-upon keyword searches, to be stored on a hard drive and submitted to a mutually acceptable neutral third party custodian appointed by court); Fed. R. Civ. P. 34 (governing the inspection and production of electronically stored information) & advisory committee's note (2006) subdiv. a ("Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."); *see also* Rule 16-106 NMRA ("Confidentiality of Information").  Valle Norte's failure to acknowledge and address in its motion that the

---

[11] In addition, in its Reply, Valle Norte faulted Plaintiffs for not disclosing the metadata associated with the emails though Valle Norte had not previously requested metadata. [*Id.* Doc. 65-2, pp. 6-7; Doc. 88, pp. 4-5]

relief it sought would give it access to documents to which it was not entitled, due to attorney-client privilege and attorney work product doctrines, indicates a flagrant disregard of one of the fundamental tenets of the attorney-client relationship.

The question remains, however, whether Plaintiffs have shown an improper or irregular use of procedure. Upon a sufficient showing, various courts have allowed inspection of opposing party's hard drives. *See, e.g.*, *Sher*, 11-MC-18-MCA, Doc. 28; *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.*, 2009 WL 722056, *4-8 (D.Kan. 2009) (ordering counsel, with the aid of computer experts, to agree upon a protocol for the plaintiff to inspect the hard drives or computer systems of the defendants while ensuring protection of attorney client privilege and confidentiality of personal information; collecting cases). The Rules of Civil Procedure allow for inspection of an opposing party's electronically stored information. Fed. R. Civ. P. 26(b)(2)(B); Fed. R. Civ. P. 34(a)(1)(A). Given Plaintiffs' misrepresentations during the pendency of the *Valle Norte* suit that they produced all responsive communications, Valle Norte cannot be faulted for disbelieving Plaintiffs and requesting relief. *See White*, 2009 WL 722056, *4 (determining that the plaintiff established "extenuating circumstances" to justify production of emails in their native format because "Plaintiff's computer expert has noted discrepancies in the metadata as to the creation dates, and Defendants have not adequately explained the discrepancies"). Valle Norte knew that Plaintiffs failed to inspect at least one attorney's computers for responsive emails, giving Valle Norte reason to file a Motion to Compel. [*Valle Norte I,* Doc. 65-5, p. 3] Moreover, the burden is on the party opposing discovery to establish the undue burden or cost of production. Fed. R.

Civ. P. 26(b)(2)(B).  Thus, though the Court believes there was cavalier overreaching on the part of Valle Norte, the Court cannot conclude that the Motion to Compel was "so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Nienstedt*, 651 P.2d at 882.  Plaintiffs gave Valle Norte cause for filing the Motion to Compel in the *Valle Norte* suit, and the Court concludes that Valle Norte's failure to address the issue of attorney-client privilege or work product is not enough to establish a perversion of the process.  As such, the Motion to Compel in *Valle Norte*, in and of itself, was not "an act in the use of process other than such as would be proper in the regular prosecution of the charge."  *Durham*, 204 P. 3d at 25 (internal quotation marks and citation omitted).  Defendants THINM and the Facility Defendants are entitled to partial summary judgment on Plaintiffs' malicious abuse of process claim to the extent it is grounded on Valle Norte's filing of the Motion to Compel in the *Valle Norte* suit.

### iii.  *Summary*

Defendants' Motion for Summary Judgment on Plaintiffs' Malicious Abuse of Process Claims [Doc. 466] is **GRANTED-IN-PART** and **DENIED-IN-PART**. Plaintiffs have submitted evidence of each element required to make a claim for malicious abuse of process only with regard to the offers to pay Plaintiffs a stipend and Christine Zack's offer to dismiss the Valle Norte case if Plaintiffs' clients settled their cases against various THI entities.  Accordingly, the Facility Defendants and THINM's Motion for Summary Judgment on Plaintiffs' malicious abuse of process claim based on this conduct is **DENIED**.  THINM and the Facility Defendants' Motions for Summary

Judgment on remaining grounds of establishing malicious abuse of process is **GRANTED**.

### B.  <u>Fundamental Administrative Services Motion for Summary Judgment on Plaintiffs' Malicious Abuse of Process Claims</u>

Defendant FAS moves for Summary Judgment on Plaintiffs' malicious abuse of process claims, relying on evidence set forth by their Rule 30(b)(6) designee, Mr. Ogletree.  [Doc. 472, pp. 5-6; Doc. 472-2]  Among other things, Mr. Ogletree states that "Christine Zack had no involvement in the Valle Norte Lawsuit and exercised no control over the litigation decisions in that case."  [Doc. 472-2, ¶ 3]

Plaintiffs request the Court to strike Mr. Ogletree's Declaration because Mr. Ogletree's declaration was not made on personal knowledge. [Doc. 500, pp. 6-8] However, Plaintiffs' argument is not persuasive as Rule 30(b)(6) allows for an exception to the requirement that a witness testify based on personal knowledge.  *See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d  1135, 1146-47 (10th Cir. 2007) ("any witness who can gather responsive information may be designated by the company and . . . in one common scenario, corporations designate individuals who lack personal knowledge of the events giving rise to the litigation but who have otherwise been educated about it" (internal brackets, quotation marks and citation omitted)); *see also Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993) (rejecting the argument that a corporate designee who has no personal knowledge need not be educated on relevant subject matter to testify for the corporation).  Because he was testifying as a Rule 30(b)(6) designee, Mr. Ogletree was testifying as to FAS' actions and knowledge

and did not need to have personal knowledge in making his declaration.   Plaintiffs'

request to strike Mr. Ogletree's Declaration is denied.

Above, the Court concluded that the only actions alleged by Plaintiffs which

supports their claim for malicious abuse of process were the alleged offers to pay

Plaintiffs a stipend and Ms. Zack's offer to dismiss the *Valle Norte* suit if Plaintiffs'

clients settled their claims against various THI entities.   Defendants argue that these

statement cannot be used in any legal proceeding under the New Mexico Mediation

Procedures Act.[12]  [Doc. 472, pp. 14-15]  Under the New Mexico Mediation Procedures

Act, "all mediation communications are confidential, and not subject to disclosure and

shall not be used as evidence in any proceeding."  N.M.S.A. 1978, § 44-7B-4 (2007).  A

mediation is defined as "a process in which a mediator: (1) facilitates communication and

negotiation between mediation parties to assist them in reaching an agreement regarding

their dispute; or (2) promotes reconciliation, settlement or understanding between and

among parties[.]"  N.M.S.A. 1978, § 44-7B-2(A) (2007).  A "mediation communication"

is defined as "a statement, whether oral or in a record or verbal or nonverbal, that occurs

during a mediation or is made for purposes of considering, conducting, participating in,

initiating, continuing or reconvening a mediation or retaining a mediator[.]" Section 44-

7B-2(B); *Valle Norte II*, 527 Fed.Appx. at 671.

Ms. Harvey testified that one offer of a stipend and the offer to dismiss *Valle*

*Norte* were made at a mediation after it had begun, with a mediator in the room.  [Doc.

---

[12] In applying the Mediation Procedures Act the Court must determine the meaning of
statutory language, a question of law.  *Warner v. Calvert*, 258 P.3d 1125, 1130 (N.M. Ct.
App. 2011).

497-2, 179:11 to 181:25]  Plaintiffs nevertheless argue that these statements were not made "in the course of the Zuckerman mediation" because they "w[ere] not anything to do specifically with Zuckerman[.]"  [Doc. 497-2, pp. 179:21 to 180:25]  There is no testimony that the communications were made to or intended to be communicated to Plaintiffs' client, the actual party to the mediation occurring.  Further, Ms. Harvey testified that the mediator nearly left the room, stayed only when requested to do so, and stated nothing during the communication.  [Doc. 497-2, 181:15 to 182:1]  The testimony before the Court about the context of the statements is sparse--at this point it is too sparse to persuade the Court that the statements were "mediation communications" as defined by the New Mexico Legislature.[13]  The facts in the record do not indicate that the statements were made to assist the mediation parties (i.e., Plaintiffs' client, the Facility Defendant and any other named Defendants) reach an agreement regarding *their* dispute.  *See* Section 44-7B-2(A)(1) (defining a mediation as the process in which a mediator "facilitates communication and negotiation *between mediation parties* to assist *them* in reaching an agreement regarding *their* dispute").  Rather, the evidence before the Court is that the statements were made to settle a matter not then being mediated, the *Valle Norte* suit, between persons or entities not parties to the mediation and without the facilitation

---

[13]  The Mediation Procedures Act operates like a rule of evidence or a privilege.  "The court must decide any preliminary question about whether a witness is qualified, *a privilege exists*, or evidence is admissible.  Fed. R. Evid. 104(a); see also Fed. R. Evid. 104 advisory committee note (1972) subdiv. (a) ("The applicability of a particular rule of evidence often depends upon the existence of a condition. . . . To the extent that these inquiries are factual, the judge acts as a trier of fact.").

of the mediator.  Given that this evidence appears to be admissible at this time, the facts do not establish that Defendants are entitled to judgment as a matter of law.[14]

Defendants do not argue that the purported offer to drop the *Valle Norte* suit if Plaintiffs settled their clients' cases was not improper.  Rule 16-804 NMRA states:  "It is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct, *knowingly assist or induce another to do so* or do so through the acts of another[.]" (Emphasis added).  Had Plaintiffs been willing to settle their clients' claims in order to protect their personal interests (in the dismissal of the *Valle Norte* suit) there would have been a "significant risk" of a conflict of interest.  *See* Rules 16-506(B), 16-107(A)(2) & 16-108(G) NMRA; *see also In Re Montoya*, 266 P.3d 11, 17-18 (N.M. 2011) (addressing an attorney's violation of Rules 16-107(A)(2), 16-108(G) and other ethical rules).  Ms. Zack's alleged conduct was not only an attempt to induce or create a conflict of interest, it was an attempt to cause serious detriment to the fairness of the legal process in several cases.

Likewise, the alleged offer of a stipend is an impropriety or irregularity.  From both the email Ms. Harvey sent to others in her Firm describing an alleged offer and from the description of the offer at the mediation, it appears that the Plaintiffs had active cases against Defendants at the time of the alleged offers.  [Doc. 528-6, Doc. 497-1, 20:1-10]

---

[14] The Court's ruling on the admissibility of this evidence is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial. If such circumstances should arise, the parties must seek a ruling from the Court outside the presence of the jury regarding the admissibility of such evidence. *See* Fed. R. Evid. 104 (c) ("The court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires.").

New Mexico's Rules of Professional Conduct forbid making an agreement that the attorney will not sue a particular defendant a term of a settlement of a client's controversy. Rule 16-506(B) NMRA ("A lawyer shall not participate in offering or making . . . an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy."); *see also Adams v. BellSouth Telecomms., Inc.*, 2001 WL 34032759, *9 (holding that an offer of settlement contingent upon the plaintiffs' counsel agreeing to not sue the defendant for a year violated Florida's Rules of Professional Conduct but, while critical of such agreements, pointing out that "*ex post* 'consulting' agreements between Plaintiffs' attorneys and former opposing parties are becoming more common"). Moreover, such arrangements have a clear potential to pervert the judicial process given that they may lead a lawyer to put his or her own financial interest ahead of the interests of his or her clients. *Adams*, 2001 WL 34032759, *9. Accordingly, the Court holds that the evidence in the record creates a question of material fact as to whether Defendants abused the legal process in offering to pay Plaintiffs a stipend if they stopped bringing new cases against Defendants.

The Court further concludes that Plaintiffs submitted evidence of an improper primary motive to force Plaintiffs to stop bringing claims and to settle several pending claims by putting their own interests above that of their clients. *Cf. DeVaney*, 953 P.2d at 287 (stating that there is evidence of an improper purpose where "a litigant initiates proceedings primarily for the purpose of inducing settlement in an unrelated proceeding or for some other form of extortion"); *Valles*, 84 P.3d at 1064 (holding that the plaintiffs sufficiently alleged an improper purpose by alleging that a party brought a lawsuit to

intimidate, harass, extort cooperation and retaliation against the plaintiffs so they would dismiss a separate appeal).

Defendant FAS next argues that, as a non-litigant, it cannot be liable for malicious abuse of process. *Valles* holds that active participation by a non-litigant is required to establish a claim of malicious abuse of process against the non-litigant. *Valles*, 84 P.3d at 1062. "[M]ore is required for active participation than encouragement, advice, or consultation." *Id.* Instead, the non-litigant's conduct must have been the "determining factor" in the improper or irregular use of process in a judicial proceeding to establish liability against a non-litigant for malicious abuse of process. *Id.* Christine Zack, FAS' Senior Vice President, Chief Risk Officer and in-house lawyer, allegedly made the improper offer to dismiss the *Valle Norte* suit if Plaintiffs settled their cases against THI entities. Ms. Zack's conduct, by which FAS can be held to be liable, was thus the determining factor in the improper or irregular use of the process, as Ms. Zack herself made the offer. *See id.*; *see also Stinson v. Berry*, 943 P.2d 129, 133 (N.M. Ct. App. 1997) ("[I]f an officer or director directs or actively participates in the commission of the tortious act of the corporation, he will be liable, along with the corporation."). Likewise, Ms. Proctor was in-house counsel for FAS, and FAS can be liable for her torts. *See id.* The Court holds that a reasonable jury may find that FAS's conduct was the determining factor in the alleged misuse of the process.

Based on the foregoing, the Court **DENIES** Defendant FAS' Motion for Summary Judgment with regard to Plaintiffs' claim of malicious abuse of process on the grounds that offers of a stipend were made and Christine Zack offered to dismiss the Valle Norte

suit if Plaintiffs dismissed their clients claims against THI entities.  The Court **GRANTS** Defendant FAS' Motion for Summary Judgment on all other claims of malicious abuse of process by Plaintiffs against FAS for the reasons set forth in section III.A., *supra*.

C. **Plaintiffs' Motion for Summary Judgment on Defendants' Malicious Abuse of Process Claim**

By separate order, the Court granted Plaintiffs summary judgment and a declaratory judgment on eight of ten of their claims relating to the confidentiality clauses, determining that "[a]s a matter of law, the Harvey Law Firm did not breach the *Gutierrez, Romero, Wozniak, Zuckerman, Fox, Ortiz, Woods* or *Lesperance* Releases" as alleged by the Facility Defendants.  [Doc. 579; Doc. 578]  Because Plaintiffs were successful in bringing some of their breach of contract and declaratory judgment claims, the Court concludes that Plaintiffs have established "an effective defense" to Defendants' claims of malicious abuse of process based on a lack of probable cause.  *Fleetwood Retail*, 164 P.3d at 37 (holding that where the claimant was entitled to some form of recovery, even if not on all counts in the original suit, the claimant has established "conclusive evidence of probable cause"); *DeVaney*, 953 P.2d at 286 (holding that "some form of recovery for the original-proceeding plaintiff[] is conclusive evidence of the existence of probable cause" (internal quotation marks and citation omitted).  Defendants' arguments do not overcome this defense[15] and Plaintiffs Motion for Summary Judgment on Defendants' claims of Malicious Abuse of Process is **GRANTED**.

---

[15] Defendants argue that Plaintiffs abused the process because Dusti Harvey "testified at deposition that she does not know what any Responding Defendant did wrong to justify

51

D. **Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs'**
**Malicious Abuse of Process Claim**

Plaintiffs move for partial summary judgment on their own claim for malicious abuse of process.  [Doc. 484]  Plaintiffs argue that they are entitled to summary judgment because, as a corporate designee under Federal Rule of Civil Procedure 30(b)(6), "Defendants provided a representative who repeatedly testified that she had no knowledge or information regarding the decision to file the Underlying Lawsuits."[16] [Doc. 484, p. 7]  Plaintiffs ask this court to "enter an order declaring, as a matter of law, the Subject THI Defendants lack any knowledge about the decision to file the Underlying Lawsuits."  [Doc. 484, p. 9]  Based on such a declaration, Plaintiffs argue that there is no genuine issue of material fact and they have proven as a matter of law that Facility Defendants engaged in an irregularity or impropriety by filing lawsuits without any knowledge regarding why they were filed.  [Doc. 484, pp. 9-10]

Assuming Plaintiffs have set forth evidence that Facility Defendants filed the underlying lawsuits without corporate knowledge of the reasons for filing the suits, this fact would be relevant toward a claim that the Facility Defendants filed the suits without probable cause, i.e., without completing a reasonable pre-filing investigation.  *See Valle Norte II*, 527 Fed.Appx. at 673 ("In determining whether the Harvey Firm had probable cause, we ask whether [it] had a reasonable belief, founded on known facts established

---

and warrant being sued in this case" [Doc. 502, p. 1] and that "HLF clearly (in light of Judge Johnson's opinion) did not have probable cause to bring any claims whatsoever in ***this*** case related to the findings and activities in the Valle Norte Lawsuit."  [Doc. 502, p. 16]

[16] Defendants here refers to all Facility Defendants other than Casa Maria.

after a reasonable pre-filing investigation, that a claim could be established to the satisfaction of a court or a jury." (internal quotation marks and citation omitted)). However, Plaintiffs do not argue or provide evidence that there was no reasonable pre-filing investigation or that there was no reasonable belief to support the breach of contract claims by anyone involved in the decision to file the suits. *See DeVaney v. Thriftway Mktg. Corp.*, 953 P.2d at 285 (stating that probable cause is "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, . . . that a claim can be established to the satisfaction of a court or jury." (internal quotation marks, citations, and footnote omitted)). [*see* Doc. 528, pp. 13-19] Further, if Plaintiffs were relying on lack of probable cause to establish malicious abuse of process, summary judgment would be appropriate, as there was a reasonable belief to support filing the breach of contract claims. *See LensCrafters*, 282 P.3d at 766 (holding that summary judgment was proper on malicious abuse of process claim despite granting summary judgment for claimant on contract claim). Without evidence of no reasonable pre-filing investigation by all of those involved, Plaintiffs are not entitled to summary judgment on this ground.

### E.  Defendants' Motion for Summary Judgment on Plaintiffs' Prima Facie Tort Claim

THINM, the Facility Defendants, and Defendant FAS all move for summary judgment on Plaintiffs' prima facie tort claim. [Doc. 471, 477] As stated above, Plaintiffs rely on four acts of Defendants to establish Plaintiffs' claim of prima facie tort, which the Court will address in turn.

### i. *Filing Five Separate Lawsuits*

Plaintiffs argue that the Facility Defendants' act of filing five separate lawsuits in five separate courts constitutes a prima facie tort in that it was an unjustified and intentional, lawful act, done with an intent to injure Plaintiffs and which did cause injury to plaintiffs.  [Doc. 497, pp. 8-11]  *See Kitchell*, 972 P.2d at 348 (stating that the elements of a claim of prima facie tort are "1) an intentional and lawful act, 2) an intent to injure the plaintiff, 3) injury to the plaintiff as a result of the intentional act, and 4) the absence of justification for the injurious act").  Defendants argue, among other things, that Plaintiffs' prima facie tort claims should not be allowed to move forward because the tort is not intended to provide a remedy for conduct which did not fall within the stringent requirements of other established torts.  [Doc. 477, pp. 11-12]

The Court predicts that the New Mexico Supreme Court would hold that Defendants' conduct does not amount to prima facie tort.  "In determining whether a new tort can appropriately eliminate a restrictive feature of a traditional tort it is important to give careful consideration to the nature of the restriction."  *Schmitz*, 785 P.2d at 738, *quoting* Restatement (Second) of Torts § 870 cmt. j.  Repeatedly, the New Mexico Supreme Court has emphasized that "the tort of malicious abuse of process is to be construed narrowly to protect the right of access [to the courts]."  *Weststar Mortg.*, 61 P.3d at 828.  With regard to the filing of the cases in five different jurisdictions, the Court concludes that allowing the claim to move forward as a prima facie tort claim, though it does not support a claim for malicious abuse of process, would erode the New Mexico Supreme Court's careful delineation and limitation of the tort of malicious abuse of

process.  *See id.* (stating that, while the tort of malicious abuse of process is intended to protect individuals from the wrongful use of legal process "merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights" it is also meant to "protect the important interest of access to the courts, thereby preventing any chilling effect on the legitimate use of process" (internal quotation marks and citations omitted)); *Schmitz*, 785 P.2d at 738 ("[P]rima facie tort should not be used to evade stringent requirements of other established doctrines of law."); *Bandag of Springfield,* 662 S.W.2d at 553-54 (discussing the careful balancing of interests a court must conduct in deciding whether to allow a prima facie tort claim to go forward when another accepted tort exists); *see also Guest*, 195 P.3d at 365 (determining that prima facie tort claim, which relied on the same conduct which the Court held did not amount to malicious abuse of process, could not survive summary judgment).

### ii.  *Service of Process*

Plaintiffs argue that Defendants' conduct of serving Ms. Harvey separately, "at her home, while dark outside, as she was attempting to get her small children to bed for the night" supports a claim of prima facie tort.  [Doc. 497, p. 9]  Above, this Court held that such conduct was a legitimate use of the legal process.  Again, the Court believes that the New Mexico Supreme Court does not intend to allow such conduct, which falls within the designation of the "legitimate" use of the legal process, to support a claim for prima facie tort and thereby potentially discourage the legitimate use of legal process.  *See Schmitz*, 785 P.2d at 738.  As a matter of law, Plaintiffs' prima facie tort claim cannot proceed on the basis of Defendants' service of Ms. Harvey at her home after dark.

### iii.  *Motion to Compel*

Plaintiffs argue that the Motion to Compel filed in the *Valle Norte* suit supports their prima facie tort claim.  [Doc. 497, p. 9]  This Court held that the Motion to Compel was not so lacking in justification as to establish a claim of an impropriety or irregularity in the use of legal process.  Given the New Mexico Supreme Court's careful limitation of the tort of malicious abuse of process, as a matter of law this conduct does not support Plaintiffs' claim of prima facie tort.  *Schmitz*, 785 P.2d at 738.

### iv.  *Offer of a Stipend*

Finally, Plaintiffs argue that Defendants' offer of a monthly stipend to Dusti Harvey if she stopped suing THI entities supports a claim of prima facie tort.  [Doc. 497, p. 9]  As explained above, Plaintiffs have established a genuine issue of material fact as to whether this conduct amounts to the tort of malicious abuse of process.  New Mexico allows prima facie tort to be pleaded in the alternative.  *Schmitz*, 785 P.2d at 736. Nonetheless, here, Plaintiffs have not presented evidence that they suffered actual harm from the alleged offer of a stipend.  [*See* Doc. 497, p. 11]  Thus, Plaintiffs have failed to present evidence of an element of prima facie tort on this ground and summary judgment is appropriate as a matter of law.

### v.  *Summary*

In conclusion, Plaintiffs have not identified conduct by Defendants which supports their claim of prima facie tort.  Accordingly, THINM and the Facility Defendants' and Defendant FAS' motions for summary judgment on Plaintiffs' prima facie tort claim are **GRANTED.**

**F.  Defendants' Motion for Summary Judgment on Plaintiffs'**

**Conspiracy Claim**

THINM, the Facility Defendants and Defendant FAS move for summary judgment on Plaintiffs' conspiracy claims.  [Doc. 478; Doc. 472, pp. 24-25]  The only tortious conduct by Defendants on which this Court has not granted summary judgment is the malicious abuse of process claim based on the alleged offers of a stipend and Ms. Zack's offer to dismiss the *Valle Norte* suit if Plaintiffs dismissed the lawsuits they had pending on behalf of their clients against various THI entities.   THINM and the Facility Defendants argue that Plaintiffs have offered no evidence of an agreement, i.e., a common design or mutually implied understanding, with respect to Ms. Zack's offer, citing *Morris v. Dodge Country, Inc.*, 513 P.2d 1273, 1274 (N.M. Ct. App. 1973).  [Doc. 478, p. 4]  FAS "adopts the reasoning of its co-defendants (and alleged co-conspirators) as set forth in their motion for summary judgment on the issue of conspiracy" and also alleges Plaintiffs have not alleged damages as a result of a conspiracy.  [Doc. 472, p. 25]

> A conspiracy may be established by circumstantial evidence; generally, the agreement is a matter of inference from the facts and circumstances, including the acts of the persons alleged to be conspirators. . . . The question is whether the circumstances, considered as a whole, show that the parties united to accomplish the [unlawful] scheme.

*Id*.  Here, Plaintiffs have produced evidence sufficient to establish a conspiracy.  Each of the Defendants stood to benefit from the purportedly improper offers.  The alleged offers were to dismiss the *Valle Norte* suit if Plaintiffs dismissed their cases against various THI entities and to pay Plaintiffs a stipend if Plaintiffs stopped suing various THI entities.  Plaintiffs' clients' lawsuits were against each of the Defendant Facilities, THINM and

FAS.  [See Doc. 578, pp. 3-9]  In addition, Ms. Zack is the Senior Vice President, in house counsel and chief risk officer for Defendant FAS and Ms. Proctor was in-house counsel for FAS.  [Doc. 472-1, ¶ 2]  Defendant FAS provided administrative services, and Ms. Zack and Ms. Proctor provided in-house legal services to each of the Defendant Facilities and THINM.  [Doc. 472-1, ¶ 2]  From this evidence, though it is circumstantial, a reasonable juror could conclude that each of the Defendants were in agreement with the alleged improper offers.  *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) ("The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.").

The only remaining argument on conspiracy is Defendant FAS' argument that Plaintiffs have not alleged damages.  "A civil conspiracy must actually involve an independent, unlawful act that causes harm-something that would give rise to a civil action on its own." *Ettenson*, 17 P.3d at 445.  In an action for malicious abuse of process, "[a] plaintiff may recover the normal expenses of defending against the underlying claim. Nonetheless, the plaintiff has the burden of demonstrating actual damages for all forms of harm, including reputational or emotional harm." *DeVaney*, 953 P.2d at 290.  Ms. Zack's offer leads to an inference that Valle Norte was pursuing the *Valle Norte* suit with the primary purpose to punish Plaintiffs for bringing other claims against all Defendants. Accordingly, Plaintiffs may be entitled to recover damages, including some or all of their expenses of defending against the *Valle Norte* suit, as a result of the harm caused by the conspiracy between the Defendants to punish Plaintiffs for continuing to pursue cases against Defendants.  *See Valles*, 84 P.3d at 1065 (holding that the plaintiffs had

sufficiently alleged damages to support an alleged conspiracy to maliciously abuse the process); *Fleetwood Retail*, 164 P.3d at 40 (indicating that damages for malicious abuse of process include the defendant's costs to have a motion to dismiss prepared after the plaintiff continued to prosecute suit against defendant despite being presented with evidence that plaintiff's claim against defendant lacked merit).

Defendants' Motions for Summary Judgment on Plaintiffs Conspiracy Claims are **DENIED-IN-PART** as to Plaintiffs' claim of conspiracy based the alleged improper offers and **GRANTED-IN-PART** on all of the remaining bases for Plaintiffs' civil conspiracy claim.  [Doc. 472; Doc. 478]

### G.  Defendant FAS' Motion for Summary Judgment on Plaintiffs' Declaratory Judgment Claims

Defendant FAS also moves for summary judgment on Plaintiffs' declaratory judgment action because Plaintiffs did not name their clients who were signatories to the settlement agreements as parties.  [Doc. 472, pp. 17-18]  Though the Court has already granted Plaintiffs, in part, the Declaratory Judgment they sought, the Court will briefly address Defendant FAS' argument.  The New Mexico Declaratory Judgment act requires that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding[.]"  N.M.S.A. 1978 § 44-6-12 (1975).  The declaratory relief requested here, which has, in part, already been granted, does not affect the interest of any person not a party to this case.  The real dispute here is whether Plaintiffs breached the confidentiality clauses in the settlement agreements, and a declaratory judgment on

that question will not materially affect the underlying clients' interests.  No party has alleged, argued or submitted evidence that a declaration that Plaintiffs did breach the confidentiality clause would allow Defendants to seek relief from the underlying clients. Therefore, Defendant FAS' argument is not well-taken.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED:**

1)  *Defendants' Motion for Summary Judgment on Plaintiffs' Malicious Abuse of Process Claims* [Doc. 466] is **DENIED-IN-PART**, as to Plaintiffs' claim of malicious abuse of process based on the alleged offers of a stipend and Ms. Zack's alleged offer to dismiss the *Valle Norte* suit if Plaintiffs settled their clients' claims, and **GRANTED-IN-PART** with respect to all other bases for Plaintiffs' malicious abuse of process claims.

2)  *Fundamental Administrative Services, LLC's Motion for Summary Judgment as to Malicious Abuse of Process, Declaratory Judgment, Prima Facie Tort, and Civil Conspiracy* [Doc. 471] is **DENIED-IN-PART** as to Plaintiffs' claim of malicious abuse of process based on the alleged offers of a stipend and Ms. Zack's alleged offer to dismiss the *Valle Norte* suit if Plaintiffs' settled their clients' claims and as to Plaintiffs' conspiracy claim based on those offers, and **GRANTED-IN-PART** with respect to the remainder of Plaintiffs' claims;

3)  *Plaintiffs' Motion for Summary Judgment on Defendants* [sic] *Counterclaims of Malicious Abuse of Process* [Doc. 482] is **GRANTED**;

4)  *Plaintiffs' Motion for Partial Summary Judgment on Plaintiffs' Claims for Malicious Abuse of Process* [Doc. 484] is **DENIED**;

5)   *Defendants' Motion for Summary Judgment on Plaintiffs' Prima Facie Tort Claims* [Doc. 477] is **GRANTED**; and

6)   *Defendants' Motion for Summary Judgment on Plaintiffs' Civil Conspiracy Claims* [Doc. 478] is **DENIED-IN-PART** as to Plaintiffs' Conspiracy Claim based on the alleged improper offers, and **GRANTED-IN-PART** with respect to the remainder of Plaintiffs' bases for their conspiracy claim.

**IT IS SO ORDERED THIS 31**[st] day of March, 2015 in Albuquerque, New Mexico.

_____

M. CHRISTINA ARMIJO
Chief Judge, United States District Court