IN THE UNITED STAES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DUSTI HARVEY,
and HARVEY LAW FIRM, LLC,

    Plaintiffs,

v.                              No. 12-CV-727 MCA/LAM

THI OF NEW MEXICO AT ALBUQUERQUE
CARE CENTER, LLC; THI OF NEW MEXICO
AT VALLE NORTE, LLC d/b/a/ Valle Norte
Care Center; THI OF NEW MEXICO AT VIDA
ENCANTADA, LLC, d/b/a/ Vida Encantada
Nursing and Rehab; THI OF NEW MEXICO
AT LAS CRUCES, LLC; THI OF NEW MEXICO,
LLC; FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC; AND CTRISTINA A. ZACK,
a/k/a CHRISTINE A. ZACK GUNDERSON.

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant *Christine Zack's Motion to Dismiss Pursuant to Rules 12(B)(6) and 12(B)(1)*. [Doc. 525] The Court, having considered the submissions, the relevant law, and being otherwise fully advised, hereby **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion.

I.     BACKGROUND

The Court will briefly set out only the relevant facts, as the Court has more fully set out the factual allegations in previous Memorandum Opinions and Orders. [*See* Docs. 513; 583] Ms. Zack has not yet answered in this case. After waiving service, Ms. Zack obtained extensions to file her Motion to Dismiss for Lack of Personal Jurisdiction.

1

[Docs. 11; 18; 24; 28]  Ms. Zack filed her Motion to Dismiss for Lack of Personal jurisdiction on September 18, 2012.  [Doc. 28]  The Court denied that motion on September 30, 2013.  [Doc. 513]  Rather than answering, Ms. Zack filed the present *Motion to Dismiss Pursuant to Rules 12(B)(6) and 12(B)(1)* on October 18, 2013.  [Doc. 525]  The Court's last Order extending the deadline for filing "pretrial motions" set the deadline at August 16, 2013.  [Doc. 453]

The Harvey Plaintiffs sued Defendant Zack and others on several grounds: seeking a declaratory judgment that the Harvey Plaintiffs did not breach certain contracts; seeking a declaratory judgment that Plaintiffs did not breach a duty in making statements regarding settlements; alleging that "THI and the Defendant Facilities, and each of them" engaged in malicious abuse of process; alleging that "THI and the Defendant Facilities, and each of them" committed prima facie tort; alleging Defamation; and alleging Civil Conspiracy.  [Doc. 162, pp. 26-31]  In the operative Complaint, Plaintiffs set out limited allegations against Defendant Zack personally.  The paragraphs specifically naming Ms. Zack state:

> 14.    HLF alleges that Defendant Christine Zack, a/k/a Christine A. Zack Gundersen ("Zack") is, on information and belief, a resident of the State of Nevada, employed as Senior Vice President, Chief Risk Officer, Risk Management Department by Defendant FAS, and has, in that position, controlled, authorized, directed, ratified and participated personally in the actions of THI of New Mexico, LLC; the Defendant Facilities; THIB; and FAS which give rise to the this Complaint.
> . . .
> 134.    After the Valle Norte Lawsuit was filed, THI, through its agent Christine Zack, offered to dismiss the Valle Norte Lawsuit voluntarily if HLF would agree to settle all cases being pursued by HLF on behalf of all clients against THI and THI nursing homes.  This constitutes a clear misuse of the judicial process and extortion arising from the filing of the Valle

> Norte Lawsuit, in an attempt to influence HLF's handling of other lawsuits against THI and THI nursing homes.
> . . .
> 162. THI, through its agent, Christine Zack, misused the judicial process and committed extortion when she offered to dismiss the Valle Norte Lawsuit voluntarily if HLF would agree to settle all cases being pursued by HLF on behalf of clients against THI and THI nursing homes, in an attempt to influence HLF's handling of other lawsuits against THI and THI nursing homes and to harass, annoy, and injure HLF.

[Doc. 162] In addition, Plaintiffs make the following allegations:

> 123. THI, through its agents and attorneys, have offered to pay Dusti Harvey a regular stipend if HLF would agree to cease asserting claims and bringing lawsuits on behalf of clients against THI nursing homes.
> 124. THI, through its agents and attorneys, have offered to have Attorney Lori Proctor's law firm hire Dusti Harvey to perform legal services on behalf of THI if HLF would agree to cease asserting claims and bringing lawsuits on behalf of clients against THI nursing homes.

[Doc. 162] Finally, Plaintiffs state in their Complaint that "Defendants THI of New Mexico, LLC; FAS; THIB; and Zack shall be collectively referred to for purposes of this Complaint as 'THI'". [Doc. 162, ¶ 15]

## II. ANALYSIS

### A. Timeliness

Plaintiffs argue that the Ms. Zack's motion to dismiss, filed October 18, 2013, was not filed timely pursuant to the Court's extended deadline [Doc. 453], which required all pretrial motions to be filed by August 16, 2013. [Doc. 560, pp. 1-2] Ms. Zack counters that she can raise the issue of subject matter jurisdiction at any time, and that, by

operation of Federal Rule of Civil Procedure 12(a)(4)(A),[1] she had 14 days after the Court ruled on her Motion to Dismiss for lack of Personal Jurisdiction to file a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Doc. 568, pp. 1-4]  Thus, Ms. Zack submits that she timely submitted the present motion after the Court ruled on her Motion to dismiss for lack of Personal Jurisdiction.  [Doc. 568, pp. 1-4]

The Court agrees with Ms. Zack that she could raise the issue of lack of subject matter jurisdiction at any time, including by the present motion.  *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance.").

As to her Rule 12(b)(6) motion, Ms. Zack argues that she could file her motion within 14 days of the Court's ruling on her *Motion to Dismiss for Lack of Personal Jurisdiction.*  [Doc. 568, p. 2]  She argues, correctly, that her 12(b)(6) motion did not need to be consolidated with her prior motion to dismiss, by operation of Rule 12(h)(2).  *See* Fed. R. Civ. P. 12(h)(2) (allowing a motion to dismiss for failure to state a claim to be brought, like a motion for judgment on the pleadings under Rule 12(c), after the pleadings are closed but early enough not to delay trial or at trial); 5C Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1392 (3d ed. 2014) (explaining that Rule 12(b)(6) defenses are not waived).  Nonetheless, Ms. Zack ignores pertinent language in Rule 12(a)(4) when arguing that her Rule 12(b)(6) motion was timely filed.  Rule 12(a)(4)

---

[1] Ms. Zack erroneously cites to Federal Rule of Civil Procedure 12(b)(4)(A), which does not exist.  [Doc. 568, p. 2]  The Court concludes Ms. Zack intended to cite to Federal Rule of Civil Procedure 12(a)(4)(A).

4

states:  "*Unless the court sets a different time*, serving a motion under this rule alters these periods as follows:  (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action . . . ."  *Id.* (Emphasis added).  In this case, by the Court's Order, the Court set a firm deadline for all "pretrial motions."  [Doc. 453]  Ms. Zack's Motion was not timely pursuant to the Court's Order.

Federal Rule of Civil Procedure 16(b) governs scheduling orders and states that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990) ("Scheduling orders are not to be modified by the trial court except when authorized by local rule upon a showing of good cause."); D.N.M.LR-Civ. 16.1 ("Modification of deadlines in the Court's scheduling orders and trial notices, whether or not opposed, requires a showing of good cause and Court approval.").

> The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . [T]he Court may grant leave to modify the pretrial schedule . . . under Rule 16(b) only if the schedule cannot reasonably be met despite the diligence of the party seeking the extension.  Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

*Rowen v. New Mexico*, 210 F.R.D. 250, 252 (D.N.M. 2002) (internal quotation marks and citations omitted).

Ms. Zack neither moved for leave of the Court to file her late motion to dismiss, nor did she attempt to establish good cause for her delay.  Having failed to seek leave of the Court, and thus having failed to comply with Rule 16 and Local Rule 16.1, the Court

5

has the discretion to deny consideration to Ms. Zack's Rule 12(b)(6) argument. *See SIL-FLO,* 917 F.2d at 1518 (stating that the district court's decision will be reviewed for an abuse of discretion and that the court may "make such orders as are just to sanction a party or a party's attorney who fails to obey a scheduling or pretrial order"); *c.f. Lozaya v. Garrou Constr., Inc.*, 2006 WL 1028869, *1 (D.Colo. 2006) (stating that untimeliness accompanied by "no adequate explanation for the delay" is sufficient grounds to deny a motion to alter a scheduling order).

Nonetheless, in exercising its discretion, the Court finds it appropriate here to consider whether the deadline should be extended under a multi-factorial test set out by our Tenth Circuit. In *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997), the Court considered the following factors to determine whether it was erroneous for the trial court to deny a motion for a new scheduling order (in the context of adding witnesses):

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Id.* (internal quotation marks and citations omitted). Tailoring these factors to apply to the matter at hand, there is no prejudice to Plaintiffs in considering Ms. Zack's Motion to Dismiss as motions for summary judgment remain pending and Plaintiffs have sought leave to file another motion for summary judgment. [Doc. 599] Trial has yet to be set and thus considering the motion will not delay or disrupt trial or the orderly

administration of the case. Finally, while it is possible Ms. Zack's intent in filing the Motion to Dismiss late is an attempt to delay the resolution of this matter, the Court cannot find bad faith or willfulness given that Ms. Zack has explained her misunderstanding of the law in her reply brief. [Doc. 568, pp. 1-4] Thus, the Court, in its discretion, will consider the merits of Ms. Zack's Motion to Dismiss.

    **B.**     **Rule 12(B)(6)**

A court will dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For decades, Rule 12(b)(6) motions were governed by a test taken from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957): a complaint was subject to dismissal pursuant to Rule 12(b)(6) only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), the Court retired *Conley*'s test, replacing it with a new standard: "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570)). In applying this standard, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (internal quotation marks and citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "'a formulaic

recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim" that "'raise a right to relief above the speculative level." *Collins*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 555).  In short, in ruling on a 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

"[T]he burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).  In multi-defendant cases "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations[.]" *Id.*  On the other hand, even where a complaint pleads allegations against defendants collectively, if the allegations are sufficiently clear that "there is no confusion as to whom the allegation is asserted against[,]" then the Plaintiff has provided fair notice to the defendants of the claims against them.  *Briggs v. Johnson*, 274 Fed. Appx. 730, 736 (10th Cir. 2008) (unpublished decision).  Thus, the key is that the complaint "identify specific actions taken by particular defendants that could form the basis" of a claim.  *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) (internal quotation marks and citation omitted).

Here, with regard to Plaintiffs' malicious abuse of process claim (Count III), the Court finds sufficient notice to Ms. Zack of the claim against her summed up compactly in a single paragraph:

8

> After the Valle Norte Lawsuit was filed, THI, through its agent, Christine Zack, offered to dismiss the Valle Norte Lawsuit voluntarily if HLF would agree to settle all cases being pursued by HLF on behalf of all clients against THI and THI nursing homes. This constitutes a clear *misuse of the judicial process and extortion* arising from the filing of the Valle Norte Lawsuit in an attempt to influence HLF's handling of other lawsuits against THI and THI nursing homes.

[Doc. 162, ¶ 134 (Emphasis added.)] In addition, Plaintiffs' paragraphs directed at the acts of "THI, through its agents and attorneys" with regard to offering Dusti Harvey a stipend and offering to hire Dusti Harvey if the Harvey Law Firm ceased asserting claims against "THI nursing homes," when granting Plaintiffs all reasonable inferences, puts Ms. Zack on notice of claims against her. [Doc. 162, ¶¶ 123, 124] Further, as to Plaintiffs' conspiracy claim (Count VI), in the same paragraphs Plaintiffs identify facts which allow a reasonable inference that Ms. Zack was working with Valle Norte and the other facility defendants to misuse the judicial process. [Doc. 162, ¶¶ 123, 124, 134] Thus, Plaintiffs have sufficiently pleaded allegations supporting both their Malicious Abuse of Process and their claim of Conspiracy against Ms. Zack.

As to Counts I and II, Plaintiffs' declaratory judgment claims, Plaintiffs have stated a claim against Ms. Zack. Counts I and II relate to settlement agreements and the confidentiality agreements in those settlement agreements. In nearly all of the agreements, the defendants' attorneys expressly agreed to the confidentiality provisions. [Doc. 162, ¶¶ 29, 34, 39, 44, 49, 59, 64, 69] It is a reasonable inference that Ms. Zack was such an attorney, given that she was in-house counsel for FAS. [Doc. 162, ¶ 14] Given these allegations, Plaintiffs sufficiently pleaded an actual case or controversy between themselves and Ms. Zack. *See* N.M.S.A. 1978, § 44-6-12 (1975) ("[A]ll persons

9

shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.").

However, the Court has already granted other Defendants' motions for summary judgment with regard to Plaintiffs' claims for prima facie tort (Count IV) and defamation (Count V), and the Court concludes that the same reasoning applies to these claims against Ms. Zack.  With regard to Plaintiffs' defamation claim, Plaintiffs have neither sufficiently put Ms. Zack on notice of her allegedly wrongful actions, nor have Plaintiffs stated facts supporting their claim of defamation.  [*See* Doc. 583]  As to the prima facie tort claim, for the reasons set forth in the Court's Memorandum Opinion and Order dated March 31, 2015, [Doc. 659] the Court concludes that Plaintiffs have not stated a claim of prima facie tort against Ms. Zack.

### C. Additional Arguments

Ms. Zack further argues that the Court does not have jurisdiction over Plaintiffs' declaratory judgment action because Plaintiffs did not join their clients, who were parties to the settlement agreements which are at the heart of the declaratory judgment actions. [Doc. 526, p. 5-6]  Thus, Ms. Zack argues that that Plaintiffs failed to join all parties who have or claim an interest that would be affected by the Court's declaration.  [Doc. 526, p. 5-6]

The New Mexico Declaratory Judgment Act ("the Act") gives courts the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed."  N.M.S.A. 1978, § 44-6-2 (1975).  Pursuant to the Act, "when declaratory

relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." N.M.S.A. 1978, § 44-6-12 (1975). Ms. Zack relies on *Gallegos v. Nevada Gen. Ins. Co.*, 248 P.3d 912, 914 (N.M. Ct. App. 2010), which states "[A]ny person or entity with an existing or potential interest in the outcome of the action must be named; failure to do so deprives the court of subject matter jurisdiction." (internal quotation marks and citations omitted). *Gallegos* relied heavily on *Home Fire & Marine Ins. Co. v. Schultz*, 458 P.2d 592, 593-94 (1969), which considered a Rule 1-019 NMRA argument that an indispensible party was absent from the case. *Schultz* did not expressly construe the language of the Declaratory Judgment Act, nor did *Schultz* hold that jurisdiction was absent. *Id.* *Schultz* simply held that, pursuant to Rule 1-019 NMRA, an insurance company failed to join an indispensible party, its insured, in its declaratory judgment action seeking a determination that it was not liable for its insured's tortious conduct. *Id.* At the time that *Schultz* was decided, New Mexico held that the failure to join an indispensible party under Rule 1-019 was a jurisdictional defect. *See Perez v. Gallegos*, 530 P.2d 1155, 1156-57 (N.M. 1974) (stating that the trial court lacked jurisdiction to adjudicate a declaratory judgment action because of the absence from the suit of an indispensible party under the previous codification of Rule 1-019); *Springer Elec. Co-op, Inc. v. City of Raton*, 661 P.2d 1324, 1329 (N.M. 1983) (same). However, subsequently, the New Mexico Supreme Court held that the failure to join an indispensible party was not a jurisdictional defect. *C.E. Alexander & Sons, Inc. v. DEC Intern., Inc.,* 811 P.2d 899, 901 (N.M. 1991) ("Under the current rule, we do not consider

11

the test of indispensability to be jurisdictional, and we hereby overrule precedent to the contrary.")

Given the holding of *C.E. Alexander & Sons*, the Court does not believe that the New Mexico Supreme Court would hold that the failure to join Plaintiffs' client signatories to the settlement agreements deprives the Court of jurisdiction. The Court must apply the law that it predicts the New Mexico Supreme Court would apply, and when there is a reason to believe that the New Mexico Supreme Court would not apply the same rule as the New Mexico Court of Appeals, the Court must apply the rule that it believes the New Mexico Supreme Court would apply. *Jordan v. Shattuck Nat. Bank*, 868 F.2d 383, 386 (10th Cir. 1989) ("[I]n the absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise." (Internal quotation marks and citation omitted)). As such, the Court is not persuaded by Ms. Zack's argument based on the New Mexico Court of Appeals case of *Gallegos*.

Moreover, declaratory relief (which has, in part, already been granted in this case) does not affect the interest of any person not a party to this case. The real dispute here is whether Plaintiffs breached the confidentiality clauses in the settlement agreements, and a declaratory judgment on that question will not materially affect the underlying clients' interests. No party has alleged, argued or submitted evidence that a declaration that Plaintiffs did breach the confidentiality clause would allow Defendants to seek relief from the underlying clients. Further, in the underlying state breach of contract claims the Facility Defendants, who sought a ruling on the same issue, did not name Plaintiffs'

underlying clients as parties. Accordingly, Ms. Zack's argument is not persuasive. The Court has jurisdiction over this case.

Finally, Ms. Zack argues that the statements which form the basis of Plaintiffs' malicious abuse of process claim against Ms. Zack are inadmissible under the New Mexico Mediation Procedures Act. However, by separate Memorandum Opinion and Order, the Court holds that, based on the information the Court has before it, it appears that the statements which Ms. Zack made were not mediation communications and thus not privileged or confidential.[2] [Doc. 659] Accordingly, Ms. Zack's arguments are not persuasive.

## III. CONCLUSION

**WHEREFORE,** for the foregoing reasons, *Christine Zack's Motion to Dismiss Pursuant to Rules 12(B)(6) and 12(B)(1)* is **HEREBY GRANTED-IN-PART** as to Counts IV (Prima Facie Tort) and V (Defamation) and **DENIED-IN-PART** as to Counts I (Breach of Contract), II (Breach of Duty), III (Malicious Abuse of Process) and VI (Conspiracy).

---

[2] The Court reiterates that its ruling on the admissibility of this evidence is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial. If such circumstances should arise, the parties must seek a ruling from the Court outside the presence of the jury regarding the admissibility of such evidence. *See* Fed. R. Evid. 104(c) ("The court must conduct any hearing on a preliminary question so that the jury cannot hear it if . . . justice so requires.").

**IT IS SO ORDERED THIS** 31st day of March, 2015 in Albuquerque, New Mexico.

_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court